## DECLARATION OF JOHN SMITH IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM

I, John Smith, declare under penalty of perjury as follows:

1. I am a citizen of England, and I currently reside in the Appalachia region of the United States. I live with my wife and four children, ages five to fourteen.

2. I came to the United States in 2022 on an R-1 visa, a nonimmigrant visa for foreign nationals in religious vocations to come to the United States temporarily to perform religious work. I work full-time as a pastor at a church near my home.

3. In my current role I am working closely with another pastor to grow a new congregation that has been started from our parent church. Starting a new church has required a lot of work and dedication, but it has also been deeply rewarding to watch how our congregation has grown. My duties are carried out primarily at the second church location and include but are not limited to the following:

   A. Preparing and delivering regular sermons based on scriptural interpretation and theology including investigating the meaning of Scriptures in Hebrew and Greek;

   B. Leading religious services, including worship, baptism, communion, weddings and funerals;

   C. Providing pastoral care such as visiting members who are ill, grieving, or otherwise in need, including home and hospital visits;

   D. Providing spiritual guidance and pastoral counsel based on the Scriptures, including for grief, marriage, addiction, life decisions, and spiritual and moral development;

   E. Coordinating, supervising, and mentoring leaders and teachers of children, youth, and adults; and overseeing youth and children's ministries;

1

F. Directing community outreach efforts and participating in and representing the church at events;

G. Conducting theological studies to craft biblically sound sermons and teaching materials for Sunday services, discipleship groups, and special events;

H. Coordinating initiatives that extend the church's mission into the wider community through evangelism and service projects;

I. Administering church ordinances in line with non-denominational doctrine;

J. Overseeing and developing curriculum, if needed, aligned with theological beliefs and church doctrine of the Church;

K. Organizing special events and faith-based activities, such as retreats, camps, holiday programs, and youth group activities;

L. Collaborating with other pastors and ministry leaders to integrate education on morals, ethics, and theological principles into the broader mission of the church plant;

M. Evaluating effectiveness of religious education programs, adapting materials, and teaching methods as needed;

N. Maintaining program budgets and overseeing educational materials and supplies; and

O. Fostering community engagement through educational outreach or partnerships with schools, universities, and non-profit organizations.

4. I work with a team of pastors to provide spiritual direction and formation to our congregants. Our church has several ministries that serve low-income families, one of which we run in partnership with the local school system and aims to assist parents who are struggling financially.

5. My R-1 visa allows me to reside in the United States for a maximum of five years and is approved until November 1, 2026. The church that I work for has offered me a permanent position, if I can maintain legal immigration status in the United States.

6. My church has generously sponsored me for a special immigrant visa—an I-360 petition —which was approved in 2024. Apart from getting this approved petition, I must also file an I-485 application to adjust status from my R-1 visa to become a permanent U.S. resident. There is an extreme backlog in the availability of special immigrant visas (EB-4 visas), which makes adjustment to permanent resident status within the five-year term of an R-1 visa extremely difficult. USCIS does not permit applicants to file an adjustment of status application until an EB-4 visa is available for that individual. As a result, my church has retained immigration counsel to apply for an H-1B visa on my behalf so that I could continue working with our church congregation while I am waiting for an approval that would allow me to adjust status and become a lawful permanent resident.

7. On September 19, 2025, the President issued a Proclamation requiring a $100,000 payment for H-1B entry. I have been informed that unless this payment is made, my visa may not be issued and I may not be permitted to remain in the United States past the five-year maximum stay on my R-1 visa if I am unable to change my visa status before then. My employer cannot pay this fee, and I cannot personally afford it.

8. When I heard about the Presidential Proclamation requiring a $100,000 payment per H-1B worker I felt as if I was watching a car accident in slow motion. I previously had a sense that if I did everything correctly, I would be able to put down roots in the United States, which is exactly what I've done. My family loves living in the U.S., my children

3

are happy and thriving in school, and we are deeply connected to our church family and community. In fact, it is very hard to do ministry without developing deep connections with people. But this new fee has upended all my expectations and has thrown my future with my church into uncertainty.

9. I will be heartbroken if I cannot change my visa status by the aforesaid date. I have built meaningful and powerful relationships with the people I am serving, and all the effort I have invested in building those relationships would be lost.

10. Many of the church's ministries and programs will be paused or cut back if I am unable to change my status to H-1B. Our existing church staff would not be able to fill the hole in our workforce that I would leave if I was required to leave the U.S.

11. If I am unable to lawfully remain and work in the United States, the essential services I provide to our congregations and the community will be critically impacted, leaving a vulnerable population and community without the support it needs. Because the other pastor is dealing with significant health issues, my absence would place considerable strain on him and on the church as a whole. Instead of continuing to expand and develop new ministries and outreach, the church would be forced into a position of simply trying to maintain what already exists. This would prevent further growth, limit innovation, and hinder the broader impact of the church. Without relief from the $100,000 fee, the church and its members will suffer irreparable harm.

12. In addition, if I cannot secure an H-1B visa because my church cannot afford the $100,000 fee, I will lose this job and be forced to uproot my family and leave the United States. I will also incur unrecoverable costs, including housing expenses, relocation

expenses, and family disruptions. Even if we had to leave for just a year, it would have a drastic implication on whether we return. My children attend a local school and relocating or losing legal status would force them to change educational systems, and their spots at this school would not be guaranteed if they were to return with me in one year on another R-1 visa. Leaving would have a huge impact on my children's education and their upbringing because they have adjusted so well to being here in the United States and going to school here. Additionally, my elderly mother and stepfather reside with green card status in the United States only two and a half hours away. Our departure from the United States would disrupt these relationships. My wife and I are also in the process of buying a house. Our housing situation, if forced to leave the U.S., would be uncertain and possibly unaffordable.

13. Remote work for the church is not possible, and there is no other visa option to my knowledge that allows me to continue my employment past the maximum five-year period on my R-1 visa which is approved until November 1, 2026.

14. I desire to participate in this lawsuit, but I fear using my real name and request that I be able to proceed in this litigation under a pseudonym. I am concerned that if the government learns about my participation in this lawsuit, it could retaliate against me and my family by revoking my approved I-360 or denying any other application we might file to maintain our legal status in the United States. I also fear harassment or harm from members of the public given my participation in this lawsuit. I do not want to subject my family to harassment, violence, or discrimination here, and I fear that by participating in

this lawsuit with my real name, I could make myself and my family vulnerable to actions from people who agree with the Proclamation.

15. I very much would like to continue my work at the church. I am concerned about leaving the other pastor, with whom I have been working to build and grow the new congregation, with an overwhelming amount of responsibility. We have experienced incredible growth and progress because there has been two of us working together and the church has considerable momentum that it continues to build. If I cannot change my visa status, the church would certainly have to cut back on the ministries and programming that we have developed. It would be gut wrenching to leave, perhaps seeing the momentum stopped and even some of the ministry work being cut.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2025 in Tennessee.

_____
John Smith