Cynthia Liao (CA Bar No. 301818)*
Johanna N. Hickman (D.C. Bar No. 981770)*
Elena Goldstein (D.C. Bar No. 90034087)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 808-1982 (Liao)
cliao@democracyforward.org
hhickman@democracyforward.org
egoldstein@democracyforward.org

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

[Additional co-counsel on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 4:25-cv-08454-HSG <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE** <br><br> Judge:  Hon. Haywood S. Gilliam, Jr. <br> Ctrm:  2, 4th Floor <br> Date:  N/A - Movant did not notice hearing <br> Time:  N/A - Movant did not notice hearing |

# INTRODUCTION

In this lawsuit, Plaintiffs challenge the federal government's September 19, 2025, Proclamation unlawfully imposing a draconian $100,000 fee on employers for each H-1B worker as a condition of processing visa petitions and entry into the United States. Plaintiffs include employers who are no longer able to hire or retain teachers or pastors or priests under the H-1B program; a company whose business model of connecting nurses abroad with hospitals facing nurse shortages is imperiled; and unions representing physicians whose plans to serve in medically underserved areas and STEM researchers whose career trajectories have been disrupted by the $100,000 requirement.

Piero A. Bugoni ("Movant"), a pro se litigant, moves to intervene as a Defendant. Movant's motion should be denied because he has failed to meet his burden of establishing that he has a concrete, legally protectable interest in this case, as opposed to simply having a personal policy view on the H-1B program. He has also failed to establish that the federal government Defendants would not adequately represent his interests.

# BACKGROUND

**I.      September 19, 2025 Proclamation and subsequent implementation**

The H-1B visa program was established by Congress to provide a pathway for American employers to hire skilled non-U.S.-workers in specialty occupations. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). There are around half a million H-1B workers in the United States across a range of specialty fields, including researchers and workers in the science, technology, engineering, and mathematics (STEM) fields; doctors, other healthcare providers, and medical researchers; university professors and K-12 educators; and religious leaders. Liao Decl. Ex. 1 at 3. The standards for granting an H-1B petition focus on the worker's specialized knowledge and academic credentials. *See* 8 U.S.C. § 1184(i)(1); 8 C.F.R. § 214.2(h)(4)(ii). While many H-1B workers are employed in the computer technology industry, more than a third of all H-1B workers work for employers in other fields. Liao Decl. Ex. 1 at 7-8.

On Friday, September 19, 2025, President Trump issued a Proclamation titled "Restriction on Entry of Certain Nonimmigrant Workers." *See* Proclamation No. 10973, 90 Fed. Reg. 46027 (Sept. 19, 2025) ("Proclamation"). The Proclamation restricted entry of H-1B workers, except for those "whose petitions are accompanied or supplemented by a payment of $100,000." Proclamation § 1(a). The

Proclamation directed the Department of Homeland Security (DHS) to "restrict decisions on petitions not accompanied by a $100,000 payment," *id.* § 1(b), and directed the State Department to "approve only those visa petitions for which the filing employer has made the [$100,000] payment," *id.* § 2(b). The $100,000 amount is more than ten times the amount that an employer is required to pay under the Immigration and Naturalization Act and regulatory fee schedules. Under the detailed fee structure designed by Congress, an employer would be required to pay $7,595 at most, with discounts for small employers and non-profits. *See* Compl. ¶¶ 66-74 (describing statutes and regulations governing H-1B fees in more detail); Liao Decl. Exs. 2, 3 (H-1B fee schedule).

In the hours and days following the Proclamation, the agencies implementing the Proclamation have walked back certain aspects of the Proclamation. Under new "guidance" from DHS and State, the $100,000 requirement applies only to "new" H-1B petitions and not to existing H-1B visa holders. Liao Decl. Exs. 4, 5, 6, 7. On October 20, 2025, after Plaintiffs filed this lawsuit, United States Citizenship and Immigration Services (USCIS), a subagency of DHS, issued more "guidance" providing that the $100,000 requirement would not apply to employers of individuals who are changing status from certain valid nonimmigrant visas to H-1B from within the United States or who are requesting an amendment or extension, *if* USCIS approves the change of status, amendment, or extension. Liao Decl. Ex. 8 at 2.

