UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 4:25-cv-08454-HSG <br><br> **DECLARATION OF PHOENIX DOE** |

## DECLARATION OF PHOENIX DOE

I, Phoenix Doe, declare under penalty of perjury as follows:

1. I am a citizen of India, currently residing in the Northern District of California, and am a plaintiff in this action.

2. I am a postdoctoral research scholar in the Department of Ophthalmology at a major U.S. university. I began my position in January 2025 and am the first postdoctoral researcher in a newly established lab that is funded for three years. As we are a new lab, we are working very hard both to advance our research into the causes of blindness and to generate the data sets necessary for us to obtain further funding to continue the research.

3. My research focuses on why people lose their vision from inherited eye diseases and with aging. I study the genetic and epigenetic changes that damage retinal cells by using laboratory experiments and large-scale computational analysis, including single-cell RNA sequencing and multi omics approaches. The goal is to find new ways to detect and treat blinding conditions.

4. During my PhD, I developed tear and blood biomarkers to speed the diagnosis of Sjögren's Syndrome, an autoimmune disease that affects millions of Americans, predominantly women. Early detection is critical because it can prevent irreversible eye damage, reduce systemic complications, and improve quality of life by getting patients into treatment sooner. My secondary disease focus has been Parkinson's Disease. During my master's degree, I also researched new ways to deliver anti-cancer biologics for breast cancer treatment, aimed at improving drug delivery and reducing side effects of an FDA-approved therapy.

5. My graduate research work has been supported in part by the National Institute of Health ("NIH") and the Michael J. Fox Foundation, published in peer reviewed journals, and featured on the cover of Investigative Ophthalmology and Visual Science.

6. I am currently in the United States on valid F-1 STEM OPT status. My status will expire on January 31, 2026.

7. Prior to September 19, 2025, my employer had approved moving forward with an H-1B petition on my behalf. The petition process was then paused because of the $100,000 fee imposed by the Proclamation challenged in this case. Subsequently, USCIS issued a clarification on October 20,

2025, that petitions seeking a change of status to H-1B that are approved as a change of status would not be subject to the $100,000 fee.

8. However, despite this clarification, for weeks after that, my employer could not file any new H-1B petitions due to the federal government shutdown. The filing of a Labor Condition Application (LCA) is a prerequisite for filing an H-1B, and the Department of Labor Foreign Labor Application Gateway (FLAG) system was not accepting new LCAs during the shutdown.

9. The shutdown ended on November 12, 2025, but my H-1B petition was not submitted until December 17, 2025. I do not even have confirmation that USCIS has received it. I remain very concerned about my future in the United States.

10. If my change of status request is not approved, I will have to depart the United States. Once I leave the U.S., any pending or new H-1B petition filed on my behalf will be subject to the Proclamation's imposition of the $100,000 fee.

11. My university employer cannot pay this fee. If my employer is subject to the $100,000 fee, my understanding is that my employer would not be able to proceed with my H-1B petition. Although the university at which I am employed is a large institution, individual laboratories operate on strict budgets tied to specific research grants. These grants cover salaries, supplies, and equipment, and do not allow for discretionary costs of this magnitude. The $100,000 fee is larger than a typical postdoctoral researcher's annual salary and is far beyond what a laboratory can absorb without cutting into essential research expenses.

12. If I have to leave the United States, it will abruptly end my research and disrupt a new laboratory that relies on me. Remote work is not possible for my position. My research requires access to my university laboratory infrastructure in addition to my employer's high-performance supercomputing resources to process large-scale genomic and epigenetic datasets. These analyses often run for hundreds of hours and are integrated with ongoing laboratory experiments. The work depends on secure access to specialized computing clusters, coordination with lab colleagues on site, and wet-lab bench work. My work also requires receiving in-person package shipments of temperature-sensitive biological reagents used in research (such as Antibodies, cell-culture media, oligonucleotides) that must be stored at appropriate temperatures (either 4 degrees, -20 degrees or –80 degrees)

immediately upon receipt. My work also requires monitoring mice colonies. My boss and a part-time lab research associate are the only other people who work in the lab with me.

13. The laboratory budget is based in part on funding for my position, and the salary cannot be reallocated to other lab expenses. If I have to leave the United States, the lab will lose the benefit of the nearly one year of work I have already invested. The money allocated to my salary would be wasted until someone could be hired to take my place. It would take a new employee at least 8-9 months to come up to speed, meaning that the lab work would be set back nearly two years. This lost time is significant on a time-limited grant.

14. There is also no other visa option than an H-1B that would allow me to continue my employment once my STEM OPT status expires on January 31, 2026.

15. If I cannot remain in the United States with valid H-1B status, I will lose my position at the university and suffer serious career setbacks. My research projects would be cut off midstream, and years of specialized training would be wasted. These harms cannot be undone because I will not be able to pursue my chosen career, continue my research, or return to the United States. The research I am involved in is urgent and impactful. I am expected to publish articles in major science journals. I am working on a publication right now, but it requires work that I cannot finish by January 31, 2026. The type of cutting-edge research I am involved in is not replicable outside of the United States because other countries do not have the infrastructure or funding to support the kind of research that I do. My departure also would jeopardize the continuation of the research that I am conducting, which has already led to medical breakthroughs that benefit the American public.

16. If I had to leave the United States, I also would lose my income and health insurance. Without health insurance, I will lose access to my psychiatrist and psychologist, whom I rely on to manage my Post-Traumatic Stress Disorder ("PTSD"). Finding providers in India or somewhere else would be time-consuming, and I might not be able to afford the care that I need. My psychiatrists prescribed an emotional support animal ("ESA") for me five years ago, and the animal has become essential for my well-being. I would not be able to bring my ESA to India with me because the government does not permit it. It is extremely upsetting to me to think about having to leave the United States and thinking about having to face it without my ESA is even more difficult. I would also

1 | incur unrecoverable costs if I had to relocate internationally on short notice, including having to break
2 | my lease.
3 |
4 | I declare under penalty of perjury under the laws of the United States of America that the foregoing is
5 | true and correct.

Executed on December 18, 2025 in California.

Phoenix Doe