# Exhibit :

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:25-cv-3675-BAH |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) ) | |

## CERTIFICATION OF THE ADMINISTRATIVE RECORD

Dale Johnson, pursuant to 5 U.S.C. § 706, deposes and says as follows:

1.      I am the Branch Chief, Enforcement Programs Division (EPD), Admissibility and Passenger Programs (APP), Office of Field Operation (OFO), U.S. Customs and Border Protection, Department of Homeland Security, in Washington, D.C. APP was principally responsible for issuing guidance to OFO personnel at U.S. ports of entry implementing the President's September 19, 2025 Proclamation, *Restriction on Entry of Certain Nonimmigrant Workers* (the Proclamation), which is the subject of the above-captioned case. As a Branch Chief with EPD, I am a senior member of the law enforcement team at CBP Headquarters which oversees admissibility policy development in conjunction with oversight for the processing of travelers seeking entry to the United States at ports of entry. I have served in this role since February 12, 2025.

2.      To the best of my knowledge, information, and belief, the attached documents, also designated in the accompanying Index of Certified Administrative Record, constitute a true and complete copy of all non-privileged documents and materials considered by the agency in issuing

1

initial guidance to OFO personnel regarding the implementation of the Proclamation.

3. I certify under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of December, in Washington, DC.

DALE P
JOHNSON

Digitally signed by DALE P
JOHNSON
Date: 2025.12.05 16:40:00
-05'00'

Dale Johnson
Branch Chief, Enforcement Programs Division
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

**INDEX**

| DATE | DOCUMENT |
|---|---|
| September 19 2025 | Proclamation, *Restriction on Entry of Certain Nonimmigrant Workers*<br><br>https://www.whitehouse.gov/presidential-actions/2025/09/restriction-on-entry-of-certain-nonimmigrant-workers/ |
| September 20, 2025 | Memo from Matthew S. Davies to Executive Directors, Field Operations Directors, and Office of Field Operations, *Proclamation, Restriction on Entry of Certain Nonimmigrant Workers [H-1B].*<br><br>https://www.cbp.gov/document/foia-record/restriction-entry-certain-non-immigrant-workers-h-1b-memo |

Case 1:25-cv-08343-HBA    Document 45-13    Filed 12/08/25    Page 5 of 12

*The* WHITE HOUSE

PRESIDENTIAL ACTIONS

RESTRICTION ON ENTRY OF CERTAIN NONIMMIGRANT WORKERS

Proclamations

September 19, 2025

## BY THE PRESIDENT OF THE UNITED STATES OF AMERICA
## A PROCLAMATION

The H-1B nonimmigrant visa program was created to bring temporary workers into the United States to perform additive, high-skilled functions, but it has been deliberately exploited to replace, rather than supplement, American workers with lower-paid, lower-skilled labor.  The large-scale replacement of American workers through systemic abuse of the program has undermined both our economic and national security.  Some employers, using practices now widely adopted by entire sectors, have abused the H-1B statute and its regulations to artificially suppress wages, resulting in a disadvantageous labor market for American citizens, while at the same time making it more difficult to attract and retain the highest skilled subset of temporary workers, with the largest impact seen in critical science, technology, engineering, and math (STEM) fields.

The number of foreign STEM workers in the United States has more than doubled between 2000 and 2019, increasing from 1.2 million to almost 2.5 million, while overall STEM employment has only increased 44.5 percent during that time.  Among computer and math occupations, the foreign share of the workforce grew from 17.7 percent in 2000 to 26.1 percent in 2019.  And the key facilitator for this influx of foreign STEM labor has been the abuse of the H-1B visa.

Information technology (IT) firms in particular have prominently manipulated the H-1B system, significantly harming American workers in computer-related fields.  The share

of IT workers in the H-1B program grew from 32 percent in Fiscal Year (FY) 2003 to an average of over 65 percent in the last 5 fiscal years.  In addition, some of the most prolific H-1B employers are now consistently IT outsourcing companies.  Using these H 1B-reliant IT outsourcing companies provides significant savings for employers:  one study of tech workers showed a 36 percent discount for H-1B "entry-level" positions as compared to full-time, traditional workers.  To take advantage of artificially low labor costs incentivized by the program, companies close their IT divisions, fire their American staff, and outsource IT jobs to lower-paid foreign workers.

