Cynthia Liao (CA Bar No. 301818)*
Johanna M. Hickman (D.C. Bar No. 981770)*
Jennie L. Kneedler (D.C. Bar No. 500261)*
Steven Y. Bressler (D.C. Bar No. 482492)**
Elena Goldstein (D.C. Bar No. 90034087)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 808-1982 (Liao)
cliao@democracyforward.org
hhickman@democracyforward.org
jkneedler@democracyforward.org
sbressler@democracyforward.org
egoldstein@democracyforward.org

*Admitted *pro hac vice*
** Motion to appear *pro hac vice* pending

*Attorneys for Named Plaintiffs BAE Industries, Nephrology Associates of the Carolinas, PA, Lower Brule Day School, and the Proposed Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| GLOBAL NURSE FORCE, et al., | Case No: 4:25-cv-08454-HSG |
| Plaintiffs, | **<u>CLASS ACTION</u>** |
| vs. | **PLAINTIFFS BAE INDUSTRIES, NEPHROLOGY ASSOCIATES OF THE CAROLINAS, PA, AND LOWER BRULE DAY SCHOOL'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al. | |
| Defendants. | |
| | Judge:  Hon. Haywood S. Gilliam, Jr.<br>Ctrm:   2, 4th Floor<br>Date:   February 12, 2026<br>Time:   2:00 P.M. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF THE ISSUES TO BE DECIDED.......................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.     INTRODUCTION ................................................................................................. 2

II.    BACKGROUND .................................................................................................... 4

       A.     The Proclamation and its implementation ................................................. 4

       B.     Named Plaintiffs ......................................................................................... 6

              1.     Nephrology Associates ..................................................................... 6

              2.     BAE Industries.................................................................................. 7

              3.     Lower Brule Day School ................................................................. 8

III.   PROPOSED CLASS, CLASS REPRESENTATIVES, AND CLASS COUNSEL ................. 9

IV.    ARGUMENT ........................................................................................................ 9

       A.     The Court can and should certify the Class now. ..................................... 10

       B.     This action satisfies all requirements of Rule 23(a)................................. 11

              1.     The proposed Class is numerous..................................................... 11

              2.     The proposed Class shares common questions of law and fact. ..... 12

              3.     Plaintiffs' claims are typical of the Class. ..................................... 15

              4.     The proposed Class Representatives and Class Counsel are adequate. .......... 16

       C.     This action satisfies Rule 23(b)(2). .......................................................... 17

CONCLUSION.................................................................................................................. 19

1

2

# TABLE OF AUTHORITIES

**CASES**

*Ahlman v. Barnes*, 445 F. Supp. 3d 671 (C.D. Cal. 2020) ..............................................10

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020)......................................................10

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .......................................................13

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...................................................................9

*Casa Libre/Freedom House v. Mayorkas*, No. 2:22-CV-01510-ODW,
    2023 WL 3649589 (C.D. Cal. May 25, 2023) .......................................................13

*Chamber of Commerce v. DHS*, 1:25-cv-03675-BAH (D.D.C.) .......................................5

*Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884 (N.D. Cal. 2015)..............................................11

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970  (9th Cir. 2011) ............................11, 12, 15, 16, 17

*Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020).....................15

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..........................................15

*Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132 (N.D. Cal. 2015) ..............................................11

*Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010)......................................10

*Inland Empire–Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048,
    2018 WL 1061408 (C.D. Cal. Feb. 26, 2018)........................................................13

*Johnson v. California*, 543 U.S. 499 (2005) ...................................................................13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................10

*MadKudu Inc. v. USCIS*, No. 20-CV-02653,
    2020 WL 7389419 (N.D. Cal. Nov. 17, 2020) ...............................11, 13, 16, 18

*Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036 (9th Cir. 2012)....................................10

*Nightingale v. USCIS*, 333 F.R.D. 449 (N.D. Cal. 2019) .................................................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651
    (9th Cir. 2022)..............................................................................................13

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ...............................................12, 14, 15, 18

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...........................................9, 10

*Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020)..................................................................10

*Scholl v. Mnuchin*, 489 F. Supp. 3d 1008 (N.D. Cal. 2020) .................................10, 13, 14, 17, 18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..........................................................17

*Sueoka v. United States*, 101 F. App'x 649 (9th Cir. 2004) ...............................................11

*Thakur v. Trump*, 787 F. Supp. 3d 955 (N.D. Cal. 2025) ...............................9, 10, 12, 13, 16

*Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781 (N.D. Cal. 2021) ..........................12

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ..........................................................................9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................................13, 18

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ..............................................................18

**STATUTES & REGULATIONS**

8 C.F.R. § 214.1 ..............................................................................................................5

8 U.S.C. § 1182 ..............................................................................................................13

8 U.S.C. § 1185 ..............................................................................................................13

8 U.S.C. § 1258 ..............................................................................................................5

Fed. R. Civ. P. 23 .......................................................................................................1, 10

Fed. R. Civ. P. 23(a) .....................................................................................................9, 11

Fed. R. Civ. P. 23(a)(3) ....................................................................................................15

Fed. R. Civ. P. 23(a)(4) ....................................................................................................16

Fed. R. Civ. P. 23(b)(2) ...............................................................................9, 10, 17, 18, 19

Fed. R. Civ. P. 23(c)(1)(a) ...............................................................................................10

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................19

Fed. R. Civ. P. 23(g) .......................................................................................................17

**OTHER**

Proclamation No. 10,973, 90 Fed. Reg. 46,027 (Sept. 19, 2025) ...................................4, 13

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on February 12, 2026, at 2:00 P.M., or as soon thereafter as this matter may be heard,[1] before The Honorable Haywood S. Gilliam, Jr., United States District Court for the Northern District of California, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California, BAE Industries, Nephrology Associates of the Carolinas PA, and Lower Brule Day School ("Named Plaintiffs") will, and hereby do, respectfully move this Court for an entry of an Order, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), (b)(2), and (g), in the above-captioned action: (1) certifying the Class (defined below); (2) appointing the Named Plaintiffs as Class Representatives; and (3) appointing counsel for the Named Plaintiffs as Class Counsel. The putative Class comprises of:

> All U.S. employers who have filed or will file an H-1B petition that is subject to the $100,000 fee under the September 19, 2025 Proclamation, "Restriction on Entry of Certain Nonimmigrant Workers," or the Proclamation's implementing guidance, or would file such a petition but for the fee, with the United States Citizenship and Immigration Services received on or between September 21, 2025 and September 21, 2026, to employ a qualified temporary nonimmigrant worker in a specialty occupation in the United States under 8 U.S.C. § 1101(a)(15)(H)(i)(b) and 8 C.F.R. § 214.2(h)(1)(i).

