Karen C. Tumlin (CA Bar No. 234691)
Esther H. Sung (CA Bar No. 255962)
Laura Flores-Perilla (CA Bar No. 355645)
Hillary Li (GA Bar No. 898375)*
Brandon Galli-Graves (TX Bar No. 24132050)*
Emily Satifka (NJ Bar No. 330452020)*
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
emily.satifka@justiceactioncenter.org

*Counsel for Plaintiffs*

* Admitted *pro hac vice*

[Additional co-counsel on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 4:25-cv-08454-HSG <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PROCEED PSEUDONYMOUSLY** <br><br> Judge: Hon. Haywood S. Gilliam, Jr. <br> Hearing: <br> Place: |

## I. INTRODUCTION

Plaintiffs Phoenix Doe and John Smith ("Doe Plaintiffs") seek to proceed pseudonymously on the public docket. Defendants fundamentally misunderstand this request, treating it as though Plaintiffs seek to conceal their identities from Defendants entirely. This is not what Plaintiffs request. As reflected in Plaintiffs' proposed order, two individual Plaintiffs seek to protect their identities in public filings, but, at the same time, Plaintiffs' counsel continue to seek to meet and confer with Defendants on a protective order that would allow the Court and Defendants' counsel to know their identities. Under such a protective order, Defendants' counsel would have full access to Doe Plaintiffs' identities to the extent necessary for litigation purposes. The protective order would limit two things: (1) government-wide sharing of Doe Plaintiffs' identities for non-litigation related immigration actions, which would expose Doe Plaintiffs to retaliatory immigration consequences, and (2) public disclosure of their identities on the docket, which would expose Doe Plaintiffs to public harassment and targeting by hostile individuals. Defendants mischaracterize this proposal as "withholding" information, but prior to Defendants filing their motion, Plaintiffs filed a proposed order (Mot. To Proceed Under Pseudonym at 3, ECF 4) that would include information about Doe Plaintiffs that is necessary to defend this action.

The five factors used by the Ninth Circuit to analyze pseudonym motions decisively support this motion. Defendants dismiss the threat of deportation as speculative, but deportation is the exact type of "extraordinary retaliation" the Ninth Circuit recognizes as severe. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1071 (9th Cir. 2000). Defendants also ignore that standard pseudonymity includes disclosure to Defendants, eliminating their prejudice arguments.

## II. ARGUMENT

"District courts have broad discretion to determine whether a plaintiff may proceed anonymously." *M.J.R. v. United States*, No. 23-CV-05821-VKD, 2023 WL 7563746, at *1 (N.D. Cal. Nov. 14, 2023) (citing *Advanced Textile Corp.*, 214 F.3d at 1068, and *Kamehameha*, 596 F.3d at 1045-46). The Court should therefore analyze the present factors and decide in favor of protecting Doe Plaintiffs from broad exposure and harassment. *Doe v. Kamehameha Schools/Pauahi Bishop Estate,* 596 F.3d 1036, 1042 (9th Cir. 2010). (citing *Advanced Textile Corp.* at 1068) (listing factors for granting pseudonymity, "'(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's

fears, ... (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest.").

### A. Defendants' prejudice arguments fail because pseudonymity would still allow disclosure to counsel.

The prejudice factor does not favor Defendants because Defendants will not be prejudiced. Defendants claim that pseudonymity would "prevent disclosure" to them. Opp. at 3, ECF 69. But here, the two individual Doe Plaintiffs are willing to disclose their identities to Defendants' counsel under a protective order, which would prevent disclosure to the Defendants themselves while allowing Defendants' counsel access for litigation purposes, and would restrict public disclosure of their identities. Thus, Defendants' counsel would have access to the two individual Plaintiffs' identities for litigation purposes while maintaining Doe Plaintiffs' public anonymity. This is consistent with *Kamehameha*, where the court stated, "we doubt that anonymity would hinder the defendants' standing defense. The Doe children have revealed their names under a protective order." 596 F.3d at 1039, n.2, 1045 n.7. *See also Does 1-2 v. Off. Personnel Mgmt.*, 763 F. Supp. 3d 58, 62 (D.D.C. 2025) (court's reasoning that plaintiffs' individual identities were not relevant to the merits of their class claims and that the defendants would not be prejudiced by not knowing their names).

