BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

TIBERIUS DAVIS
Counsel To The Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director

DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
Trial Attorney
DC Bar # 90027182
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*<br><br>                    Plaintiffs,<br><br>          v.<br><br>DONALD J. TRUMP, President of the United States, *et al.*,<br><br>                    Defendants. | Case No.  4:25-cv-8454-HSG<br><br>**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**HEARING DATE AND TIME: FEBRUARY 19, 2026 AT 2:00PM** |

OPP. CLASS CERT.                                    No. 4:25-cv-8454-HSG

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND .................................................................................................... 2

I. The H-1B Program .................................................................................. 2

II. Presidential Proclamation 10973 ......................................................... 3

III. Procedural Background in *Global Nurse Force* ................................ 4

LEGAL STANDARD ............................................................................................ 5

ARGUMENT .......................................................................................................... 6

I. Plaintiffs' Fail To Meet The Class Definition Requirements. ............. 6

    a. Plaintiffs Cannot Establish Numerosity. ....................................... 6

    b. Plaintiffs Cannot Establish Commonality. ..................................... 7

    c. Plaintiffs Cannot Establish Typicality. ........................................ 10

    d. Plaintiffs Cannot Show The Named Plaintiffs And Class Counsel Are Adequate Class Representatives. .............................................................. 11

    e. Plaintiffs Cannot Show Final Injunctive Relief Is Appropriate For The Class As a Whole. ....................................................................... 13

II. Plaintiffs' Proposed Class Includes Members Who Are Barred From Receiving Duplicitous Relief Under the Doctrine Of Claim Preclusion. ................ 14

CONCLUSION .................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Chem. Council v. Dep't of Transp.*,
    468 F.3d 810 (D.C. Cir. 2006) ....................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 8, 11

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ........................................................................ 9

*Caremax Inc. v. Holder*,
    40 F. Supp. 3d 1182 (N.D. Cal. 2014) ........................................................ 2

*Chamber of Commerce v. DHS*,
    25-CV-3675 (BAH), 2025 WL 3719234 (D.D.C. Dec. 23, 2025) ............... 9, 15, 16

*Eichman v. Fotomat Corp.*,
    759 F.2d 1434 (9th Cir. 1985) ................................................................... 15

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...................................................................... 12

*Flores v. CVS Pharmacy, Inc.*,
    No. 2:07-CV-05326-JHN-EX, 2010 WL 3656807 (C.D. Cal. Sept. 7, 2010) ......... 14

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ..................................................................................... 8

*GP Vincent II v. Est. of Beard*,
  68 F.4th 508 (9th Cir. 2023) ...................................................................................... 15
*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ..................................................................................................... 5
*Nguyen Da Yen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976) ................................................................................... 7
*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ........................................................................................ 5
*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ...................................................................................... 15
*Rutledge v. Elec. Hose & Rubber Co.*,
  511 F.2d 668 (9th Cir. 1975) ........................................................................................ 6
*Santos v. TWC Admin. LLC*,
  No. CV1304799MMMCWX, 2014 WL 12558009 (C.D. Cal. Aug. 4, 2014) ......................... 13
*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) ................................................................................... 7
*Small v. Allianz Life Ins. Co. of N. Am.*,
  122 F.4th 1182 (9th Cir. 2024) ................................................................................... 10
*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
  322 F.3d 1064 (9th Cir. 2003) ................................................................................... 16
*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ................................................................................... 10
*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ........................................................................................ 6
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................... 5, 7, 8, 13
*Western Radio Servs. Co. v. Glickman*,
  123 F.3d 1189 (9th Cir.1997) ..................................................................................... 15
*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir.) ................................................................................................ 6

Statutes

5 U.S.C. § 603(a) ............................................................................................................ 15
8 U.S.C. § 1101(a)(15)(H)(i)(b) ................................................................................... 3, 4
8 U.S.C. § 1182(f) ............................................................................................................. 4
8 U.S.C. §1184(c) ............................................................................................................. 2
8 U.S.C. § 1184(g) ............................................................................................................ 2
8 U.S.C. § 1185(a)(1) ....................................................................................................... 4

Rules

Fed. R. Civ. P. 23 ................................................................................................ 1, 5, 6, 13

Regulations

8 C.F.R. § 214.2(h)(1)(i) ................................................................................................... 5

