Jonathon P. Hauenschild (SBN 249615)
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste. 330
Washington, DC 20001
(202) 328-7004
jhauenschild@fairus.org

Counsel for *Amicus Curiae* Federation for American Immigration Reform

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>  Defendants. | Case No. 4:25-cv-8454-HSG<br><br>**PROPOSED *AMICUS CURIAE* BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF FEDERAL DEFENDANTS IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Courtroom 2, Hon. Haywood S. Gilliam, Jr. |

///
///
///
///
///

[Intentionally Left Blank]

///
///
///
///

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454

i

# CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

STATEMENT OF INTEREST ........................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.   The President Is Not Subject to the APA ............................................................... 3

    II.  Plaintiffs cannot avoid the President's immunity from the APA by challenging agency actions directed by the President. ............................................................. 6

CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**CASES**

*Am. Foreign Serv. Ass'n v. Trump*,
 2025 U.S. App. LEXIS 15297 (D.C. Cir. 2025)..................................................................4

*Arizona v. United States*,
 567 U.S. 387 (2012) ............................................................................................................3

*Brnovich v. Biden*,
 562 F.Supp.3d 123 (D. Ariz. 2022) ....................................................................................8

*Cetacean Cmty. v. President of the United States*,
 249 F.Supp.2d 1206 (D. Haw. 2003)..................................................................................4

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
 333 U.S. 103 (1948) .......................................................................................................3, 5

*Dalton v. Specter*,
 511 U.S. 462 (1994) ............................................................................................................7

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
 883 F.3d 895 (D.C. Cir. 2018)...................................................................................5, 6, 8

*Franklin v. Massachusetts*,
 505 U.S. 788 (1992) .......................................................................................................4, 8

*Haig v. Agee*,
 453 U.S. 280 (1981) ............................................................................................................5

*Harisiades v. Shaughnessy*,
 342 U.S. 580 (1952) .......................................................................................................3, 8

*Heckler v. Chaney,*
 470 U.S. 821 (1985) ............................................................................................................3

*Hernandez v. Mesa*,
 589 U.S 93 (2020) ..............................................................................................................2

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) ..................................................................................................3, 6, 9

*Marbury v. Madison*,
 5 U.S. (1 Cranch) 137 (1803).............................................................................................4

*Mississippi v. Johnson*,
 71 U.S. 475 (1867) ..............................................................................................................5

*Murphy Co. v. Biden*,
   65 F.4th 1122 (9th Cir. 2023) ................................................................................................ 4

*Nebraska v. Su*,
   121 F.4th 1 (9th Cir. 2024) .................................................................................................... 4

*Oregon Natural Resources Council v. Thomas*,
   92 F.3d 792 (9th Cir. 1996) ................................................................................................... 7

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ................................................................................................ 3, 6, 7, 10

*Trump v. United States*,
   603 U.S. 593 (2024) ........................................................................................................ 2, 4

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) .............................................................................................................. 3

*United States v. George S. Bush & Co.*,
   310 U.S. 371 (1940) .............................................................................................................. 5

*W. Watersheds Project v. BLM*,
   629 F.Supp.2d 951 (D. Ariz. 2009) ....................................................................................... 4

*Webster v. Doe*,
   486 U.S. 592 (1988) .............................................................................................................. 3

**STATUTES**

8 U.S.C. § 1182 ............................................................................................................... 6, 7, 9

8 U.S.C. § 1101 ...................................................................................................................... 7, 9

**OTHER AUTHORITIES**

Proclamation No. 10973, *Restriction on Entry of Certain Nonimmigrant Workers*,
   90 Fed. Reg. 46027 ........................................................................................................... 6, 9

## STATEMENT OF INTEREST[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of protecting all Americans against the substantial harms of mass migration and illegal immigration.

The decision in this case will likely impact the ability of the federal government to protect American workers. *Amicus* FAIR thus has direct and vital interests in the outcome of this case.

## SUMMARY OF THE ARGUMENT

The Constitution vests Congress and the President with the responsibility to superintend immigration, naturalization, foreign policy, and national security. Courts have long recognized that the political branches' authority over these subjects is plenary and, generally, not subject to review when they exercise discretion.