The $100,000 requirement remains in place, however, for workers arriving in the United States on an H-1B visa. It also applies to those already in the United States in another status but who cannot change their status to H-1B from within the United States,[1] as well as those who are denied an amendment or extension. *Id.* at 2. Exceptions will be granted only in "extraordinarily rare circumstances." *Id.* at 3.

---

[1] Individuals with certain immigration statuses or individuals who lack lawful status, such as Deferred Action for Childhood Arrivals (DACA) recipients, are categorically ineligible to change status to H-1B from within the United States and thus must leave and come back to obtain H-1B status, which under USCIS's current guidance triggers the $100,000 fee. *See, e.g.*, 8 U.S.C. § 1258(a); 8 C.F.R. § 248.1(a)-(b); *id.* § 248.2(a); Liao Decl. Ex. 8 at 2. USCIS controls how fast it processes applications and has discretion to deny change of status. *See* 8 U.S.C. § 1258(a) ("The Secretary of Homeland Security *may*, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification . . . .") (emphasis added); Liao Decl. Ex. 9 at 1 (USCIS Policy Manual Vol. 2, Part A, Ch. 4.A: "The decision to grant or deny an extension of stay or change of status request involves an exercise of discretion by USCIS."); Liao Decl. Ex. 10 at 7-8 (USCIS Policy Manual Vol. 1, Part E, Ch. 8.C.2: "non-exhaustive" list of numerous discretionary factors to consider).

## II. Procedural history

Plaintiffs—a coalition of individuals and entities from healthcare, education (K-12 and higher education), and STEM fields, as well as religious organizations—filed suit on October 3, 2025 against Defendants President Trump, DHS, and its subagencies USCIS and Customs and Border Patrol, the State Department, and the heads of those agencies and subagencies. Compl. (ECF 1). Plaintiffs allege that President Trump exceeded his statutory authority under the Immigration and Naturalization Act and that the agencies' implementation of the Proclamation was contrary to law, arbitrary and capricious, and failed to go through notice and comment. *Id.* ¶¶ 162-200. Plaintiffs seek declaratory and injunctive relief. *Id.* Prayer for Relief.

On November 7, 2025, Movant moved to intervene as a defendant. Mot. to Intervene (ECF 33) ("Mot."). Movant alleges that he is "a freelance H1B Visa Fraud detector" who "has a profit interest in challenging Plaintiff's Complaint as the $100,000 Visa fee will provide the revenue to pay Movant for evidence . . . , or additionally to pay Movant on a contractual basis to detect fraud for the purpose of prosecuting the offenders who commit it." *Id.* at 2. He also claims that he is "an employee" who has "been displaced" by "companies that engage in Gross Fraud and Cheating for profit by exploiting the H1B Visa system," although he does not allege any facts to support this bare assertion. *Id.* at 1. Movant alleges that the H-1B program is unconstitutional in various ways. *See id.* at 10-15. Movant also disputes some of the factual allegations in Plaintiffs' Complaint, including certain factual allegations regarding the harms that Plaintiffs experienced as a result of the $100,000 requirement. *Id.* at 6-7. Throughout his motion, Movant makes numerous offensive, sexist, and racist remarks against Plaintiffs who are of Indian origin or whom Movant perceives to be of Indian origin, which Plaintiffs will not repeat here. *See, e.g.*, *id.* at 5, 7-11, 14-15. Movant asks for all of Plaintiffs' claims to be dismissed with prejudice. *Id.* at 15.

## LEGAL STANDARD

To intervene, a proposed intervenor must satisfy either the requirements for intervention as of right or for permissive intervention under Federal Rule of Civil Procedure 24(a) or (b), respectively. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true," but not if the allegations are a sham or frivolous. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir.

2001). "A document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

## ARGUMENT

**I.    Movant is not entitled to intervention as of right.**

"An applicant seeking intervention as of right must show: (1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The applicant "bear[s] the burden of showing that these four elements are met." *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). "Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

**A.    Movant does not have a significantly protectable interest in this action.**

"A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021). "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410. The interest must be "direct, non-contingent, substantial and legally protectable," and not merely "an undifferentiated, generalized interest in the outcome of an ongoing action." *S. California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002).