Further, the abuse of the H-1B visa program has made it even more challenging for college graduates trying to find IT jobs, allowing employers to hire foreign workers at a significant discount to American workers.  These effects of abuse of H-1B visas have coincided with increasing challenges in the labor market in which H-1B workers serve.  According to a study from the Federal Reserve Bank of New York, among college graduates ages 22 to 27, computer science and computer engineering majors are facing some of the highest unemployment rates in the country at 6.1 percent and 7.5 percent, respectively — more than double the unemployment rates of recent biology and art history graduates.  Recent data reveals that unemployment rates among workers in computer occupations jumped from an average of 1.98 percent in 2019 to 3.02 percent in 2025.

Reports also indicate that many American tech companies have laid off their qualified and highly skilled American workers and simultaneously hired thousands of H-1B workers.  One software company was approved for over 5,000 H-1B workers in FY 2025; around the same time, it announced a series of layoffs totaling more than 15,000 employees.  Another IT firm was approved for nearly 1,700 H-1B workers in FY 2025; it announced it was laying off 2,400 American workers in Oregon in July.  A third company has reduced its workforce by approximately 27,000 American workers since 2022, while being approved for over 25,000 H-1B workers since FY 2022.  A fourth company reportedly eliminated 1,000 jobs in February; it was approved for over 1,100 H-1B workers for FY 2025.

American IT workers have reported they were forced to train the foreign workers who were taking their jobs and to sign nondisclosure agreements about this indignity as a condition of receiving any form of severance.  This suggests H-1B visas are not being used to fill occupational shortages or obtain highly skilled workers who are unavailable in the United States.

The high numbers of relatively low-wage workers in the H-1B program undercut the integrity of the program and are detrimental to American workers' wages and labor opportunities, especially at the entry level, in industries where such low-paid H-1B workers are concentrated.  These abuses also prevent American employers in other industries from utilizing the H-1B program in the manner in which it was intended:  to fill jobs for which highly skilled and educated American workers are unavailable.

The abuse of the H-1B program is also a national security threat.  Domestic law enforcement agencies have identified and investigated H-1B-reliant outsourcing companies for engaging in visa fraud, conspiracy to launder money, conspiracy under the Racketeer Influenced and Corrupt Organizations Act, and other illicit activities to encourage foreign workers to come to the United States.

Further, abuses of the H-1B program present a national security threat by discouraging Americans from pursuing careers in science and technology, risking American leadership in these fields.  A 2017 study showed that wages for American computer scientists would have been 2.6 percent to 5.1 percent higher and employment in computer science for American workers would have been 6.1 percent to 10.8 percent higher in 2001 absent the importation of foreign workers into the computer science field.

It is therefore necessary to impose higher costs on companies seeking to use the H-1B program in order to address the abuse of that program while still permitting companies to hire the best of the best temporary foreign workers.

The severe harms that the large-scale abuse of this program has inflicted on our economic and national security demands an immediate response.  I therefore find that the unrestricted entry into the United States of certain foreign workers who are described in section 1 of this proclamation would be detrimental to the interests of the United States because such entry would harm American workers, including by undercutting their wages.

Accordingly, by the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1.  Restriction on Entry.  (a)  Pursuant to sections 212(f) and 215(a) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f) and 1185(a), the entry into the United States of aliens as nonimmigrants to perform services in a specialty occupation under section 101(a)(15)(H)(i)(b) of the INA, 8 U.S.C. 1101(a)(15)(H)(i)(b), is restricted, except for those aliens whose petitions are accompanied or supplemented by a payment

of $100,000 — subject to the exceptions set forth in subsection (c) of this section. This restriction shall expire, absent extension, 12 months after the effective date of this proclamation, which shall be 12:01 a.m. eastern daylight time on September 21, 2025.

(b)  The Secretary of Homeland Security shall restrict decisions on petitions not accompanied by a $100,000 payment for H-1B specialty occupation workers under section 101(a)(15)(H)(i)(b) of the INA, who are currently outside the United States, for 12 months following the effective date of this proclamation as set forth in subsection (a) of this section. The Secretary of State shall also issue guidance, as necessary and to the extent permitted by law, to prevent misuse of B visas by alien beneficiaries of approved H-1B petitions that have an employment start date beginning prior to October 1, 2026.

(c)  The restriction imposed pursuant to subsections (a) and (b) of this section shall not apply to any individual alien, all aliens working for a company, or all aliens working in an industry, if the Secretary of Homeland Security determines, in the Secretary's discretion, that the hiring of such aliens to be employed as H-1B specialty occupation workers is in the national interest and does not pose a threat to the security or welfare of the United States.