Named Plaintiffs respectfully request that this Motion be briefed and heard in conjunction with the contemporaneously filed Motion for Preliminary Injunction ("PI Motion" or "PI Mot.") in this action. This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the Declaration of Harini Srinivasan in support thereof (the "Srinivasan Declaration" or "Srinivasan Decl.") and exhibit attached thereto, as well as the Declaration of Cynthia Liao ("Liao Decl."), the Declaration of Melynn Zylka ("Zylka Decl."), the Declaration of Dattie Michaelle Waters ("Waters Decl."), the Declaration of Lance Witte ("Witte Decl."), the Declaration of Sarah K. Peterson ("Peterson Decl."), and exhibits attached thereto, the pleadings and records on file in this action, and such further arguments and matters as the Court may consider.

---

[1] Plaintiffs intend to file an administrative motion to expedite the hearing date to January 22 or 29 or any date between those two dates, at the Court's convenience.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided in this Motion are:

1.   Whether the putative Class should be provisionally certified under Rule 23(b)(2) for purposes of preliminary injunctive relief;

2.   Whether Named Plaintiffs should be appointed as Class Representatives; and

3.   Whether Named Plaintiffs' counsel should be appointed as Class Counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

President Trump's Friday, September 19, 2025 Proclamation, "Restriction on Entry of Certain Nonimmigrant Workers" (the "Proclamation") abruptly upended the H-1B visa program by requiring a staggering $100,000 fee for H-1B petitions, effective just two days after its announcement, on Monday, September 21, 2025. This unprecedented $100,000 fee ("$100,000 Requirement") for employers to petition for an H-1B nonimmigrant worker added an extra-statutory eligibility requirement that functions as a massive paywall—a de facto tax on U.S. employers seeking to hire or retain high-skilled foreign professionals. The Department of Homeland Security ("DHS"), its component agencies U.S. Citizenship and Immigration Services ("USCIS") and U.S. Customs and Border Protection ("CBP"), and the Department of State ("State Department" or "State") (collectively with the heads of those agencies and components, the "Agency Defendants"), have since implemented, extended, and changed the terms of the Proclamation through binding policies (collectively, the "Agency Policies") that condition the acceptance, processing, and approval of any new H-1B petition on the upfront payment of $100,000. The result of Defendants' actions is an immediate and nationwide barrier that has and will shut out countless employers, large and small alike, from accessing the talent Congress made available to them under the Immigration and Nationality Act ("INA").

Plaintiffs BAE Industries ("BAE"), Nephrology Associates of the Carolinas, PA ("Nephrology Associates"), and Lower Brule Day School ("LBDS") illustrate the Proclamation's harmful impact. BAE, a small automotive parts manufacturing company in Michigan, has hired several employees who require H-1B visas because BAE has difficulty recruiting and retaining staff in the highly competitive

1   Detroit-area automotive labor market. Zylka Decl. ¶¶ 1, 5. One of these employees had been with the

2   company for several years but was forced to leave the United States to avoid being unlawfully present

3   when the extension of his H-1B visa was delayed. BAE needs this employee and must now file a new

4   H-1B petition for him, but this time must pay a fee it cannot afford. *Id*. ¶¶ 5-15. Nephrology Associates,

5   a medical practice in rural North Carolina serving chronically ill patients, had finally recruited a much-

6   needed nephrologist through the H-1B program—only to find that it must pay $100,000 or forfeit this

7   physician because of the new Proclamation. Waters Decl. ¶¶ 12-20. LBDS, a tribal school serving the

8   Lower Brule Sioux Reservation, cannot afford the $100,000 fee, which would jeopardize its ability to

9   hire critically needed teachers and sustain educational continuity for its students. Nearly a quarter of

10  LBDS's teachers are H-1B visa holders. Witte Decl. ¶ 11. These Named Plaintiffs typify the

11  experiences of thousands of employers across the country in healthcare, technology, education,

12  manufacturing, and other sectors, who are abandoning vital hires and longstanding employees due to

13  a sudden fee imposed without notice, without statutory authority, and without regard to the havoc it

14  would wreak.

15      By this motion ("Motion"), Plaintiffs move for class certification under Federal Rule of Civil

16  Procedure 23(b)(2). The proposed class ("Class") consists of all U.S. employers who have filed or will

17  file an H-1B petition that is subject to the $100,000 fee, or would file such a petition but for the fee,

18  received on or between September 21, 2025 and September 21, 2026. This case is particularly well-

19  suited for class treatment because the legality of Defendants' Proclamation and implementing policies

20  present a single, dispositive question common to every class member: *Is the $100,000 H-1B fee lawful*

21  *or not?* Plaintiffs allege that this $100,000 Requirement is unlawful. The Proclamation far exceeds the

22  President's authority under immigration law, usurping Congress's role by effectively rewriting the H-

23  1B visa conditions and levying a massive fee (or tax) on businesses without congressional approval.

24  Likewise, the Agency Defendants violated the Administrative Procedure Act ("APA") by enforcing

25  this fee immediately through agency directives and procedures that contravene the INA and the

26  agencies' own regulations, all implemented arbitrarily and without the required notice-and-comment

27  process.

28

---

PLAINTIFFS'MOTION FOR CLASS CERTIFICATION                    Case No. 4:25-cv-08454-HSG

This is exactly the kind of case—a broad-based challenge to government policies under the APA—in which courts in this Circuit routinely certify (b)(2) classes, especially where preliminary injunctive relief is also being pursued. To redress these legal violations, Named Plaintiffs, along with other plaintiffs named in the PI Motion, seek declaratory and injunctive relief: a court order invalidating the $100,000 Requirement and barring Defendants from enforcing it, so that class members' H-1B petitions can proceed under the status quo ante (i.e. the regular statutory framework established by Congress, without an extra-statutory $100,000 charge).

For these reasons, Plaintiffs respectfully request that the Court certify the proposed Class, appoint BAE, Nephrology Associates, and LBDS as Class Representatives, and appoint their counsel as Class Counsel, so that the merits of this dispute can be adjudicated on a classwide, uniform basis.