Defendants devote substantial space to arguing pseudonymity would hide standing defects. Opp. at 9-10, ECF 69. But Plaintiffs are willing to disclose their identities to Defendants' counsel under a protective order that protects them from retaliation. Furthermore, the Court can even evaluate standing in camera if necessary for pseudonymous plaintiffs. *See Doe v. Madison, Sch. Dist. No. 321*, 177 F.3d 789, 792 (9th Cir. 1999) (noting that during an *in camera* hearing, plaintiffs revealed information establishing standing). Pseudonymity here does not shield the individual Doe Plaintiffs from standing scrutiny, it merely shields them from retaliation by the government and public harassment.[1]

---

[1] Defendants suggest that Rules 10(a) creates a procedural bar to pseudonymity. Opp. at 3-5, ECF 69. But courts have repeatedly rejected this argument. The First Circuit has explained that "it is less than obvious that a party's 'name' in this context means his true name, to the exclusion of a pseudonym" and has made clear that these rules do not mandate public disclosure. *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 67 (1st Cir. 2022). Rule 10(a) requires the complaint to "name all the parties." But when a court grants a motion to proceed pseudonymously, the pseudonym becomes the party's name for purposes of the public docket. Defendants also suggest dismissal under Rule 12(b)(4) for allegedly insufficient service. But such a suggestion is premature. As indicated in Plaintiffs' proposed order, Plaintiffs are willing to disclose their identities to Defendants in a manner that allows Defendants to defend this lawsuit while also protecting Plaintiffs from retaliation. A timely order by this Court for the parties to meet and confer and submit a joint protective order

**B. Deportation is "extraordinary retaliation" warranting pseudonymity, and Doe Plaintiffs are particularly vulnerable.**

The severity of harm, vulnerability to retaliation, and reasonableness of fears factors favor Plaintiffs. The Ninth Circuit recognizes "deportation, arrest, and imprisonment" as severe harm ultimately justifying pseudonymity. *Advanced Textile*, 214 F.3d at 1071. And both Phoenix Doe and John Smith will be vulnerable to this retaliatory harm if their identities are publicly disclosed. Both hold temporary non-immigrant statuses and seek to transition to H-1B status to continue their essential work. First Am. Compl. ¶¶ 27-28, 181, 186, 195. They depend on favorable government adjudications of their requests to remain in the United States while they are also suing the government agencies that will adjudicate their applications. This creates a particular vulnerability: they challenge H-1B restrictions while simultaneously seeking H-1B approvals[2] from the same agencies. *See Advanced Textile*, 214 F.3d at 1072-73 (finding plaintiffs vulnerable to retaliation where, among other things, they were "nonresident foreign workers" in Saipan, a U.S. territory, for the sole purpose of working in employers' garment factories and employers could have them deported).

Courts regularly grant pseudonymity in cases like this one, where the pseudonymous plaintiff reasonably fears immigration consequences stemming from participation in litigation. *See e.g. Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, 2017 WL 11725964 (D. Md. Mar. 17, 2017); *Doe 1. v. Mayorkas*, 530 F. Supp. 3d 893, n.2 (N.D. Cal. 2021); *Pacito v. Trump*, 768 F. Supp. 3d 1199, n.3 (W.D. Wash. 2025). Defendants' cited cases involved Plaintiffs suing entities without immigration enforcement power. *See e.g., Doe v. Merten*, 219 F.R.D. 387, 393 (E.D. Va. 2004) (denying pseudonymity to plaintiffs challenging state university admission policies where defendants were state officials lacking immigration enforcement power and federal agencies were not adverse parties). Here, Phoenix Doe and John Smith sue the agencies that will adjudicate their visa applications and control their immigration status—presenting the vulnerability *Advanced Textile* recognized. 214 F.3d at 1072-73.

---

that would accomplish these two goals would resolve this issue with plenty of time before Defendants' answer to the First Amended Complaint is due on January 29, 2026. ECF 74.