8 C.F.R. § 214.2(h)(4)(iii)(B)(1) ............................................................................ 3
8 C.F.R. § 214.2(h)(8)(iii) ....................................................................................... 3
8 CFR § 214.2(h)(13)(iii) ......................................................................................... 2
89 FR 103054 (Dec. 18, 2024) ............................................................................. 11

Other Authorities

*Characteristics of H-1B Specialty Occupation Workers* report at p. 16,
   https://www.uscis.gov/sites/default/files/document/reports/ola_signed_h1b_characteristics_co
   ngressional_report_FY24.pdf (April 29, 2025) ............................................... 12
*Grassley, Durbin Take Aim at Tech, Finance and Retail Sectors for Favoring H-1B Visa Holders
   over American Workers*, U.S. SENATE COMM. ON THE JUDICIARY,
   https://www.judiciary.senate.gov/press/rep/releases/grassley-durbin-take-aim-at-tech-finance-
   and-retail-sectors-for-favoring-h-1b-visa-holders-over-american-workers ........................... 11
*H-1B Program*, U.S. DEP'T OF LABOR, www.dol.gov/agencies/whd/immigration/h1b (last visited
   January 12, 2026) ...........2Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant
   Workers*, 90 Fed. Reg. 46,027 (Sep.24, 2025) ....................................................... 3
Jennifer Elias,  *'We need the smartest people': Nvidia, OpenAI CEOs react to Trump's H-1B visa
   fee*, CNBC (Updated Sept. 23, 2025), https://www.cnbc.com/2025/09/22/nvidia-openai-ceos-
   huang-altman-trump-h1b-visas.html?msockid=032b0264a43b6a5e1d871487a5d16bb4 .......... 8
NEWBERG ON CLASS ACTIONS § 3:26 (5th ed.) ............................................................ 10
*Nvidia to continue sponsoring H-1B visas, Business Insider reports*, REUTERS (October 7, 2025),
   https://www.reuters.com/business/nvidia-ceo-huang-says-chipmaker-will-continue-sponsor-h-
   1b-visas-business-2025-10-07/ ................................................................................. 8

## INTRODUCTION

Plaintiffs seek to certify an extremely broad class of all employers who *might* participate in the H-1B program, including employers who compete against one another and employers who have already received a decision on the merits in the District of Columbia. This class is wholly untenable and fails to satisfy the requirements of Fed. R. Civ. P. 23. The Court should deny Plaintiffs' Motion for the below reasons.

First, Plaintiffs' proposed class is overbroad. They provide insufficient evidence to show who would be part of the class, especially if the Court properly excludes class members represented by Plaintiffs in *Chamber of Commerce v. DHS*, No. 3:25-cv-8454 (D.D.C.) ("*Chamber*"). Thus, they fail to satisfy the numerosity requirement of Rule 23. Second, Plaintiffs' proposed class lacks commonality and typicality. Employers within the proposed class operate in entirely different ways with vastly different business needs. Some employers may view the effects of the Proclamation negatively, while others may view it favorably. Third, Nephrology Associates, BAE Industries, and Lower Brule Day School ("Named Plaintiffs"), as well as proposed class counsel, cannot adequately represent the needs of the class. This is because, as stated above, the class is comprised of vastly different employers, many of whom compete against one another and may not even believe the Proclamation has harmed their business.

Finally, injunctive and declaratory relief would not satisfy the needs of all putative class members. Some proposed members may have already paid the $100,000. Other proposed members may believe the payment is necessary for various ideological and/or economic reasons. An injunction simply halting the Proclamation would not cure the injuries, if any, that these proposed members have allegedly faced.

In the alternative, the Court should limit any certified class to exclude those who have already had their claims litigated in *Chamber* because of the doctrine of claim preclusion.

# BACKGROUND

## I.    The H-1B Program

The Immigration and Nationality Act provides for the classification of qualified temporary foreign workers who are coming to the United States to perform services in a "specialty occupation" based "upon petition of the importing employer." 8 U.S.C. §§ 1101(a)(15)(H)(i)(b); 1184(c)(1). "The intent of the H-1B provisions is to help employers who cannot otherwise obtain needed business skills and abilities from the U.S. workforce by authorizing the temporary employment of qualified individuals who are not otherwise authorized to work in the United States."[1]