The H-1B program falls within the authority to exclude aliens or condition their admittance. In fact, by requiring program participants to secure a visa, Congress has placed them initially within the class of inadmissible aliens. Only when individuals meet very specific requirements may they qualify for a visa. Even then, the Immigration and Nationality Act (INA) grants the President very broad authority to exclude or "suspend

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than amicus curiae, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454

1

the entry of all aliens or any class of aliens" "or impose on the entry of aliens any restriction he may deem to be appropriate."

From the early days of the Republic through the present, courts have recognized that the President enjoys freedom from judicial review when he exercises discretion in the area of foreign affairs. The President's discretion, within this area, to exclude aliens derives from the Constitution and is recognized by Congress in the INA.

Because the determination of whether the entry of certain classes of aliens would be detrimental to the interests of the United States is a matter of judgment entrusted to the President in his discretion, and because the President is not an agency, the Administrative Procedures Act (APA) does not apply, and courts are otherwise not equipped to second-guess the President's determination.

The APA, likewise, does not apply to actions of subordinate executive officers to implement a President's Proclamation suspending the entry of aliens. When the President acts, he must always do so through subordinates, such as cabinet secretaries. When executive subordinates do not only act pursuant to authority conferred on them by statute, but act pursuant to an order of the President issued under authority conferred on him by statute or the Constitution, these subordinates' actions are presidential actions immune from APA review

## ARGUMENT

The federal government's authority over immigration and naturalization flows from constitutional provisions empowering it to regulate foreign commerce, foreign relations, and national security. *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 607 (2024) (holding that immigration falls within the president's "important foreign relations responsibilities" as delegated to him by the Constitution), *Hernandez v. Mesa*, 589 U.S 93, 104 (2020) (noting that governance and investigation of Border Patrol conduct is a matter "relating to the conduct of foreign relations" and the Executive Branch "has the lead role in foreign policy"), *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (recognizing that immigration related decisions "implicate relations with foreign powers or involve

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454

classifications defined in the light of changing political and economic circumstances"); *Arizona v. United States*, 567 U.S. 387, 395 (2012) ("The Constitution grants the federal government an undoubted power over the subject of immigration and the status of aliens.") (internal quotation omitted); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of republican form of government."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) (recognizing that the right to control immigration and naturalization "stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation"); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs.").

### I. The President Is Not Subject to the APA

The APA applies only to agencies. *E.g. Lincoln v. Vigil*, 508 U.S. 182, 190-92 (1993); *Webster v. Doe*, 486 U.S. 592, 599 (1988) (holding that the APA applies only to a "final agency action"). For the APA to apply, the action in question must be "committed to agency discretion by law." *Heckler v. Chaney,* 470 U.S. 821, 838 (1985). Because the President is not an agency, the APA thus does not apply to him or his official actions. *Franklin v. Massachusetts*, 505 U.S. 788 (1992); *Am. Foreign Serv. Ass'n v. Trump*, 2025 U.S. App. LEXIS 15297, *45 (D.C. Cir. 2025),[2] *Cetacean Cmty. v. President of the*

---

[2] Courts frequently look to decisions from the D.C. Circuit when analyzing the APA and its applicability to Presidential actions. *E.g. Nebraska v. Su*, 121 F.4th 1, 10 (9th Cir. 2024) (relying on precedent from the D.C. Circuit in holding that President Biden's minimum wage increase violated the plain terms of the statute and that the plaintiffs had standing to bring suit; relevantly, the text of the statute did not delegate to the President sole authority to determine hourly wage rates for federal employees); *Murphy Co. v. Biden*, 65 F.4th 1122, 1130-31 (9th Cir. 2023) (relying on precedent from

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454

3

*United States*, 249 F.Supp.2d 1206, 1213-14 (D. Haw. 2003). The concept that courts may not review the President's exercise of discretion has its roots in the earliest days of the Republic. In 1803, the Supreme Court noted that "[w]here the head of a department acts in a case, in which executive discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated, that any application to a court to control, in any respect, his conduct, would be rejected without hesitation." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170-71 (1803). It has continued to the modern era, with the Supreme Court noting that "the courts have no power to control the President's discretion when he acts pursuant to the powers invested exclusively in him by the Constitution." *Trump*, 603 U.S. at 607 (citation modified).