Movant has not met his burden to establish that he has an interest protected by law that would be affected by resolution of this action. Movant claims to be a "freelance H1B Visa Fraud detector" who will be hired as a contractor by the government using the money collected from the $100,000 fee. Mot. at 2. But "[t]o trigger a right to intervene . . . an economic interest must be concrete and related to the underlying subject matter of the action." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "[W]here potential financial loss is merely speculative or amounts to a bare expectation of economic recovery, courts have found applicants have no legally protectable interest." *Ace Bus. Sols., LLC v. Glob. Mktg. & Dev., Inc.*, No. 15-CV-1464-MMA (NLS), 2016 WL 1465185, at *4 (S.D. Cal.

Apr. 14, 2016); *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993) (distinguishing between "an economic interest based upon a bare expectation" and something "in the nature of real or personal property, contracts, or permits"), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Here, Movant does not allege that he has a current contract, merely a bare expectation of one. Nor is this expectation plausible or reasonable. There is no indication that the government will hire "freelance H1B Visa Fraud detectors," let alone that the government will contract with Movant specifically. Upon issuing the Proclamation, President Trump stated, "We're going to take that money and we're going to be reducing taxes and we're going to be reducing debt," with no mention of hiring freelance fraud detectors. *See* Liao Decl. Ex. 11 at 1. Movant identifies no statutory authority for the federal government to hire such detectors, nor any precedent for doing so. Movant thus has no concrete, protectable interest in a hypothetical future contract. Given the hypothetical nature of this future contract, it is also wholly speculative whether the invalidation of the $100,000 fee would affect Movant.

Movant also states that he has been "displaced" as an employee by companies that abuse the H-1B program. Mot. at 1. But Movant has not identified any companies that have refused to hire him or have fired him. Nor has he shown that employers are now more willing to hire him since the Proclamation or that he is likely to be displaced if the $100,000 fee were invalidated as a result of Plaintiffs' claims. It is clear from the numerous lawsuits Movant has filed over the years, including in this Court, that he has had difficulty obtaining and retaining work because of background check issues.[2] In light of these longstanding issues, it is highly speculative that invalidation of the $100,000 fee "actually will" affect

---

[2] *See Bugoni v. Google, Inc.*, No. 4:20-cv-02883-HSG, Order Screening Compl. 2-3 (May 14, 2020), *report and recommendation adopted*, Order (Jan. 21, 2021) (Gilliam, J.) (dismissing Mr. Bugoni's claims against Google, Microsoft, and Yahoo arising from search results showing "civil and criminal lawsuits where Mr. Bugoni is a named party" and an inmate-locator number on rapsheetz.com) (attached as Liao Decl. Exs. 12, 13); *Bugoni v. Checkr Inc.*, No. 21-cv-05791-JSC, 2021 WL 4976040, at *1 (N.D. Cal. Oct. 7, 2021), *report and recommendation adopted,* No. 21-cv-05791-WHO, 2021 WL 4973975 (N.D. Cal. Oct. 26, 2021) (dismissing Mr. Bugoni's claims against DoorDash, InstaCart, Lyft, Uber, and a consumer reporting agency arising from delivery companies' refusal to contract with Mr. Bugoni without a background check); *Bugoni v. Emp. Background Investigations, Inc.*, No. SAG-20-1133, 2022 WL 888434, at *1 (D. Md. Mar. 25, 2022) (dismissing Mr. Bugoni's claim that "EBI unlawfully disclosed his criminal history information" to a company that, as a result, cancelled its contract with Mr. Bugoni); *Bugoni v. Holder*, No. 11-1731, 2011 WL 4500828, at *1 (D.D.C. Sept. 26, 2011) (dismissing Mr. Bugoni's suit against "clerks of court for maintaining and allegedly disseminating official records, the latter of which has 'on numerous occasions caused him to be denied employment'" as a "result of background checks by potential employers").

Movant's employment status, whatever it currently is.

At bottom, Movant appears to disagree with the H-1B program as a policy matter. But such "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *S. California Edison Co.*, 307 F.3d at 803 (quoting *Public Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 205 (1st Cir. 1998)).