Sec. 2.  Compliance.  (a)  Employers shall, prior to filing an H-1B petition on behalf of an alien outside the United States, obtain and retain documentation showing that the payment described in section 1 of this proclamation has been made.

(b)  The Secretary of State shall verify receipt of payment of the amount described in section 1 of this proclamation during the H-1B visa petition process and shall approve only those visa petitions for which the filing employer has made the payment described in section 1 of this proclamation.

(c)  The Department of Homeland Security and the Department of State shall coordinate to take all necessary and appropriate action to implement this proclamation and to deny entry to the United States to any H-1B nonimmigrant for whom the prospective employer has not made the payment described in section 1 of this proclamation.

Sec. 3.  Scope and Implementation of Restriction on Entry.  (a)  The restriction on entry pursuant to section 1 of this proclamation shall apply only to aliens who enter or attempt to enter the United States after the effective date of this proclamation as set forth in section 1(a) of this proclamation.

(b)  No later than 30 days following the completion of the H-1B lottery that immediately follows this proclamation, the Secretary of State, the Attorney General, the

Secretary of Labor, and the Secretary of Homeland Security shall jointly submit to the President, through the Assistant to the President and Homeland Security Advisor, a recommendation on whether an extension or renewal of the restriction on entry pursuant to section 1 of this proclamation is in the interests of the United States.

Sec. 4. Amending the Prevailing Wage Levels. (a) The Secretary of Labor shall initiate a rulemaking to revise the prevailing wage levels to levels consistent with the policy goals of this proclamation consistent with section 212(n) of the INA, 8 U.S.C. 1182(n). (b) The Secretary of Homeland Security shall initiate a rulemaking to prioritize the admission as nonimmigrants of high–skilled and high–paid aliens, consistent with sections 101, 212, and 214 of the INA, 8 U.S.C. 1101, 1182, and 1184.

Sec. 5. General Provisions. (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this nineteenth day of September, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and fiftieth.

DONALD J. TRUMP




GET THE FACTS →

NEWS

WIRE

ISSUES

CONTACT

VISIT

EOP

ADMINISTRATION

GALLERY

VIDEO LIBRARY

AMERICA 250

FOUNDING FATHERS

THE SIGNERS



Subscribe to The White House newsletter

| Your email | SIGN UP |

Text POTUS to 45470 to receive updates

THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500

WH.GOV

Copyright

Privacy





1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and
Border Protection**

September 20, 2025

MEMORANDUM FOR:     Executive Directors
Directors, Field Operations
Office of Field Operations

FROM:     Matthew S. Davies (b)(6);(b)(7)(c)
Executive Director, Admissibility and Passenger Programs
Office of Field Operations

SUBJECT:     Proclamation, *Restriction on Entry of Certain Nonimmigrant
Workers* [H-1B]

On September 19, 2025, the President issued a Proclamation, *Restriction on Entry of Certain
Nonimmigrant Workers*, to address systemic abuse of H1-B nonimmigrant visas.  Pursuant to
sections 212(f) and 215(a) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f) and
1185(a), the entry into the United States of aliens as nonimmigrants to perform services in a
specialty occupation under section 101(a)(15)(H)(i)(b) of the INA, 8 U.S.C.
1101(a)(15)(H)(i)(b), is restricted, except for those aliens whose *petitions are" accompanied or
supplemented"* by a payment of $100,000.  This guidance applies to H-1B employment-based
petitions filed after 12:01 AM ET on September 21, 2025.

**This Proclamation only applies prospectively to petitions that have not yet been filed.** It
does not impact aliens who are the beneficiaries of currently approved petitions, any petitions
filed prior to 12:01 AM ET on September 21, 2025, or aliens in possession of validly issued H-
1B non-immigrant visas.  United States Citizenship and Immigration Services and the
Department of State have been instructed to begin implementing the new monetary requirements
for employers submitting petitions on behalf of aliens outside the United States for new H-1B
petitions only.  The Proclamation does not impact the ability of any current visa holder to travel
to or from the United States.  CBP will continue to process current H-1B visa holders in
accordance with all existing policies and procedures.  Aliens found inadmissible should be
processed in alignment with existing guidance for the appropriate Title 8 disposition.

Please ensure this memorandum is distributed to port personnel.  Should you require additional
information, please contact (b)(6);(b)(7)(c) Director, Enforcement Programs Division.

For Official Use Only
Law Enforcement Sensitive