## II. BACKGROUND

### A. The Proclamation and its implementation

On Friday, September 19, 2025, the President issued a Proclamation entitled "Restriction on Entry of Certain Nonimmigrant Workers," which conditions the adjudication of H-1B petitions on an employer's payment of $100,000 per petition. Proclamation No. 10,973, 90 Fed. Reg. 46,027 (Sept. 19, 2025). The Proclamation became effective almost immediately, as of 12:01 a.m. EDT on Monday, September 21, 2025. Proclamation § 1(a). The Proclamation provides for a national interest exemption ("NIE"), allowing the Secretary of Homeland Security, "in the Secretary's discretion," to exempt "any individual alien, all aliens working for a company, or all aliens working in an industry," if the Secretary determines that hiring such H-1B workers "is in the national interest and does not pose a threat to the security or welfare of the United States." *Id.* § 1(c). The Proclamation is to be effective for one year, i.e., until September 2026, although the Proclamation calls for agencies to recommend whether to extend it. *Id.* §§ 1(a), 3(b).

Agency Defendants began implementing the Proclamation on an expedited basis. USCIS and CBP issued policy memoranda on September 20, 2025, less than 24 hours after the Proclamation. Both instructed their staff that the Proclamation applied to all "H-1B employment-based petitions filed after

12:01 AM ET on September 21, 2025."[2] The State Department distributed instructions to all consular sections in a cable ("ALDAC") directing them to treat the payment as a mandatory prerequisite for visa adjudications and issuance for any applications filed after the effective date, reflecting State's uniform implementation of the Requirement.[3] USCIS and State then issued FAQs on September 21, 2025, which stated that "any" "new" H-1B petitions would be subject to the Requirement.[4]

In October, USCIS issued updated guidance modifying the Agency Policies. *H-1B Specialty Occupations*, USCIS (Oct. 20, 2025) ("October Guidance" or "Oct. Guidance") (ECF 46-9). According to this guidance, the $100,000 Requirement applies to any new H-1B petition filed on or after September 21, 2025 on behalf of beneficiaries who are outside the United States and do not have a valid H-1B visa. *Id.* at 2. For beneficiaries inside the United States, under the guidance, the $100,000 fee will not apply to employers of individuals who are changing status from certain valid nonimmigrant visas to H-1B or who are requesting an amendment or extension—*if* USCIS grants the change of status, amendment, or extension. *Id.* Such approvals are discretionary decisions by USCIS.[5]

The October Guidance also expounds on the NIE set forth in the Proclamation. USCIS states that exceptions to the $100,000 Requirement "are granted by the Secretary of Homeland Security in the *extraordinarily rare circumstance*" where the Secretary determines that (1) the particular alien worker's presence "is in the national interest," (2) "*no* American worker is available to fill the role,"

---

[2] Joseph B. Edlow, *Proclamation, Restriction on Entry of Certain Nonimmigrant Workers, (H-1B)*, USCIS (Sept. 20, 2025) (ECF 46-5); Matthew S. Davies, *Proclamation, Restriction on Entry of Certain Nonimmigrant Workers (H-1B)*, CBP (Sept. 20, 2025) (ECF 46-6).

[3] State Dep't Administrative Record ("State AR") (Liao Decl. Ex. 7 at 3-4). The government filed the administrative records in another case brought by other plaintiffs challenging the same $100,000 Requirement, *Chamber of Commerce v. DHS*, 1:25-cv-03675-BAH (D.D.C.). *See* Liao Decl. ¶¶ 7-9.

[4] *H-1B FAQ*, USCIS (Sept. 21, 2025) (ECF 46-7); *H-1B FAQ*, State Dept. (Sept. 21, 2025) (ECF 46-8).

[5] *See* 8 U.S.C. § 1258(a) ("The Secretary of Homeland Security *may*, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification . . . .") (emphasis added); 8 C.F.R. § 214.1(c)(7) ("Where an applicant or petitioner demonstrates eligibility for a requested extension or amendment of stay, USCIS may grant the extension or amendment in its discretion. The denial of an extension or amendment of stay request may not be appealed."); USCIS Policy Manual Vol. 2, Part A, Ch. 4.A (ECF 46-10 at 1) ("The decision to grant or deny an extension of stay or change of status request involves an exercise of discretion by USCIS."); USCIS Policy Manual Vol. 1, Part E, Ch. 8.C.2 (ECF 46-11 at 7–8) ("non-exhaustive" list of numerous discretionary factors to consider).

(3) the worker "does not pose a threat to the security or welfare of the United States," and (4) requiring the employer to pay the fee "would significantly undermine the interests of the United States." Oct. Guidance, ECF 46-9 at 2–3 (emphases added). Employers seeking an exemption must email a request and "all supporting evidence." *Id*. The October Guidance does not acknowledge or provide criteria for seeking an exemption on a company-wide or industry-wide basis. It also does not identify any timelines or evidentiary standards for, or a right to, an exemption. *See* Oct. Guidance, ECF 46-9 at 3. Plaintiffs are not aware of any instances of the government granting such an exemption. *See also* Peterson Decl. ¶ 13.

In sum, under the Proclamation, as implemented, an employer who does not pay the $100,000 fee cannot file a petition with USCIS, and the intended beneficiary cannot receive a visa from the State Department and will not be permitted by CBP to enter. Petitions filed by *any* U.S. employer regardless of size, industry, geographic location, or economic profile are all uniformly subject to the $100,000 Requirement. The only two ways to file a petition without being subject to the $100,000 Requirement are (1) if the employer requests a change of status, amendment, or extension for an individual in the United States and it is granted, in USCIS's discretion; or (2) the employer requests an NIE and it is granted, in the DHS Secretary's discretion.

Named Plaintiffs are three of many thousands of employers adversely affected by the Proclamation and the Agency Policies' unlawful $100,000 Requirement. Nephrology Associates is a medical practice that relies on foreign nationals requiring H-1B sponsorship to fill highly specialized physician positions essential to its patient care operations. Waters Decl. ¶ 11. BAE Industries is a small automotive supplier that has hired several H-1B beneficiaries because of challenges it has faced in hiring and retaining talent. Zylka Decl. ¶ 5. LBDS is a tribal school that relies on H-1B teachers to deliver core instruction and maintain consistent staffing for its K-12 classrooms. Witte Decl. ¶ 11. All three employers are currently subject to the $100,000 Requirement.