[2] John Smith and Phoenix Doe are or will be seeking a change of status to H-1B. Whether to grant a change of status is a discretionary decision by USCIS. *See* 8 U.S.C. § 1258(a) ("The Secretary of Homeland Security may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification . . . .") (emphasis added); USCIS Policy Manual Vol. 2, Part A, Ch. 4.A (ECF 46-10 at 1) ("The decision to grant or deny an extension of stay or change of status request involves an exercise of discretion by USCIS."); USCIS Policy Manual Vol. 1, Part E, Ch. 8.C.2 (ECF 46-11 at 7-8) ("non-exhaustive" list of numerous discretionary factors to consider).

Plaintiffs reasonably fear that public identification would subject Plaintiffs to heightened scrutiny in an enforcement climate where immigration benefits are increasingly politicized. Immigration adjudicators reviewing H-1B petitions would see that the Doe Plaintiffs sued the government over the $100,000 fee, and (whether consciously or unconsciously) could flag these applications for additional and unwarranted scrutiny. Additionally, interim enforcement actions while the case is pending are rightfully feared as the government has retaliated against those who speak out, including by attempting to take away their lawful status of noncitizens. *See, e.g.*, *Ozturk v. Trump*, 779 F.Supp.3d 462, 491-492 (D. Vt. 2025) (court found that student adequately alleged that her immigration detention was retaliatory in violation of the First Amendment); *see also President and Fellows of Harvard Coll. v. U.S. Dep't of Homeland Sec.,* 788 F. Supp. 3d 182 (D. Mass 2025) (finding that Harvard was likely to succeed on the merits of its claim that the government's Proclamation seeking to suspend entry of international students to the University constituted retaliation for exercising its First Amendment rights); *cf. American Bar Ass'n v. U.S. Dep't of Justice*, 783 F.Supp.3d 236 (D.D.C. June 2025) (challenging federal efforts to cut off grants and cooperation with the ABA in response to its public criticism of the administration and its support for disfavored legal positions, evidencing retaliatory withdrawal of government benefits); *Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F.Supp. 3d 105 (D.D.C. 2025) (finding that the government's Executive Order suspension of law firm Perkins Coie's security clearances while creating restrictions on federal contracting constituted retaliation). This documented pattern of violations establishes that Doe Plaintiffs' fear of retaliation is not speculative; it is based on the actual conduct of the administration that will adjudicate their immigration applications. When the government repeatedly retaliates against those who publicly challenge its policies, the presumption of regularity does not apply, and the Plaintiffs' fear that public identification will lead to retaliatory immigration enforcement is objectively reasonable.

In addition, Phoenix Doe reasonably does not want to have her mental health information publicly disclosed. Defendants contend Phoenix Doe "creat[ed] her own problem" by disclosing "irrelevant" mental health information. Opp. at 6, 10, ECF 69. But Doe's mental health is relevant to the harm that she is suffering as a result of the $100,000 fee. Pls.' Mot. for Prelim.

Inj. at 40-41 (citing Doe Decl. ¶ 16, ECF 75-9).

**C. Plaintiffs also face reasonable fears of harassment.**

The Proclamation declares the H-1B program "has been abused and exploited for decades to replace Americans with foreign labor" (Proclamation 10973, 90 Fed. Reg. at 46,027). This rhetoric has fueled hostility toward H-1B workers and those who support the program, amid a broader trend in animosity towards all immigrants. *See e.g.,* Nathan Taylor Pemberton, *The Young People Fixated on Who Gets to Work in America*, N.Y. Times (Dec. 13, 2025) https://www.nytimes.com/2025/12/13/style/h1b-visa-young-conservatives-maga.html (documenting the "hyperfixation of MAGA's youngest minds" on the H-1B visa and how it is a popular topic in conservative circles); JC Whittington et al., *Trump 'garbage' rhetoric about Somalis draws cheers from administration, silence from Republicans and alarm from critics*, Reuters, Reuters (Dec. 4, 2025), https://www.reuters.com/world/us/trump-garbage-rhetoric-about-somalis-draws-cheers-administration-silence-2025-12-04/; Stop AAPI Hate, *New Data: Asian Communities Face Surge in Hate in Response to Donald Trump's Presidential Victory* (Feb. 20, 2025), https://stopaapihate.org/2025/02/20/new-data-surge-in-hate-in-response-to-donald-trumps-presidential-victory/.