By statute, H-1B petitions fall into two broad categories: cap-subject petitions and cap-exempt petitions. Cap-subject petitions are counted against the strict numerical limitations created by Congress, which, for any fiscal year after 2003, is 65,000 ("Regular Cap"), with an additional 20,000 for individuals who have earned a master's or higher degree from a United States institution of higher education ("Master's Cap"), for a total annual allocation of 85,000 initial H-1B visas or initial grants of H-1B status. *See* 8 U.S.C. § 1184(g)(1)(A) (Regular Cap); § 1184(g)(5)(C) (Master's Cap). Once a beneficiary has been counted towards the numerical allocations, the beneficiary may be cap-exempt for a 6-year period of H-1B admission, with the potential for a longer period if certain steps have been taken to pursue lawful permanent resident status. *See* 8 U.S.C. § 1184(g)(7); 8 CFR § 214.2(h)(13)(iii)(D) and (E). Other H-1B petitions are cap-exempt based on the nature of the petitioning employer or work location. *See* 8 U.S.C. § 1184(g)(5)(A) and (B).

---

[1] *See H-1B Program*, U.S. DEP'T OF LABOR, www.dol.gov/agencies/whd/immigration/h1b (last visited January 12, 2026); *see also Caremax Inc. v. Holder*, 40 F. Supp. 3d 1182, 1187 (N.D. Cal. 2014) ("Fundamentally, an H–1B visa allows an employer … to fill a temporary position because of a special need, presumably one that cannot be easily fulfilled within the U.S.").

Before a petitioning employer is eligible to submit a Form I-129, Petition for a Nonimmigrant Worker, requesting H-1B classification on behalf of a beneficiary who is subject to the H-1B cap, the petitioner must submit a registration for that beneficiary for the H-1B cap lottery through the U.S. Citizenship and Immigration Services ("USCIS") website. *See* 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). When USCIS determines that it has received sufficient registrations, it closes the registration period and randomly selects, through a computer-generated program, the number of unique beneficiaries deemed necessary to meet the cap among the registrations properly submitted. *See id.* at §§ 214.2(h)(8)(iii)(A)(5)(ii); 214.2(h)(8)(iii)(A)(6)(ii). The employer must then file a Form I-129 to request the classification of the alien as an H-1B nonimmigrant worker (known as an "H-1B petition"). *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(4)(iii)(B)(1). A petitioning employer for an alien that is cap-exempt may file the Form I-129 petition at any time. *Id.*

## II.    Presidential Proclamation 10973

On September 19, 2025, President Trump issued Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg. 46,027 (Sep. 24, 2025) ("the Proclamation") in response to the decades-long abuse of the H-1B nonimmigrant worker visa program. In the Proclamation, the President determined that "[t]he large-scale replacement of American workers through systemic abuse of the [H-1B] program has undermined both [the United States'] economic and national security." *Id.* The President explained that "[t]he high numbers of relatively low-wage workers in the H-1B program undercut" the program's integrity and "are detrimental to American workers' wages and labor opportunities, especially at the entry level, in industries where such low-paid H-1B workers are concentrated." *Id.* at 46,028. Further, "abuses of the H-1B program present a national security threat by discouraging Americans from pursuing careers in science and technology, risking American leadership in these fields." *Id.* As a result, the President found that

OPP. CLASS CERT.                  3                  No. 4:25-cv-8454-HSG

"the unrestricted entry" into the country of certain H-1B temporary workers "would be detrimental to the interests of the United States because such entry would harm American workers, including by undercutting their wages." *Id.*

Based on these finding, the President invoked his authority under 8 U.S.C. §§ 1182(f) and 1185(a)(1) to adopt temporarily "reasonable rules, regulations, and orders" and/or to restrict temporarily "the entry into the United States of aliens as nonimmigrants to perform services in a specialty occupation" under 8 U.S.C. § 1101(a)(15)(H)(i)(b) "except for those aliens whose petitions are accompanied or supplemented by a payment of $100,000—subject to the exceptions set forth" in the Proclamation. 90 Fed. Reg. at 46,028. The Proclamation instructed the Secretary of Homeland Security to restrict decisions on H-1B petitions not accompanied by the $100,000 payment, and it instructed the Secretary of State to confirm payment of $100,000 before adjudicating any visa application. *Id.* at 46,029. It also instructed the Department of State and the Department of Homeland Security to take all necessary steps to implement the Proclamation and deny entry to the United States of any H-1B nonimmigrant whose employer has not made the $100,000 payment. *Id.* at 46,029. The restrictions are set to expire after 12 months, absent an extension. *Id.* at 46,028.