Furthermore, courts may not "enjoin the President in the performance of his official duties." *Franklin*, 505 U.S. at 802-03. *See also*, *Detroit Int'l Bridge Co. v. Gov't of Canada*, 883 F.3d 895, 903 (D.C. Cir. 2018) (holding that the court lacks a standard of review "[i]n the foreign affairs arena"). The President's immunity from injunction serves a critical role: ensuring that the President is protected in the prosecution of his constitutional responsibilities. Allowing courts to enjoin the President would turn the judiciary into a branch that micromanages the Executive. *See e.g. Chicago & Southern Air Lines*, 333 U.S. at 114 (holding that it is improper for courts effectively to issue "advisory opinions" to the President); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention"); *Mississippi v. Johnson*, 71 U.S. 475, 499 (1867) (warning that attempts by the judiciary to "enforce the performance" of the President's duties is "an absurd and excessive extravagance"). To permit judicial review of a President's discretion would invade both the measured judgment of Congress to recognize the President's authority—in this case over the conduct of foreign affairs and the related

---

the D.C. Circuit when applying the APA); *W. Watersheds Project v. BLM*, 629 F.Supp.2d 951, 961 (D. Ariz. 2009) (same).

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454
4

interests of the United States—and his executive authority. *United States v. George S. Bush & Co.*, 310 U.S. 371, 379-80 (1940). Thus, where the Constitution delegates a power to the President and where the statute defers to the President's discretion, judicial review is not available. And that the President may not be compelled to perform his responsibilities as others see fit applies equally when individuals challenge the constitutionality of an executive action. *Mississippi*, 71 U.S. at 499 ("It is true that in the instance before us the interposition of the court is not sought to enforce action by the Executive under constitutional legislation, but to restrain such action under legislation alleged to be unconstitutional. But we are unable to perceive that this circumstance takes the case out of the general principles which forbid judicial interference with the exercise of Executive discretion.").

In this case, Congress, recognizing the President's inherent authority under the Constitution to exclude aliens, enacted legislation that "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684. Specifically, when the President "finds that the entry of any alien or of any class of aliens … would be detrimental to the interests of the United States," 8 U.S.C. § 1182(f) allows him "by proclamation … [to] impose on the entry of any alien *any restriction* he may deem to be appropriate" (emphasis added). *See also Hawaii*, 585 U.S. at 685 (recognizing that the statute's "sole prerequisite" is that the entry of the aliens "would be detrimental to the interests of the United States").

The President exercised his discretion when determining, among other things, that the H-1B program has been "deliberately exploited to replace, rather than supplement American workers." The program has "undermined both our economic and national security" and "artificially suppress[es] wages, resulting in a disadvantageous labor market for American citizens," and it has "made it even more challenging for college graduates to find IT jobs." Proclamation No. 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg. 46027 (Sept. 19, 2025).

Courts cannot review this exercise of Presidential discretion in determining that the exploitation and abuse of the H-1B program have been detrimental to United States'

interests. As discussed above, decisions about excluding aliens or placing preconditions on their entry are, fundamentally, foreign policy decisions. The D.C. Circuit, for example, has recognized that courts cannot review the President's discretion "on questions of foreign policy and national interests." *Detroit Int'l Bridge Co.*, 883 F.3d at 903-04. Courts will also refrain from exercising jurisdiction, whether under the APA or otherwise, where Congress drafted a statute "so that a court would have no meaningful standard against which to judge" the exercise of discretion. *Lincoln*, 508 U.S. at 191. *See also Oregon Natural Resources Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (same). When a statute deprives the court of a meaningful standard, "the statute can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Lincoln*, 508 U.S. at 191.

The INA both deprives the Court of any meaningful standard of review and commits decisions related to the exclusion of aliens solely to the President's discretion. 8 U.S.C. §§ 1182(f). *See also id.* § 1101(a)(15)(H)(i)(b) (specifically referencing significant provisions of § 1182 while simultaneously limiting the class of aliens who can procure H-1B visas). *See Hawaii*, 585 U.S. at 695 (explaining that inadmissibility under § 1182 is presumed, that the decision to grant a visa is an exception, and that the alien is not guaranteed admission even if he receives a visa).