### B.     This action does not impede Movant's ability to protect his interests.

Not only does Movant lack a significant protectable interest, he has not shown that the disposition of this case will impair his ability to protect his interests. A non-party's ability to protect his interests "are not impaired" when that party has "other means by which [they] may protect [their] interests," *Alisal*, 370 F.3d at 921, such as through a "separate action," *Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016).

With regard to Movant's purported interest as a "freelance H1B Visa Fraud detector," to the extent Movant has a legal claim to the money being collected by the government pursuant to the $100,000 requirement, Movant can litigate those monetary claims in separate proceedings. As for his purported interest as a "displaced" employee, to the extent Movant has viable claims that particular employers fired him or refused to hire him unlawfully, he is similarly free to pursue those claims against those employers in separate proceedings. The disposition of this case would not impair or impede Movant's ability to protect his interests as a practical or legal matter. Plaintiffs seek only injunctive and declaratory relief against the $100,000 requirement. Compl. Prayer for Relief. And, as discussed above, it is speculative whether enjoining or invalidating the $100,000 requirement would have any real effect on Movant. Thus, Movant has failed to establish the impairment prong.

### C.     Movant fails to show that Defendants inadequately represent his interest.

Movant has also failed to show that Defendants will not adequately represent his interests. "[A] 'very compelling showing' is required to rebut a 'presumption of adequacy' when 'the government is acting on behalf of a constituency it represents' or when the applicant and existing party 'have the same ultimate objective.'" *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). "[M]ere[] differences in strategy . . . are not enough to justify intervention as a matter of right." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 402–03 (9th Cir. 2002).

Here, the government issued the Proclamation and imposed the $100,000 requirement on behalf of constituents like Movant who believe that the H-1B program harms U.S. workers. *See* Proclamation No. 10973, 90 Fed. Reg. 46027, 46027-28 (Sept. 19, 2025). And the "ultimate objective" of Movant and the federal Defendants is the same—to defeat Plaintiffs' challenge to the Proclamation and the $100,000 requirement. *Perry*, 587 F.3d at 951. Thus, Movant must make a "very compelling showing" to overcome the presumption of adequacy, but Movant comes nowhere near such a showing. Movant does not explain, for instance, "what legal argument or tactical decisions he would employ that [Defendants] are not utilizing or would not also employ." *Blake v. Pallan*, 554 F.2d 947, 955 (9th Cir. 1977). And, in any event, as this Court has held, the "mere possibility" that the government could make different legal arguments "is insufficient to warrant a finding of inadequate representation." *California v. Health & Hum. Servs.*, No. 17-cv-05783-HSG, 2017 WL 6731640, at *9 (N.D. Cal. Dec. 29, 2017) (Gilliam, J.); *see also Dep't of Fair Emp't & Hous. v. Lucent*, 642 F.3d 728, 740 (9th Cir. 2011) (upholding denial of intervention as of right where proposed intervenor offered only "vague speculation" that a California governmental agency could not adequately represent his interests).

Because Movant has failed to meet the significant protectable interest, impairment, and inadequate representation requirements, the Court must deny intervention as of right.

## II. The Court should deny permissive intervention.

The Court should also exercise its discretion to deny permissive intervention. "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Cooper*, 13 F.4th at 868. In exercising that discretion, courts may consider factors such as "the nature and extent of the intervenors' interest," "whether the intervenors' interests are adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Rule 24(b)(3) also requires that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Perry*, 587 F.3d at

955.

Here, even assuming Movant meets the threshold requirements, the Court should decline to allow permissive intervention for many of the same reasons that Movant is not entitled to intervention as of right. The speculative nature and extent of Movant's interests weigh heavily against intervention. As discussed above, Movant has not demonstrated that invalidation of the $100,000 requirement would actually have any concrete effect on him. Also, the gravamen of Movant's defense of the $100,000 requirement appears to be his general policy concerns about abuse of the H-1B program displacing American workers. *See* Mot. at 5-11. Given that these same themes are found in the Proclamation, Movant has provided no reason to believe that Defendants would not make similar arguments and represent Movant's policy views here. *See, e.g.*, *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (where the government party would make essentially the same arguments as the would-be intervenors and the government would adequately represent the intervenors' privacy interests, permissive intervention is not warranted).

Allowing permissive intervention by Movant would also delay and prejudice adjudication of Plaintiffs' claims. Movant has a history of missing court deadlines.[3] Also, allowing permissive intervention to Movant here would open the door to intervention in this case by any number of individuals based on their policy views, which goes against the judicial efficiency rationale behind Rule 24. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) ("Rule 24(b) necessarily vests discretion in the district court to determine the fairest and most efficient method of handling a case . . . ."); *Cooper*, 13 F.4th at 868 (district court did not abuse its discretion in denying intervention "in light of the prospect that some or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted to the three District Attorneys"). Given Movant has no concrete interest in this case and the practical difficulties that Movant's participation would present, the Court should exercise its discretion and deny permissive intervention.

---

[3] *See Bugoni v. Checkr, Inc.*, No. 21-16994, 2022 WL 1732618, at *1 (9th Cir. Apr. 21, 2022) (dismissing case for failure to respond to a court order); *Bugoni v. Broward Cnty. Fla.*, No. 21-12534, 2022 WL 2092984, at *1 (11th Cir. June 10, 2022) ("Piero Bugoni repeatedly filed late responses to motions to dismiss his complaint, eventually leading the district court to dismiss the case by default. That pattern continued here. He appealed more than three months after the district court dismissed his case, and more than a month after the court denied what it treated as a motion to amend or make additional findings and a motion for reconsideration.").

# CONCLUSION

For the reasons discussed, Mr. Bugoni's motion to intervene should be denied.

Date: November 21, 2025

Respectfully submitted,

*/s/ Karen C. Tumlin*
Karen C. Tumlin (CA Bar No. 234691)
Esther H. Sung (CA Bar No. 255962)
Laura Flores-Perilla (CA Bar No. 355645)
Hillary Li (GA Bar No. 898375)*
Brandon Galli-Graves (TX Bar No. 24132050)*
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

*/s/ Charles H. Kuck***
GA Bar No. 429940
**KUCK BAXTER LLC**
365 Northridge Rd., Suite 300
Atlanta, GA 30350
404-949-8154
Ckuck@immigration.net

*/s/ Zachary R. New*
Zachary R. New**
Atty. Reg. No. (Colorado): 53992
**JOSEPH & HALL, P.C.**
12203 East Second Ave.
Aurora, CO 80011
(303) 297-9171
zachary@immigrationissues.com

*/s/ Cynthia Liao*
Cynthia Liao (CA Bar No. 301818)*
Johanna N. Hickman (D.C. Bar No. 981770)*
Elena Goldstein (D.C. Bar No. 90034087)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 808-1982 (Liao)
cliao@democracyforward.org
hhickman@democracyforward.org
egoldstein@democracyforward.org

*/s/ Kalpana Peddibhotla*
Kalpana Peddibhotla (CA Bar No. 200330)
**SOUTH ASIAN AMERICAN JUSTICE COLLABORATIVE (SAAJCO)**
333 W. San Carlos Street, Suite 600
San Jose, CA 95110
(408) 550-9240
kalpana@saajco.org

*/s/ Jesse M. Bless*
JESSE M. BLESS*
MA Bar # 660713
**BLESS LITIGATION LLC**
6 Vineyard Lane
Georgetown MA 01833
781-704-3897
jesse@blesslitigation.com

*/s/ Greg Siskind*
Greg Siskind**
TN Bar No. 14487
**SISKIND SUSSER**
1028 Oakhaven Road
Memphis, TN 38119
(901) 682-6455
gsiskind@visalaw.com
*Counsel for Plaintiffs*

\* Admitted *pro hac vice*
\*\* Motion to appear *pro hac vice* forthcoming

# CERTIFICATE OF SERVICE

I certify that on November 21, 2025, I caused a copy of the foregoing Plaintiffs' Opposition to Motion to Intervene to be served on:

Piero A. Bugoni
160 W. Camino Real #191
Boca Raton, FL 33432

via FedEx

*Movant*

Alexandra McTague
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
alexandra.mctague2@usdoj.gov

via email (with permission)

*Counsel for Defendants*

/s/ Cynthia Liao
Cynthia Liao