**B.  Named Plaintiffs**

**1.  Nephrology Associates**

Nephrology Associates is a medical practice that specializes in kidney care. The practice has

had to rely on the H-1B program to fulfill its physician staffing needs. Waters Decl. ¶ 11. After losing a nephrologist who relocated, Nephrology Associates engaged a recruiter and, over approximately nine months, received only a small number of applications. Only one candidate—a nephrologist from India on a J-1 visa—was both qualified and willing to work in Nephrology Associates' rural, medically underserved community. *Id.* ¶ 12. Nephrology Associates offered this physician the position and, through immigration counsel, obtained a J-1 waiver so that an H-1B petition could be filed for her to work at the practice. *Id.* ¶¶ 12-17; *see also* Peterson Decl. ¶ 7 (describing J-1 waiver process).

Nephrology Associates filed an H-1B petition for the Indian physician on September 24, 2025 and paid for premium processing, which would ordinarily result in adjudication within 15 business days—thus, around mid-October 2025. Waters Decl. ¶ 16. However, the petition remained unadjudicated. In early November, USCIS issued a Request for Evidence asking Nephrology Associates to show that it had either paid $100,000 or obtained an NIE. *Id.* ¶¶ 18-19. As a small practice in a rural, low-income community, Nephrology Associates cannot afford to pay the additional $100,000, and it is still awaiting adjudication of its exemption request and the underlying H-1B petition. *Id.* ¶¶ 19-20. At this time, the physician remains abroad and Nephrology Associates is struggling to maintain its flow of business and accommodate its waiting list of new patients. *Id.* ¶¶ 10, 14, 20.

### 2. BAE Industries

BAE Industries is a small automotive supplier headquartered in Auburn Hills, Michigan. Zylka Decl. ¶¶ 1, 5. Recruiting is difficult given the competitive Detroit-area labor market, and BAE has relied on the H-1B program to hire and retain specialized talent. *Id.* ¶ 5. In July 2018, BAE hired an international student from India who was then in the United States and had completed his master's degree at Wayne State University. BAE filed an H-1B petition on his behalf, which was approved, and he transitioned into H-1B status on October 1, 2019. *Id.* ¶ 6. He now works in BAE's Quality Department as a Senior Quality Engineer at a plant that manufactures stampings used in highly engineered seat mechanisms. *Id.* ¶ 7.

BAE began the process to sponsor this employee for lawful permanent residence (colloquially,

a "green card") and USCIS approved his immigrant petition. However, because there is a long queue for Indian nationals for this type of immigrant visa, the employee is still waiting to be eligible for a green card. *Id*. ¶¶ 8-9. In the meantime, BAE intended to seek an extension of the employee's H-1B visa. BAE submitted a Labor Condition Application on September 25, 2025, but the October 1 government shutdown delayed certification until November 4, 2025, after the employee's H-1B status expired. *Id*. ¶ 10. To avoid falling out of status, the employee left the United States on October 15, 2025, and returned to India, where he planned to seek a visa once BAE filed and USCIS approved the petition. *Id*. ¶ 11. To petition for him now, BAE would have to pay a $100,000 fee that it cannot afford. *Id*. ¶¶ 12-13. As a result, the employee remains in India instead of working in BAE's plant and transitioning into the Quality Manager role, and BAE is having to manage its quality-control needs without the employee it has trained and relied on for years. *Id*. ¶¶ 13-15.

### 3. Lower Brule Day School

LBDS is a K–12 school managed by the Lower Brule Sioux Tribe on its reservation in rural South Dakota. Witte Decl. ¶¶ 1, 5, 8. LBDS faces ongoing challenges in recruiting and retaining qualified teachers due to its geographic location. *Id*. ¶ 10. To meet its staffing needs and ensure instructional continuity, LBDS relies on noncitizen educators requiring H-1B sponsorship. *Id*. ¶ 11.

LBDS currently employs ten H-1B teachers, four of whom are the school's only teachers providing special education services. The school plans to recruit at least one additional teacher for the 2026–2027 school year, and based on past experience, expects the most qualified applicants to require H-1B sponsorship. *Id*. ¶ 12. The imposition of the $100,000 fee has placed the school in an impossible position: the fee is approximately double a starting teacher's salary, and LBDS cannot afford to pay it. *Id*. ¶ 12. In response, the Lower Brule Sioux Tribal Council passed a resolution urging a fee waiver for LBDS and other Bureau of Indian Education funded schools that rely on the H-1B program. *Id*. ¶ 13. Without relief from the fee, LBDS fears it will be unable to sustain its workforce and meet the needs of its students. *Id*. ¶¶ 10, 12.[6]

---

[6] Two other lawsuits have been filed challenging aspects of the $100,000 Requirement. *Chamber of Commerce of the United States v. DHS*, No. 1:25-cv-03675 (D.D.C.), was filed on October 16, 2025

### III.    PROPOSED CLASS, CLASS REPRESENTATIVES, AND CLASS COUNSEL

For the purpose of requesting a preliminary injunction, Named Plaintiffs seek provisional certification of the Class under Rule 23(b)(2), defined as and consisting of:

> All U.S. employers who have filed or will file an H-1B petition that is subject to the $100,000 fee under the Proclamation or the Proclamation's implementing guidance, or would file such a petition but for the fee, with the United States Citizenship and Immigration Services received on or between September 21, 2025 and September 21, 2026,[7] to employ a qualified temporary nonimmigrant worker in a specialty occupation in the United States under 8 U.S.C. § 1101(a)(15)(H)(i)(b) and 8 C.F.R. § 214.2(h)(1)(i).

Named Plaintiffs BAE, Nephrology Associates, and LBDS seek appointment as Class Representatives. In addition, Named Plaintiffs seek appointment of their counsel as Class Counsel.

### IV.    ARGUMENT

The U.S. Supreme Court has long recognized that class actions are an appropriate vehicle for requesting injunctive relief in light of the "principles of equity jurisprudence." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 849–50 (2025) (endorsing the use of class actions under Rule 23). Here, Named Plaintiffs and the proposed Class of thousands of employers are subject to the Defendants' extralegal policies, including the $100,000 Requirement, thus satisfying the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. Further, Named Plaintiffs seek injunctive relief regarding Defendants' policies and practices that are generally applicable to the Class as a whole—thus warranting certification of the Class under Rule

---

in the U.S. District Court for the District of Columbia, and the plaintiffs are the U.S. Chamber of Commerce and the Association of American Universities. Currently pending are the parties' cross-motions for summary judgment—both scheduled for hearing on December 19, 2025, as well as defendants' motion to dismiss the amended complaint. In addition, *California v. Noem*, No. 1:25-cv-13829-LTS (D. Mass.) was filed on December 12, 2025 in the U.S. District Court for the District of Massachusetts by a coalition of state Attorneys General and is currently in its early stages with only a complaint filed. No relief has been granted in either case.

[7] The Class definition references the September 21, 2026 effective period because that is the current duration of the Proclamation and associated agency policies. Given the rapidly evolving policy environment, Plaintiffs recognize that circumstances may change—such as through renewal of the Proclamation's terms—and reserve the right to seek to amend or alter the Class definition accordingly. *See Thakur v. Trump*, 787 F. Supp. 3d 955, 998 (N.D. Cal. 2025) ("[P]rovisional certifications 'may be altered or amended before the decision on the merits.'") (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015)).

1  23(b)(2).[8]

2  **A. The Court can and should certify the Class now.**

3  The Court should certify the Class in conjunction with the pending motion for preliminary

4  injunction. Indeed, "[c]ourts in the Ninth Circuit 'routinely grant provisional class certification for

5  purposes of entering injunctive relief.'" *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 682 (C.D. Cal. 2020)

6  (citation omitted); *accord Roman v. Wolf*, 977 F.3d 935, 944 (9th Cir. 2020) (finding that the "district

7  court did not err by provisionally certifying a class" in the context of a preliminary injunction); *Meyer*

8  *v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1041–43 (9th Cir. 2012) (finding the district court

9  "did not abuse its discretion by granting provisional class certification" in an order also addressing a

10  request for a preliminary injunction); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir.

11  2020) ("We have approved provisional class certification for purposes of preliminary injunction

12  proceedings."). Such provisional certification is supported by Rule 23(c)(1)(a), which states that "a

13  court must determine whether to certify a class '[a]t an early practicable time after a person sues ... as

14  a class representative.'" *Thakur*, 787 F. Supp. 3d at 997 (citing Fed. R. Civ. P. 23(c)(1)(A)). In deciding

15  whether to provisionally certify a class, a court's "'analysis is tempered[.]'" *Thakur*, 787 F. Supp. 3d

16  at 997 (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015)) (alterations in original)

17  (internal quotations omitted).

18  Courts in this Circuit have provisionally certified classes requesting a preliminary injunction

19  based on alleged violations of the APA. *See, e.g.*, *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1047

20  (N.D. Cal. 2020) (provisionally certifying class of certain incarcerated individuals for the purpose of

21  preliminary injunction where the government defendants allegedly violated the APA for improper

22  administration of certain payments pursuant to the Coronavirus Aid, Relief, and Economic Security

23  Act); *Thakur*, 787 F. Supp. 3d at 1005 (provisionally certifying classes of certain academic researchers

24

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [8] In addition, Named Plaintiffs have the requisite standing to pursue class certification. As discussed in further detail in the contemporaneously filed PI Motion, on account of their subjection to the Defendants' unlawful policy, they each have demonstrated "(1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

1  for the purpose of a preliminary injunction where the government defendants allegedly violated the

2  APA for terminating grants *en masse* following a series of executive orders). Accordingly, similar

3  relief should be granted here, where Named Plaintiffs seek to certify a class for the purpose of a

4  preliminary injunction that will enjoin enforcement of the $100,000 Requirement.

5  **B. This action satisfies all requirements of Rule 23(a).**

6  Pursuant to Rule 23(a), parties seeking class certification must establish: "(1) that the class is

7  so large that joinder of all members is impracticable (numerosity); (2) that there are one or more

8  questions of law or fact common to the class (commonality); (3) that the named parties' claims are

9  typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect

10 the interests of other members of the class (adequacy of representation)." *Ellis v. Costco Wholesale*

11 *Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)). The proposed Class satisfies

12 all four requirements.

13 **1. The proposed Class is numerous.**

14 While there is no fixed number that satisfies the numerosity requirement, generally, a class

15 greater than forty is sufficient. *See MadKudu Inc. v. USCIS*, No. 20-CV-02653, 2020 WL 7389419, at

16 *6 (N.D. Cal. Nov. 17, 2020) (citing *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D.

17 Cal. 2015), and *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 890 (N.D. Cal. 2015)). Where

18 plaintiffs seek injunctive relief, as they do here, "the numerosity requirement is relaxed and plaintiffs

19 may rely on the reasonable inference arising from plaintiffs' other evidence that the number of

20 unknown and future members . . . is sufficient to make joinder impracticable." *Sueoka v. United States*,

21 101 F. App'x 649, 653 (9th Cir. 2004); *accord Nightingale v. USCIS*, 333 F.R.D. 449, 456-57 (N.D.

22 Cal. 2019) (plaintiffs sufficiently showed numerosity where they "reasonably estimate[d]" that the

23 proposed classes were comprised of at least hundreds of members "who filed, or will file" certain

24 FOIA requests).

25 Here, numerosity is satisfied because the class is comprised of thousands of U.S. employers.

26 On average, between Fiscal Year ("FY") 2022 and FY 2024, around 14,000 employers filed

27 approximately 58,000 H-1B petitions each year that – if filed today – would or could be subject to the

28

---

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    Case No. 4:25-cv-08454-HSG

1   $100,000 Requirement under the Proclamation.[9] *See* USCIS, *Characteristics of H-1B Specialty*

2   *Occupation Workers FY 2024 Annual Report to Congress, October 1, 2023 – September 30, 2024* 59

3   Table 14 (April 29, 2025) (Liao Decl. Ex. 11); USCIS, *Characteristics of H-1B Specialty Occupation*

4   *Workers FY 2023 Annual Report to Congress, October 1, 2022 – September 30, 2023* Table 14 (Mar.

5   6, 2024) (Liao Decl. Ex. 12); USCIS, *Characteristics of H-1B Specialty Occupation Workers FY 2022*

6   *Annual Report to Congress, October 1, 2021 – September 30, 2022*, Table 14 (Mar. 13, 2023) (Liao

7   Decl. Ex. 13).[10]  And this sum of tens of thousands of employers does not include those that were

8   deterred from filing because of the fee, further confirming that joinder is impracticable. *See Torliatt v.*

9   *Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781, 793 (N.D. Cal. 2021); *see also Thakur*, 787 F.

10  Supp. 3d at 1000 (finding numerosity satisfied where a federal policy allegedly "impact[ed] hundreds

11  or thousands").

12  ### 2.  The proposed Class shares common questions of law and fact.

13      "To show commonality, Plaintiffs must demonstrate that there are questions of fact and law

14  that are common to the class." *Ellis*, 657 F.3d at 981 (citing Fed. R. Civ. P. 23(a)(2)). Only "a single

15  common question" is required. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). Demonstrating

16  commonality requires a common contention that "is capable of classwide resolution—which means

17

18  ───────────────────

19       [9] USCIS does not make publicly available the number of employers who filed an H-1B petition
    under circumstances that would render them subject to the $100,000 Requirement. Named Plaintiffs

20  reasonably estimated this number by comparing the number of H-1B petitions approved by USCIS in
    FYs 2022 to 2024 that requested consular (or port of entry) notification as disclosed in USCIS's annual

21  reports to Congress, *see* Liao Decl. Exs. 11, 12, 13, against the employer data downloadable from
    USCIS's online H-1B Employer Data Hub indicating which employers filed "New Employment" H-
    1B  petitions,  *see*  https://www.uscis.gov/tools/reports-and-studies/h-1b-employer-data-hub?utm.

22  Requesting consular notification generally indicates that the H-1B beneficiary is located outside the
    United States (and therefore will apply for a visa at a consulate or seek admission at a port of entry)

23  —circumstances that, under the October Guidance, trigger the imposition of the $100,000 fee—
    making such petitions a reasonable proxy for estimating the number of employers subject to the

24  Requirement. Given the large size of the data contained in USCIS's H-1B Employer Data Hub, Named
    Plaintiffs are unable to file the downloadable files as exhibits, but can transmit them to the Court upon

25  the Court's request.

26       [10] The number of employers who may be subject to the $100,000 fee could extend to as high as
    over 59,000 employers—the average number of employers that filed any type of H-1B petition

27  between FYs 2022 to 2024, including amendments, extensions, and changes of status—since the
    granting of amendments, extensions, and changes of status (which would make a petition not subject

28  to the $100,000 fee) is discretionary.

───────────────────

1  that determination of its truth or falsity will resolve an issue that is central to the validity of each one

2  of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). By contrast,

3  questions are not common when they rest on "evidence that varies from member to member" of the

4  class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir.

5  2022) (en banc). For example, courts have found commonality to be satisfied when the plaintiffs are

6  'challeng[ing] a system-wide practice or policy that affects all of the putative class members.'" *Thakur*,

7  787 F. Supp. 3d at 1000 (alteration in original) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th

8  Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005)); *see Scholl*,

9  489 F. Supp. 3d at 1044 (commonality met where plaintiffs and the class asserted "the same legal

10  claim," that defendants' recent policy of withholding certain payments to incarcerated persons violated

11  the APA); *Casa Libre/Freedom House v. Mayorkas*, No. 2:22-CV-01510-ODW, 2023 WL 3649589,

12  at *9, 15 (C.D. Cal. May 25, 2023) (commonality met where plaintiffs challenged the legality of

13  USCIS's newly-announced tolling provisions for adjudicating Special Immigrant Juvenile petitions

14  under, inter alia, the APA, and where class members included "those who have experienced or will

15  experience the effects" of those provisions); *Inland Empire–Immigrant Youth Collective v. Nielsen*,

16  No. EDCV 17-2048, 2018 WL 1061408, at *8 (C.D. Cal. Feb. 26, 2018) (commonality found where

17  Plaintiffs "identified a number of legal questions common to the proposed class," including whether

18  Defendants' DACA termination practices violated the APA).

19       Here, the implementation of the $100,000 Requirement is "a system-wide practice or policy

20  that affects all of the putative class members." *Armstrong*, 275 F.3d at 868; *see also MadKudu*, 2020

21  WL 7389419, at *7 (finding commonality satisfied where plaintiffs alleged that defendants had a

22  practice or policy of erroneously denying H-1B petitions for market research analysts). In September

23  2025, the Defendants instituted the $100,000 Requirement purportedly pursuant to 8 U.S.C. § 1182(f)

24  and § 1185(a), with only limited exceptions that lie within the discretion of DHS. Proclamation § 1(a),

25  (c). However, Named Plaintiffs allege that neither 8 U.S.C. § 1182(f) nor § 1185(a) authorizes the

26  President to impose a $100,000 fee, nor have Congress or the Constitution authorized the imposition

27  of such a fee. First Amended Compl. ("FAC") ¶¶ 82-86 (ECF 74). Accordingly, Named Plaintiffs

28

allege the $100,000 Requirement is an *ultra vires* act because it conflicts with the existing Congressional statutory scheme and fee statutes governing the H-1B program, exceeds the text of the INA, and impermissibly imposes what amounts to a tax on Class members for raising revenue. *Id.* ¶¶ 211-226. Given the Agency Defendants' role in implementing the Proclamation, Named Plaintiffs also allege that the $100,000 Requirement is subject to review under the APA as final agency action. Aside from being contrary to the law and arbitrary and capricious, the $100,000 Requirement also "imposes new obligations" on Class members and was thus a "legislative rule" that required notice and comment rulemaking before its implementation. *Id.* ¶¶ 227-252.

As such, Named Plaintiffs' claims give rise to several overarching questions that are common to the class, including:

(1) Whether the President exceeded his authority by unilaterally changing a statutory scheme created by Congress;

(2) Whether the President exceeded his authority by unilaterally imposing a fee, tax, or other mechanism to generate revenue for the United States;

(3) Whether the $100,000 Requirement violates the APA because it is not in accordance with the law and is in excess of statutory authority;

(4) Whether the $100,000 Requirement violates the APA because it is arbitrary and capricious;

(5) Whether the $100,000 Requirement violates the APA due to Defendants' failure to conduct notice and comment rulemaking and otherwise rulemaking without observance of the procedure required by law.

Accordingly, notwithstanding any employer-specific differences (such as size, sector, or whether the employers is cap-subject or cap-exempt), the question of whether Defendants can condition H-1B petition adjudications, visa issuance, or entry on a $100,000 fee "can thus be answered as to the entire class 'in one stroke.'" *Parsons*, 754 F.3d at 679–80 (citation omitted) (commonality found where plaintiffs alleged that certain statewide policies and practices exposed putative class of inmates to substantial risk of harm); *see Scholl*, 489 F. Supp. 3d at 1044 (commonality found where plaintiffs and the class asserted the same legal claim that defendants' practice violated the APA). The

same administrative record and governing statutes control for all class members. *See infra* Section IV.C.

Though USCIS's October Guidance states that the Proclamation does not apply to certain amendments, extensions, and changes of status and provides an NIE, such situations where employers are not subject to the $100,000 fee are, by definition, not encompassed by the Class. Thus, these two potential scenarios do not change the fundamental common question to the Class of employers who are subject to the $100,000 Requirement: whether the fee is lawful.

### 3. Plaintiffs' claims are typical of the Class.

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F.3d at 984 (citing Fed. R. Civ. P. 23(a)(3)). To be typical under this "permissive" standard, class representatives' claims "need not be substantially identical," but rather "reasonably coextensive" with those of absent class members. *Parsons*, 754 F.3d at 685 (citation and internal quotations omitted). "'[W]hether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct' inform the analysis." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, there is no question that the Named Plaintiffs suffered "the same or similar injury" based on "the same course of conduct" on the part of the government." *Hanon*, 976 F.2d at 508. Though Named Plaintiffs and putative Class members may operate different entities with different organizational needs and circumstances, they are all employers who have filed or will file an H-1B petition that is subject to the $100,000 fee within the one-year period of the Proclamation, or would file such a petition but for the fee, and are thus subject to the "same course of conduct": the unlawful Proclamation and subsequent agency guidance.

As discussed in further detail *infra* Section IV.C, this subjection to an unlawful executive action is the "same or similar injury" suffered by each of the Named Plaintiffs and putative Class members. *See Parsons*, 754 F.3d at 685 (typicality found where plaintiffs alleged that they "were

exposed, like all other members of the putative class, to a substantial risk of serious harm by the challenged . . . policies and practices"); *Thakur*, 787 F. Supp. 3d at 1001 (typicality met where plaintiffs' and the class's research grants were all subject to the same government practice); *MadKudu*, 2020 WL 7389419, at *8 ("The named Plaintiffs' claims are typical of those of the class because their H-1B petitions were allegedly denied because of Defendants' unlawful policy and practice . . . ."). Furthermore, because the Class is limited to employers who are subject to the Proclamation or its implementing guidance—that is, employers who are affected by executive action before its expiration date in September 2026—the Class members all face similarly imminent injury requiring emergency preliminary relief. *See* PI Mot. Argument § IV.

### 4.  The proposed Class Representatives and Class Counsel are adequate.

To meet the requirement under Rule 23(a)(4) that the class representatives "fairly and adequately protect the interests of the class," the district court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985. The Named Plaintiffs are all employers whose interests are identical to those of the putative Class, all of whom are subject to the $100,000 Requirement, which Named Plaintiffs challenge.

*First*, there are no conflicts of interest because the Named Plaintiffs' "interests are aligned with those of absent class members." *Thakur*, 787 F. Supp. 3d at 1002. As discussed above, Plaintiffs' and absent Class members' claims rise and fall on the same questions of law and fact. The Named Plaintiffs either have filed an H-1B petition, plan to file one in the future, or would file one but for the application of the allegedly unlawful $100,000 Requirement. Zylka Decl. ¶¶ 12–13 (BAE would file an amended H-1B petition for an employee were it not for the $100,000 Requirement); Waters Decl. ¶ 16 (Nephrology Associates filed an H-1B petition for a physician, which remains pending); Witte Decl. ¶ 12 (LBDS is seeking a teacher candidate for the fall 2026 school year for which the most qualified available candidates likely would require an H-1B visa). Accordingly, Named Plaintiffs "seek the same injunctive relief as class members: an order enjoining defendants from enforcing an unlawful

policy." *Scholl*, 489 F. Supp. 3d at 1045 (finding the adequacy requirement satisfied where named plaintiffs and class members all sought to enjoin defendants from enforcing their policy of excluding plaintiffs and class members from receiving certain economic impact payments, where named plaintiffs alleged that the policy was contrary to the law and thus violated the APA). Further, Named Plaintiffs are unaware of any conflicts of interest with other Class members and will represent the interests of the Class members as they would their own. Zylka Decl. ¶¶ 16-18 (BAE); Waters Decl. ¶¶ 22-24 (Nephrology Associates); Witte Decl. ¶¶ 14-16 (LBDS).

*Second*, Named Plaintiffs have demonstrated their commitment to "prosecut[ing] the action vigorously" to achieve classwide relief. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Reflecting an intention to pursue the interests of the class vigorously, the Named Plaintiffs have been actively involved, maintained regular contact with proposed Class Counsel, and assisted in the factual development of the class claims. As a result, the Named Plaintiffs have demonstrated that they have sufficient knowledge of the case and their duties as class representatives.

*Third*, the Named Plaintiffs retained a coalition of three not-for-profit organizations and five private law firms each of which, standing on its own, possesses substantial experience in complex civil actions; collectively they are more than qualified to serve as class counsel. *See* Srinivasan Decl. *passim.* Named Plaintiffs have retained counsel who are among the most experienced in the country in representing plaintiffs in administrative law, immigration law, and class actions. Plaintiffs request that their counsel be appointed to represent the proposed Class. Fed. R. Civ. P. 23(g).

### C.  This action satisfies Rule 23(b)(2).

Plaintiffs have satisfied the requirements of Rule 23(b)(2), as they seek uniform classwide injunctive relief from Defendants conditioning H-1B petition adjudications, visa issuance, and/or entry on payment of the $100,000 fee, and request that the Court direct Defendants to accept and adjudicate such petitions without imposing or collecting that fee.

Class certification under Rule 23(b)(2) is appropriate for "the class as a whole" when "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2); *see also Ellis*, 657 F.3d at 986 ("Class certification under Rule 23(b)(2) is appropriate

only where the primary relief sought is declaratory or injunctive.") (citation omitted).[11] The requirements for certification under Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citation omitted); *see also Scholl*, 489 F. Supp. 3d at 1046 (Rule 23(b)(2) satisfied where defendants "implemented a generally applicable policy of denying CARES Act payments"). A court need not "find[] that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688 ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Scholl*, 489 F. Supp. 3d at 1046 (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

Defendants implemented a policy that is "generally applicable" to the "class as a whole." *Parsons*, 754 F.3d at 688. Specifically, the Proclamation, as implemented by the agencies, requires a $100,000 fee from "any" new H-1B petition filed after 12:01 AM ET on September 21, 2025, which serves as a condition for adjudication of "any" new H-1B petition, as well as for visa issuance and entry into the United States of any beneficiary of a new petition. FAC ¶¶ 11, 107. The "class as a whole" seeks to enjoin Defendants from enforcing the Proclamation, including the $100,000 Requirement, and subsequent agency rules, guidance, or procedures made pursuant to or in implementation of the Proclamation. Granting certification under Rule 23(b)(2) here would accord with the practice in this Court of enjoining allegedly unlawful government policies that are applicable classwide. *See Parsons*, 754 F.3d at 688-89 (finding that district court did not abuse discretion in finding Rule 23(b)(2) satisfied where all class members were "allegedly exposed to a substantial risk of serious harm" from certain government policies of "uniform" application, and the class members' alleged injury could "be alleviated . . . by uniform changes" to those policies); *Scholl*, 489 F.Supp.3d at 1046 (finding Rule 23(b)(2) met where defendants' tax credit policy was "generally applicable to the class as a whole" and where the "plaintiffs request[ed] an injunction relating to [that] generally applicable policy"); *MadKudu*, 2020 WL 7389419, at *9 (finding Rule 23(b)(2) met where defendants'

---

[11] There is no need to show predominance or superiority to certify a Rule 23(b)(2) class. *Dukes*, 564 U.S. at 360, 362-63; *accord Parsons*, 754 F.3d at 688.

1  "pattern and practice of denying [certain] H-1B petitions" applied to the class as a whole and where

2  "declaratory relief and final injunctive relief enjoining Defendants from continuing this alleged pattern

3  and practice [was] applicable to the class as a whole").

4      The Named Plaintiffs and members of the Class have all suffered the injury of being subjected

5  to Defendants' unlawful policies, which would be alleviated by uniform relief: an injunction. *See*

6  Zylka Decl. ¶¶ 5, 10-13 (explaining that BAE relies on H-1B employees to remain competitive and

7  that they will be subject to the $100,000 Requirement to retain one of their employees); Waters Decl.

8  ¶¶ 11, 17-19 (explaining that Nephrology Associates has only been able to meet physician staffing

9  needs through the H-1B program and that their H-1B petition for a prospective physician is subject to

10 the $100,000 Requirement, unless Nephrology Associates' request for a NIE is granted); Witte Decl.

11 ¶¶ 10-13 (explaining that LBDS relies on H-1B teachers to fill critical instructional roles and cannot

12 afford the $100,000 Requirement, which may ultimately stall LBDS's ability to hire necessary staff

13 for the 2026-2027 school year).

14     Even though the Agency Policies now contemplate certain situations in which the $100,000

15 Requirement does not apply, *see* Oct. Guidance, ECF 46-9 at 2-3, they do not negate the propriety of

16 injunctive relief for the Class because—by definition—the Class includes only employers "who have

17 filed or will file an H-1B petition that is subject to the $100,000 fee under the Proclamation or the

18 Proclamation's implementing guidance, or would file such a petition but for the fee" and does not,

19 therefore, encompass employers that are not subject to the $100,000 fee for any reason.[12] Therefore,

20 enjoining Defendants from continuing the $100,000 Requirement is applicable classwide and will

21 uniformly apply to and benefit the Class.

22                          **CONCLUSION**

23     For the foregoing reasons, Plaintiffs' Motion should be granted and the Court should enter an

24 order (1) certifying the Class; (2) appointing the Named Plaintiffs as Class Representatives; and (3)

25 appointing the signatories below as Class Counsel.

26

27     [12] Because Named Plaintiffs seek classwide injunctive relief under Rule 23(b)(2), Rule
   23(c)(2)(B) notice is discretionary but not required as Plaintiffs do not have a right to opt out of the
28 class.

Dated: December 18, 2025

Respectfully submitted,

/s/ Harini Srinivasan
Harini Srinivasan*
Aniko Schwarcz*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, 8th Floor
Washington, D.C. 20005
(202) 408-4600
hsrinivsan@cohenmilstein.com
aschwarcz@cohenmilstein.com

Alexandra Gray*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine St., 14th Floor
New York, New York 10005
(212) 838-7797
agray@cohenmilstein.com

/s/ Karen C. Tumlin
Karen C. Tumlin (CA Bar No. 234691)
Esther H. Sung (CA Bar No. 255962)
Laura Flores-Perilla (CA Bar No. 355645)
Hillary Li (GA Bar No. 898375)*
Brandon Galli-Graves (TX Bar No. 24132050)*
Emily Satifka (NJ Bar No. 330452020)*
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
Emily.satifka@justiceactioncenter.org

/s/ Charles H. Kuck*
GA Bar No. 429940
**KUCK BAXTER LLC**
365 Northridge Rd., Suite 300
Atlanta, GA 30350
404-949-8154
Ckuck@immigration.net

/s/ Cynthia Liao
Cynthia Liao (CA Bar No. 301818)
Johanna M. Hickman (D.C. Bar No. 981770)*
Jennie L. Kneedler (D.C. Bar No. 500261)*
Steven Y. Bressler (D.C. Bar No. 482492)**
Elena Goldstein (D.C. Bar No. 90034087)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 808-1982 (Liao)
cliao@democracyforward.org
hhickman@democracyforward.org
jkneedler@democracyforward.org
sbressler@democracyforward.org
egoldstein@democracyforward.org

/s/ Kalpana Peddibhotla
Kalpana Peddibhotla (CA Bar No. 200330)
**SOUTH ASIAN AMERICAN JUSTICE COLLABORATIVE (SAAJCO)**
333 W. San Carlos Street, Suite 600
San Jose, CA 95110
(408) 550-9240
kalpana@saajco.org

/s/ Jesse M. Bless
JESSE M. BLESS*
MA Bar # 660713
**BLESS LITIGATION LLC**
6 Vineyard Lane
Georgetown MA 01833
781-704-3897
jesse@blesslitigation.com

/s/ Greg Siskind
Greg Siskind***
TN Bar No. 14487
**SISKIND SUSSER**
1028 Oakhaven Road
Memphis, TN 38119
(901) 682-6455
gsiskind@visalaw.com

*Attorneys for Named Plaintiffs BAE Industries, Nephrology Associates of the Carolinas PA, Lower Brule Day School, and the Proposed Class*

/s/ *Zachary R. New*
Zachary R. New***
Atty. Reg. No. (Colorado): 53992
**JOSEPH & HALL, P.C.**
12203 East Second Ave.
Aurora, CO 80011
(303) 297-9171
/s/ Zachary R. New
zachary@immigrationissues.com


\* Admitted *pro hac vice*
\*\* Motion to appear *pro hac vice* pending
\*\*\* Motion to appear *pro hac vice* forthcoming