Federal court filings are publicly accessible nationwide, not confined to local communities, and anyone with internet access can find Plaintiffs' names on the public docket and target them for harassment. Defendants contend that Phoenix Doe's residence in San Francisco and John Smith's congregation's knowledge of his immigration status somehow diminishes their harassment concerns. Opp. at 6-7, ECF 69. But Northern California residency[3] provides no shield from online harassment campaigns or hostile individuals from across the country who monitor federal court dockets. Similarly, John Smith's congregation's private knowledge of his immigration status differs fundamentally from his name being publicly linked to the lawsuit in federal court records accessible to anyone nationwide.

This hostile climate is documented within this case itself. A motion to intervene in this case contained blatantly sexist statements about Phoenix Doe. *See* Bugoni Mot. to Intervene at 8, ECF 33 (Nov. 7, 2025) (suggesting that, as a female, Doe's PTSD could "be mitigated by a tub of ice cream, or

---

[3] Defendants assume Doe lives in San Francisco. Doe lives in the Northern District of California, but consistent with her interest in privacy, she has not disclosed in this lawsuit the exact city where she lives.

perhaps buying jewelry or shoes, and of course, D***" (expletive in original)); *see also id.* at 9 (accusing Doe of "yelling and screaming, becoming hysterical and abusive, blaming everybody else for her misery, and becoming vindictive" instead of "think[ing] the situation through, as a Male would"). The would-be intervenor also made xenophobic statements targeting those seeking H-1B visas, targeting an organizational plaintiff as "just another Indian scammer staffing agency" operating under a "standard of filth." *See id.* at 5. While the Court denied intervention, the filing demonstrates precisely the targeted harassment that Plaintiffs fear should their identities be disclosed publicly.

### D. The public interest supports pseudonymity.

The public interest in transparency must be balanced against the competing interest in ensuring access to courts. Immigrants facing potential retaliation should not be forced to choose between pursuing legal relief and protecting their immigration status, and the public's interest in judicial resolution of Proclamation 10973's lawfulness is fully served without public disclosure of Doe Plaintiffs' names. The legal issues here are unaffected by whether Phoenix Doe and John Smith use their real names on the public docket.

Defendants cite press releases publicizing this lawsuit. Opp. at 10. But Defendants conflate publicity about the lawsuit with publicity about Plaintiffs' identities, two entirely different things. The press releases cited by Defendants discussed the legal issues present in the case; they did not disclose Phoenix Doe's or John Smith's identities. The public can follow this case's legal issues without knowing the individual Doe Plaintiffs' names. Courts do grant pseudonymity when harms are as significant as they are here despite public attention to the underlying legal question. *See Does I thru XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072-1073 (9th Cir. 2000). In *Doe v. Kamehameha*, the court found that the use of pseudonyms was unnecessary because the alleged threatened harm to the plaintiffs was not severe and therefore did not overcome the public's interest in open access to the courts. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, No. CIV. 08-00359 ACK, 2008 WL 4755674, at *3 (D. Haw. Oct. 28, 2008), *aff'd*, 596 F.3d 1036 (9th Cir. 2010). Here, however, Phoenix and John have described the material risks of deportation and harassment and the harms they would face if their names were made public. [4]

---

[4] Defendants' citation to controversial cases involves individuals proceeding under their own names, suggesting that

## III. CONCLUSION

This Circuit's five-factor test weighs decisively in favor of pseudonymity. Deportation is extraordinary retaliation, and the individual Doe Plaintiffs reasonably fear it given the documented hostilities towards immigrants generally and H-1B recipients specifically. Disclosure pursuant to a protective order would eliminate any prejudice to Defendants while protecting Doe Plaintiffs from retaliation by way of deportation and from nationwide harassment. The public interest in access to the courts and resolution of important legal questions is served without knowing the individual Doe Plaintiffs' names.

The Court should grant Plaintiffs' motion for Phoenix Doe and John Smith to proceed pseudonymously and order the parties to meet and confer and submit a joint protective order.

Date: December 23, 2025                                     Respectfully submitted,

/s/ Karen C. Tumlin                                         /s/ Cynthia Liao
Karen C. Tumlin (CA Bar No. 234691)                         Cynthia Liao (CA Bar No. 301818)*
Esther H. Sung (CA Bar No. 255962)                          Johanna N. Hickman (D.C. Bar No. 981770)*
Laura Flores-Perilla (CA Bar No. 355645)                    Jennie L. Kneedler (D.C. Bar No. 500261)*
Hillary Li (GA Bar No. 898375)*                             Steven Y. Bressler (D.C. Bar No. 482492)*
Brandon Galli-Graves (TX Bar No. 24132050)*                 Elena Goldstein (D.C. Bar No. 90034087)*
Emily Satifka (NJ Bar No. 330452020)*
**JUSTICE ACTION CENTER**                                   **DEMOCRACY FORWARD FOUNDATION**
P.O. Box 27280                                              P.O. Box 34553
Los Angeles, CA 90027                                       Washington, DC 20043
(323) 450-7272                                              (202) 808-1982 (Liao)
karen.tumlin@justiceactioncenter.org                        cliao@democracyforward.org
esther.sung@justiceactioncenter.org                         hhickman@democracyforward.org
laura.flores-perilla@justiceactioncenter.org                jkneedler@democracyforward.org

---

political controversy alone does not warrant pseudonymity. Opp. at 8, ECF 69. This comparison fails as the cases referenced do not involve plaintiffs facing deportation. *See Brnovich v. Biden*, No. CV-21-01568-PHX-MT:, 2021 WL 7630209 (D. Ariz. Dec. 15, 2021) (federal employees); *Fisher v. Univ. of Tex.*, 579 U.S. 365 (2016) (students); *Kerry v. Din*, 576 U.S. 86 (2015) (citizen spouse); *Zivotofsky v. Clinton*, 566 U.S. 189 (2012) (citizen child). The combination of deportation risk and harassment is what makes this case distinct.

| | |
|---|---|
| hillary.li@justiceactioncenter.org<br>brandon.galli-graves@justiceactioncenter.org<br>emily.satifka@justiceactioncenter.org<br><br>/s/ *Charles H. Kuck*\*<br>GA Bar No. 429940<br>**KUCK BAXTER LLC**<br>365 Northridge Rd., Suite 300<br>Atlanta, GA 30350<br>404-949-8154<br>Ckuck@immigration.net<br><br>/s/ *Zachary R. New*<br>Zachary R. New\*<br>Atty. Reg. No. (Colorado): 53992<br>**JOSEPH & HALL, P.C.**<br>12203 East Second Ave.<br>Aurora, CO 80011<br>(303) 297-9171<br>zachary@immigrationissues.com<br><br>/s/ *Harini Srinivasan*<br>Harini Srinivasan\*<br>Aniko Schwarcz\*<br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br>1100 New York Ave. NW, 8th Floor<br>Washington, D.C. 20005<br><br>Alexandra Gray\*<br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br>12 Pine St.<br>New York, New York 10005 | sbressler@democracyforward.org<br>egoldstein@democracyforward.org<br><br>/s/ *Kalpana Peddibhotla*<br>Kalpana Peddibhotla (CA Bar No. 200330)<br>**SOUTH ASIAN AMERICAN JUSTICE COLLABORATIVE (SAAJCO)**<br>333 W. San Carlos Street, Suite 600<br>San Jose, CA 95110<br>(408) 550-9240<br>kalpana@saajco.org<br><br>/s/ *Jesse M. Bless*<br>JESSE M. BLESS\*<br>MA Bar # 660713<br>**BLESS LITIGATION LLC**<br>6 Vineyard Lane<br>Georgetown MA 01833<br>781-704-3897<br>jesse@blesslitigation.com<br><br>/s/ *Greg Siskind*<br>Greg Siskind\*\*<br>TN Bar No. 14487<br>**SISKIND SUSSER**<br>1028 Oakhaven Road<br>Memphis, TN 38119<br>(901) 682-6455<br>gsiskind@visalaw.com<br><br>*Counsel for Plaintiffs*<br><br>\* Admitted *pro hac vice*<br>\*\* Motion to appear *pro hac vice* forthcoming |