### III.    Procedural Background in *Global Nurse Force*

Plaintiffs filed this lawsuit on October 3, 2025, challenging the Proclamation as exceeding statutory authority and as unlawful under the Administrative Procedures Act ("APA") and Regulatory Flexibility Act. Nearly two and a half months later, Plaintiffs filed the Amended Complaint (ECF No. 74) and Motion for Class Certification (ECF No. 76) ("Motion").[2] Plaintiffs seek class certification of:

---

[2] Plaintiffs also filed a Motion for Preliminary Injunction (ECF No. 75) which Defendants are concurrently filing an opposition to.

All U.S. employers who have filed or will file an H-1B petition that is subject to the $100,000 fee under the September 19, 2025 Proclamation, "Restriction on Entry of Certain Nonimmigrant Workers," or the Proclamation's implementing guidance, or would file such a petition but for the fee, with the United States Citizenship and Immigration Services received on or between September 21, 2025 and September 21, 2026, to employ a qualified temporary nonimmigrant worker in a specialty occupation in the United States under 8 U.S.C. § 1101(a)(15)(H)(i)(b) and 8 C.F.R. § 214.2(h)(1)(i).

Motion at 1. Plaintiffs assert that this proposed class satisfies all requirements of Fed. R. Civ. P. 23(a) and should be certified by the Court immediately as a Rule 23(b)(2) class. Mot. at 11.

## LEGAL STANDARD

Class actions reflect departures from the usual rule that only named parties may litigate a dispute. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("*Wal-Mart*"). To fall within this narrow exception, proposed class representatives must "affirmatively demonstrate" their compliance with Rule 23. *Id.* at 350. This is not just a "mere pleading standard." *Id.* "'[P]laintiffs must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . .' and must carry their burden of proof 'before class certification.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (emphasis and alteration in original) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)). In assessing such proof, courts must rigorously analyze each of Rule 23's requirements. *See Wal-Mart*, 564 U.S. at 351–52.

To satisfy Rule 23(a), Plaintiffs must demonstrate that: (1) the class is so numerous that joinder is unrealistic ("numerosity"); (2) the claims raise common questions of law and fact ("commonality"); (3) the class representatives' claims must be typical of claims of other class members ("typicality"); and (4) the named representatives and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a)(1)-(4). In addition to the Rule 23(a) prerequisites, a plaintiff must further demonstrate that the action fits within at least one of the three categories enumerated in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1)–

(3). Here, Plaintiffs seek to certify under Rule 23(b)(2), which requires them to show that Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Therefore, for the Court to certify the proposed class, it must find that all elements of Rule 23(a) are met as well as the additional element found in Rule 23(b)(2).

The party seeking class certification bears the burden of proof to demonstrate that it has met all four Rule 23(a) prerequisites and that the class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.). A complaint's failure to meet "*any one* of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975) (emphasis added).

## ARGUMENT

### I.  Plaintiffs' Fail To Meet The Class Definition Requirements.

#### a.  Plaintiffs Cannot Establish Numerosity.

A class must be defined clearly enough that the court can determine who is included and who is not. Courts examine whether a proposed class can be identified using objective, administratively feasible criteria as part of the Rule 23 analysis. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018). Plaintiffs fail to provide a reasonable estimate of the size of the class and therefore cannot establish numerosity.

Plaintiffs' definition essentially includes any employer who *could* file an H-1B petition subject to the Proclamation. Mot. at 1 ("All U.S. employers who have filed or will file an H-1B petition…or would file such a petition but for the fee…"). It also includes all employers who *would* file a petition absent the Proclamation. Plaintiffs provide no breakdown between those who will file and those who would, absent the Proclamation. Plaintiffs also provide no distinctions between employers who will/would file H-1B petitions for aliens already inside the U.S. who request and

are granted a change of status, amendment of stay, or extension of stay and thus would not be subject to the payment. Nor do they provide evidence on the number of employers who will/would file but cannot because they are otherwise ineligible to file a petition (e.g., their petition is subject to the numerical limitations and the beneficiary they registered in the H-1B lottery was not selected). Plaintiffs, in fact, provide no meaningful analysis breaking down who is in the class at all. While they submit evidence of the number of employers that submitted H-1B petitions in Fiscal Year 2022 and 2024, *see* Mot. at 11, this does not account for many variables, including the ones detailed above. In fact, Plaintiffs themselves admit that "this sum of tens of thousands of employers does not include those that were deterred from filing because of the fee…." Mot. at 12.

Such speculation cannot satisfy Rule 23(a)(1). *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 661–62 (N.D. Cal. 1976). Courts require plaintiffs to present "some evidence of, or reasonably estimate, the number of class members with specificity." *Schwartz v. Upper Deck Co*., 183 F.R.D. 672, 680-81 (S.D. Cal. 1999). Plaintiffs' declarations support a class size ranging anywhere from the named representatives to some unknown number above or below 14,000. That indeterminacy underscores Plaintiffs' failure to satisfy their burden of proof.

### b.  Plaintiffs Cannot Establish Commonality.

Plaintiffs, in their Motion, specifically state that the class shares a common question "notwithstanding any employer-specific differences (such as size, sector, or whether the employers [sic] is cap-subject or cap-exempt." Mot. at 14. But this cannot be discounted, and in fact proves why Plaintiffs' proposed class lacks the commonality required for certification.

Rule 23(a)(2) requires Plaintiffs to identify questions of law and fact common to the class. *See Wal-Mart*, 564 U.S. at 351. Class claims must depend on a common contention that allows a court to resolve the central issue of each claim "in one stroke." *Id.* at 350. "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of

a class-wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Id.* (cleaned up) (citations omitted). Further, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Id.* at 349–50 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

The proposed class in this case are potentially thousands of different employers who each would have different alleged injuries due to the Proclamation. These employers include "mom and pop" stores, local nonprofits, massive universities with billion in endowments, and industry giants. For instance, Named Plaintiffs in this case are small businesses seeking to file a single H-1B petition in the near future. They allege great harm because they fear they will not be able to meet their business needs because of the Proclamation. Mot. at 7–8. Plaintiffs provide no evidence how all putative class members will experience the same alleged potential harms. For example, a larger industry player would have much more difficulty claiming that its business needs will suffer because of the Proclamation than employers the same size as Named Plaintiffs. Such large employers can likely easily adjust, pay the money, or seek a refund through individual suits later. The injuries of this broad class are thus anything but common.

In fact, large companies have already expressed an intention to pay the $100,000 and support of its incentives.[3] Because of this, the proposed class sweeps in persons who potentially

---

[3] *See Nvidia to continue sponsoring H-1B visas, Business Insider reports*, REUTERS (October 7, 2025), https://www.reuters.com/business/nvidia-ceo-huang-says-chipmaker-will-continue-sponsor-h-1b-visas-business-2025-10-07/ ("CEO Jensen Huang said that the company will continue to sponsor H-1B visas and cover all associated cost"); *see also* Jennifer Elias, *'We need the smartest people': Nvidia, OpenAI CEOs react to Trump's H-1B visa fee*, CNBC (Updated Sept. 23, 2025), https://www.cnbc.com/2025/09/22/nvidia-openai-ceos-huang-altman-trump-h1b-visas.html?msockid=032b0264a43b6a5e1d871487a5d16bb4 ("OpenAI CEO Sam Altman also expressed a positive outlook on Trump's changes. 'We need to get the smartest people in the country, and streamlining that process and also sort of outlining financial incentives seems good to me,' Altman said.").

could not have been injured *at all*, rendering it not only indefinite but incompatible with Article III. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997). Many encompassed by the proposed class definition could fail to demonstrate any concrete or imminent injury for themselves, as this class includes members who may never even file, due to the Proclamation or not, an H-1B petition or may not be eligible to file. *See Chamber*, No. 25-CV-3675 (BAH), 2025 WL 3719234, at *9 (D.D.C. Dec. 23, 2025) ("[s]uch anonymity among the Chamber's cap-subject members claiming harm from the Proclamation may 'fall short of establishing certainly impending dangers for any particular member of the [Chamber's] association[].' (citing *Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006)). In addition, some class members may actually *benefit* from the Proclamation. For example, if they have one particular skilled employee they want, but are subject to the lottery, the Proclamation payment might may reduce the number of prospective petitioners in the lottery pool and thus makes those who are willing to pay the $100,000 more likely to obtain the H-1B visa and hire the employee. Moreover, some class members are likely to be competitors and benefit from their rivals not hiring the employee(s) they desire. All of these differences between proposed class members also bear on the preliminary injunction factors, such as irreparable harm. The bottom line is a class of all employers who may seek an H-1B is too complex, varied, and broad for class certification.

Although the Ninth Circuit has held commonality is satisfied when plaintiffs are "challen[ging] a system-wide practice or policy that affects all of the putative class members," the Court in that case found that all putative class members would "suffer similar harm" but for an injunction. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). The full quote also reads "[w]e have previously held, *in a civil-rights suit*, that commonality is satisfied..." *Id.* (emphasis added). Plaintiffs provide no

case law about why their *ultra vires* and APA claims warrant the same treatment, as proposed class members are likely to experience vastly different alleged injuries. Indeed, the fact that Plaintiffs (wrongly) claim there are agency actions extending from the Proclamation highlights these issues, as some class members will not be harmed by the alleged agency actions and (again) others might benefit. The bottom line is a class of all employers who may seek an H-1B is too complex, varied, and broad for class certification.

### c. Plaintiffs Cannot Establish Typicality.

While the commonality analysis looks at the relationship among the class members, the typicality analysis looks at the relationship between the proposed class representative and the rest of the class. NEWBERG ON CLASS ACTIONS § 3:26 (5th ed.). Typicality focuses on whether the class representatives' claims and interests are sufficiently aligned with the class's interest. *See Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201-02 (9th Cir. 2024). "Measures of typicality include whether other members have the *same or similar injury*, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1202 (emphasis added) (quoting *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016)).

Plaintiffs seek for the Court to certify a putative class "in conjunction with the pending motion for preliminary injunction." Mot. at 10. For similar reasons as stated above, Plaintiffs fail to show how the arguments and claims made by Named Plaintiffs are typical of all proposed class members. For example, Named Plaintiffs allege that they *must* recruit or retain an H-1B worker without submitting the $100,000 or face "imminent injury". Mot. at 7–8, 15–16. Plaintiffs, however, have not and could not show that an industry giant like Amazon could not instead pay

the $100,000 or seek to recruit an American worker instead.[4] Plaintiffs themselves state that "Named Plaintiffs and putative Class members may operate different entities with different organizational needs and circumstances." Mot. at 15. But against Plaintiffs' wishes, these distinctions should not be discounted. They, in fact, show that the purported irreparable harm and equities would vary wildly among this overbroad class.

### d. Plaintiffs Cannot Show The Named Plaintiffs And Class Counsel Are Adequate Class Representatives.

Neither Named Plaintiffs nor class counsel are adequate to represent the proposed class. First, Rule 23(a)(4) requires that the named parties be able to "fairly and adequately protect the interests of the class." *Amchem Prods.*, 521 U.S. at 625. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up).

Named Plaintiffs fail to show how they could protect the interests of the thousands of employers who have utilized, will continue, or would utilize the H-1B program.[5] Nephrology Associates is a small medical practice seeking to file a single H-1B petition. Mot. at 7. Similarly, BAE Industries is a small automotive supplier seeking to file a single H-1B petition. *Id.* at 8. Finally, Lower Brule Day School is a K-12 school seeking to recruit one alien and file an H-1B petition for the next school year, who may not even be subject to the $100,000 payment. *Id.* Not

---

[4] *See supra* n.3 discussing two employers, Nvidia and OpenAI, who have already signified they intend to pay the $100,000.

[5] *See* 89 FR 103054, at 103192 (Dec. 18, 2024) ("Using FY 2022 internal data on actual filings of Form I-129 H-1B petitions, DHS identified 44,593 unique entities."); *see also Grassley, Durbin Take Aim at Tech, Finance and Retail Sectors for Favoring H-1B Visa Holders over American Workers*, U.S. SENATE COMM. ON THE JUDICIARY, https://www.judiciary.senate.gov/press/rep/releases/grassley-durbin-take-aim-at-tech-finance-and-retail-sectors-for-favoring-h-1b-visa-holders-over-american-workers (discussing that 10 major employers, such as Amazon, Apple, and Google, applied for and received approval to hire *thousands* of H-1B employees in Fiscal Year 2025 alone in contrast to small employers such as Named Plaintiffs who only wish to submit *one* petition).

only is each of the Named Plaintiffs one employer seeking to file *one* H-1B petition for an alien beneficiary petition, but none exist in the "professional, scientific, and technical services" industry, which is the industry with the most H-1B petitions.[6] Further, Lower Brule School has not even recruited a teacher yet, so it is entirely speculative that they would be subject to the Proclamation, thus making them potentially ill-suited to represent a class they would not even be apart of. Plaintiffs attempt to discount these distinctions in their Motion, but they have provided no evidence how Named Plaintiffs can represent the interests of employers vastly different from themselves, many of whom are in direct competition with one another. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ("adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees.").

Similarly, class counsel fails to show how they could adequately represent the massive class of employers included in the proposed class. Defendants do not contend that Plaintiffs have shown that proposed class counsel has the requisite skills and experience to represent a large class. However, multiple employers within this class are in competition with one another (i.e., Amazon, Google, Meta, etc.). Further, all employers who fall within the class could benefit and/or be allegedly harmed by the Proclamation in various ways. For example, one employer could fail to fill a position, as Named Plaintiffs contend, while another could easily fill the position with a different worker, remedying the alleged injury. The nature of H-1B, inclusive of its lottery system, naturally makes the experiences of all proposed class members vastly different. Plaintiffs have

---

[6] *See Characteristics of H-1B Specialty Occupation Workers* report at p. 16, https://www.uscis.gov/sites/default/files/document/reports/ola_signed_h1b_characteristics_congressional_report_FY24.pdf (April 29, 2025) ("The most common industry sector among employers of H-1B workers in FY 2024 was the professional, scientific, and technical services sector, which accounts for almost half (48 percent) of all approved petitions for H-1B workers.").

provided no basis for concluding every employer who may seek to file an H-1B petition shares the same interests, namely, that the requirement of a $100,000 payment creates an "injury" for every employer in the class.[7]

In fact, some employers may even prefer the payment requirement for the reasons stated in the Proclamation, and believe it could reduce competition and increase the likelihood that they will be eligible to petition for a cap-subject worker they want to hire. Other employers may support the Proclamation for ideological or economic reasons, and not be adequately represented by counsel who have made their views known in their briefs. Plaintiffs claim that "there are no conflicts of interest because the Named Plaintiffs' 'interests are aligned with those of absent class members.'" Mot. at 16 (citation omitted). Ultimately, the class proposed by Plaintiffs' counsel is broad and diverse, and Plaintiffs have failed to show how the three class representatives and proposed class counsel can adequately represent *all* of the interests at play.

### e. Plaintiffs Cannot Show Final Injunctive Relief Is Appropriate For The Class As a Whole.

Plaintiffs cannot demonstrate that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole", and thus the Court should find Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 23(b)(2). *See Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a *single* injunction or declaratory judgment would provide relief to each member of the class.") (emphasis added).

Class certification will fail under Rule 23(b)(2) if a class definition is overbroad. Not only must the challenged practice apply to all class members, but it must be readily ascertainable that the practice has injured every member. *Santos v. TWC Admin. LLC*, No. CV1304799MMMCWX,

---

[7] *See supra* n.3.

2014 WL 12558009, at *11 (C.D. Cal. Aug. 4, 2014) (collecting cases). Rule 23(b)(2) classes are binding, so class members cannot bring claims later if the class is certified.

As explained above, some class members may not believe they have suffered any injury or want reimbursement instead of injunctive relief. *See Flores v. CVS Pharmacy, Inc.*, No. 2:07-CV-05326-JHN-EX, 2010 WL 3656807, at *7 (C.D. Cal. Sept. 7, 2010) (denying Rule 23(b)(3) class as overbroad where it would be necessary to conduct "mini-trials to separate the class members from non-class members."), *aff'd sub nom. Flores v. Supervalu, Inc.*, 509 F. App'x 593 (9th Cir. 2013). Other putative class members may have already paid the $100,000 and thus an injunction would not cure any alleged injury. Others may believe that the $100,000 requirement is to their benefit, as it could curb competition with other businesses. Thus, Plaintiffs have not shown that injunctive and declaratory relief for all members is appropriate in this circumstance.

## II.     Plaintiffs' Proposed Class Includes Members Who Are Barred From Receiving Duplicitous Relief Under the Doctrine Of Claim Preclusion.

Nearly a month after the Proclamation issued, the Chamber of Commerce filed an action in the U.S. District Court for the District of Columbia challenging that Proclamation and the payment it requires. *Chamber of Commerce v. DHS*, No. 3:25-cv-8454 (D.D.C.) ("*Chamber*"), ECF No. 1. On October 24, 2025, Chamber of Commerce, with new plaintiff Association of American Universities, filed an Amended Complaint. *Id.*, Amend. Compl., ECF No. 8. Plaintiffs asserted that they had associational standing. *Id.* ¶¶ 19, 26. The Amended Complaint asserted two causes of action: Count I alleged that the Proclamation is *ultra vires*, *Id.* ¶ 196, and Count II alleged that any agency action implementing the Proclamation would be contrary to law and arbitrary and capricious, in violation of the Administrative Procedures Act ("APA"). *Id.* ¶¶ 201-206. This litigation sought to have any such actions vacated and set aside. *Id.; see also id.* Prayer ¶ 3.

On December 23, 2025, the U.S. District Court for the District of Columbia granted summary judgment to the government, holding: "Congress has granted the President broad statutory authority, which he has used to issue the Proclamation addressing, in the manner he sees fit, a problem he perceives to be a matter of economic and national security. The Proclamation and its implementation are lawful and therefore withstand plaintiffs' challenges as *ultra vires* and violative of the APA." *Chamber*, 2025 WL 3719234, at *27. On December 31, 2025, Plaintiffs in *Chamber* appealed, and the D.C. Circuit has issued an expedited briefing schedule. *See Chamber of Commerce v. DHS*, No. 25-5473 (D.C. Cir.). [8] Thus, if the Court is inclined to certify a class in this litigation, the Court should decline to include employers who have already received a judgment on the merits in the *Chamber* litigation.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citing *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997)). "The doctrine applies if the earlier litigation (1) reached a final judgment on the merits, (2) involved the same claim or cause of action as the later lawsuit, and (3) involved the same parties or their privies." *GP Vincent II v. Est. of Beard*, 68 F.4th 508 (9th Cir. 2023) (citation omitted).

As stated above, a final decision on the merits was reached by the District of D.C. on December 23, 2025. This judgment determined that the Proclamation was not *ultra vires* nor in

---

[8] "[T]he pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of *res judicata*." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985) (citing 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.416[3] at 521 (2d ed. 1983)).

violation of the APA, the same claims brought forth in this litigation.[9] Further, many putative class members in this litigation were among those represented in *Chamber*. *Chamber*, 2025 WL 3719234, at * 10 (holding that the Chamber of Commerce and the Association of American Universities have associational standing to sue on behalf of their members). The Chamber of Commerce has approximately 300,000 direct members, and the Association of American Universities represents 69 U.S.-based research universities, *id* at *1. As an example of how this impacts this litigation, the Association of American Universities represents eight of the nine University of California campuses that putative class member, and named plaintiff in the Complaint, UAW Local 4811 represents, and several of these campuses are also members of the Chamber of Commerce. The proposed class would comprise of *all* U.S. employers that will or would file an H-1B petition, which certainly encompasses many represented by the Chamber of Commerce and the Association of American Universities. Those organizations already had their shot at relief in a much more direct and representative way than a mandatory class, and they did not receive that relief after a hearing on the merits. *See id.* * 10. Thus, letting them be part of the proposed certified class violates the doctrine of claim preclusion and would give them an unfair second bite at the apple.

---

[9] Plaintiffs in this litigation, but not in *Chamber*, bring a claim for failure to conduct notice and comment rulemaking under the Regulatory Flexibility Act. This Act requires an "initial regulatory flexibility analysis" whenever an agency is required to publish general notice of proposed rulemaking. 5 U.S.C. § 603(a). Since the *Chamber* judgment heard the claim on whether notice and comment rulemaking was required under the APA, and determined it was not, this additional claim should not bar this Court from applying the doctrine of claim preclusion. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003*)* ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.").

Thus, at a minimum, the Court should decline to certify Plaintiffs' proposed class as it includes members that are barred from re-litigating these issues under the doctrine of claim preclusion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification, or in the alternative, amend the definition to exclude members who have already received a judgment on the merits in the *Chambers* litigation.

Dated: January 16, 2026                                    Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

TIBERIUS DAVIS
Counsel To The Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director
Office of Immigration Litigation

DAVID J. BYERLEY
Senior Litigation Counsel

/s/ Jaime A. Scott
JAIME A. SCOTT (DC Bar # 90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

OPP. CLASS CERT.                          17                          No. 4:25-cv-8454-HSG

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jaime A. Scott
JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

*Attorney for Defendants*