Thus, between the President's general immunity against injunctions, the long-recognized inherent Executive constitutional power to decide whether to exclude aliens or to impose conditions on their entry, and Congress's decision to commit entry restrictions to the President's sole discretion, not only is the President not subject to the APA, courts also lack jurisdiction to enjoin his Proclamation.

**II. Plaintiffs cannot avoid the President's immunity from the APA by challenging agency actions directed by the President.**

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the

authority to take that action is constitutionally entrusted to the President or delegated by Congress to an agency. *See Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, the President issued a proclamation under both his inherent authority to superintend foreign policy and his statutory authority granted by Congress. *Harisiades*, 342 U.S. at 588-589 (observing that immigration and naturalization policies are "interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government."). To the extent Secretaries Noem and Rubio, and their respective departments, must act, they do so solely to implement the proclamation and are without statutory discretion to tailor the proclamation or otherwise ignore it.

Just as courts cannot enjoin the President, neither can they enjoin executive branch officials when those executive branch officials are fulfilling an order of the President issued under authority granted him either by statute or the Constitution. And this is especially true where the statute commits an action to the discretion of the President, not of the agency or department heads. As the D.C. District Court explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, Franklin*, 505 U.S. at 800-801 (determining that although the "President is not explicitly excluded from the APA's purview" nor "explicitly included," "[o]ut of respect

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454

for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA"). *See also Brnovich v. Biden*, 562 F.Supp.3d 123, 149-50 (D. Ariz. 2022) (stating in dicta that because the President is not an agency, any action he takes cannot be an "agency action" as defined by the APA).

In this case, neither the State Department nor DHS nor their respective Secretaries possess discretion to implement the Proclamation. Instead, the President directed Secretary Noem to "restrict decisions on petitions not accompanied by a $100,000 payment." Proclamation No. 10973, Sec. 1(b), 90 Fed. Reg. at 46028.[3] Similarly, the Secretary of State is directly only to "verify the receipt of payment… and shall approve only those visa petitions for which the filing employer has made the payment." *Id*. at Sec. 2(b). Any effort to enjoin their compliance with the Proclamation, therefore, is a *de facto* enjoining of the President.

The underlying laws on which the President relies do not grant the Secretaries or their agencies any discretion. *Lincoln*, 508 U.S. at 191 (holding that judicial review of decisions is prohibited when the "relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). Section 1182(f) empowers only the President to exercise discretion. Section 1101(a)(15)(H)(i)(b) references § 1182 and is otherwise silent on any discretion the agencies may have. The statutes, when looking at the text and structure, both deprive the Plaintiffs of the ability to challenge the President's Proclamation and deprive the courts of any meaningful standard by which to judge the agencies' implementation of the Proclamation.

---

[3] The President provided the Secretary a measure of discretion only to exempt certain aliens if "the hiring of such aliens to be employed as H-1B specialty occupation workers is in the national interest and does not pose a threat to the security or welfare of the United States." Proclamation No. 10973 at Sec. 1(c).

FAIR PROPOSED *AMICUS* BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION – 4:25-cv-08454

8

The President and the officers necessary to carry out his official actions are not subject to the APA when both the Constitution and statutes defer to the President's discretion. In this case, the President exercised that discretion when he determined that entry of the "class of aliens" holding H-1B visas is detrimental to the interests of the United States. That is the only determination necessary. *Hawaii*, 585 U.S. at 684-85. Because the courts lack the authority to review the President's determinations and because Secretaries Noem and Rubio are carrying out a Presidential directive, the APA does not apply, and this Court may not enjoin their actions.

## CONCLUSION

For the forgoing reasons, this Court should deny Plaintiffs' motion for preliminary injunction.

Dated: January 20, 2025                    Respectfully submitted,

                                                                  s/ Jonathon P. Hauenschild
Jonathon P Hauenschild (SBN 249615)
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
(202) 328-7004
jhauenschild@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform