BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

TIBERIUS DAVIS
Counsel To The Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director

DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
Trial Attorney
DC Bar # 90027182
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, *et al.*,<br><br>Defendants. | Case No. 4:25-cv-8454-HSG<br><br>**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>**HEARING DATE AND TIME: APRIL 2, 2026 AT 2:00PM** |

REPLY MOT. TO DISMISS                                                     No. 4:25-cv-8454-HSG

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1
ARGUMENT ....................................................................................................................... 1
    I.    The Court Should Dismiss the Complaint Under Fed. R. Civ. P. 12(b)(1). ..................... 1
        A.    Plaintiffs Lack Article III Standing............................................................................ 1
            i.    Association Plaintiffs ............................................................................................ 2
            ii.    Employer Plaintiffs and Individual Plaintiff John Smith...................................... 7
        B.    There Is No "Final Agency Action" For the Court to Review. ................................. 8
        C.    Even If There Was Final Agency Action, The APA Does Not Confer Jurisdiction to Review an Executive Decision to Restrict Entry. ................................................................ 9
    II.    The Court Should Dismiss The Complaint Under Fed. R. Civ. P. 12(b)(6). ................... 10
        A.    Consular Nonreviewability Precludes Review of 8 U.S.C. §§ 1182(f) and 1185(a)(1) Entry Restrictions. ...................................................................................................... 10
        B.    Plaintiffs Fail to State an *Ultra Vires* Claim............................................................ 12
        C.    Plaintiffs Fail to State a Claim Under the Administrative Procedure Act and Regulatory Flexibility Act........................................................................................ 13
CONCLUSION.................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) .................................................................................... 12

*Am. Foreign Serv. Ass'n v. Trump*,
    792 F. Supp. 3d 116 (D.D.C. 2025) ................................................................................ 9

*Center for Biological Diversity v. U.S. Dep't of Interior*,
    144 F.4th 296 (D.C. Cir. 2025) ....................................................................................... 9

*Dalton v. Specter*,
    511 U.S. 462 (1994) ...................................................................................................... 13

*Dep't of State v. Muñoz*,
    602 U.S. 899 (2024) ............................................................................................... 10, 12

*E. Bay Sanctuary Covenant v. Trump*,
    932 F.3d 742 (9th Cir. 2018) .......................................................................................... 8

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ....................................................................................................... 2

*Fiallo v. Bell*,
    430 U.S. 787 (1977) ...................................................................................................... 11

*Hawaii v. Trump*,
    878 F.3d 662 (9th Cir. 2017) ........................................................................................ 10

*Int'l Partners for Ethical Care Inc. v. Ferguson*,
    146 F.4th 841 (9th Cir. 2025) ......................................................................................... 4

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ...................................................................................... 5, 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 5, 8, 9

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 .................................................................................................................. 9

*Make The Rd. New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ....................................................................................... 9

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ..................................................................................................... 5, 8

*Nebraska v. Su*,
    121 F.4th 1 (9th Cir. 2024) ............................................................................................. 9

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 ..................................................................................................................... 9

*Patel v. Reno*,
    134 F.3d 929 (9th Cir. 1997) ........................................................................................ 12

*Saavedra Bruno v Albirght*,
    197 F.3d (D.C. Cir. 1999) ............................................................................................. 11

*Satanic Temple v.* La*bra*dor,
    ("TST"), 149 F.4th 1047 (9th Cir. 2025) .................................................................... 6, 7

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................... 3, 6, 7
*Trump v. Hawaii*,
    585 U.S. 667 (2018) .................................................................................................. 11, 12, 13
*Trump v. Orr*,
    223 L.Ed.2d 180 (U.S. 2025).................................................................................................. 9
*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ............................................................................................................. 11
*United States v. George S. Bush & Co.*,
    310 U.S. 371 (1940) ............................................................................................................. 13
*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ............................................................................................. 12
*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ............................................................................................................. 12

Statutes

8 U.S.C. § 1182(e) ......................................................................................................... 5, 7
8 U.S.C. § 1182(f) ........................................................................................ 4, 10, 12, 13, 14
8 U.S.C. § 1184(l) ......................................................................................................... 5, 7
8 U.S.C. § 1185(a) ...................................................................................... 4, 10, 12, 14

Rules

Fed. R. Civ. P. 12(b)(1)................................................................................................ 1
Fed. R. Civ. P. 12(b)(6)................................................................................................ 10

Other Authorities

Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg.
    46,027 (Sep. 24, 2025) .................................................................................................. passim

# INTRODUCTION

For decades, aliens and companies have abused the H-1B nonimmigrant worker visa program, taking valuable jobs from qualified Americans. This is contrary to Congress's purpose in creating H-1B as a temporary solution to get highly skilled workers that are not otherwise available in America. Recognizing this substantial detriment to the American people, and the adverse effect of the systemic abuse on the United States' economic and national security, the President issued Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg. 46,027 (Sep. 24, 2025) (the "Proclamation").

Plaintiffs, consisting of for-profit corporations, religious organizations, nonprofits, unions, and one anonymous individual, instead seek to maintain the status quo. In their Opposition to Defendants' Motion to Dismiss (ECF No. 108), which incorporates by reference Plaintiffs' arguments in their Motion for Preliminary Injunction (ECF No. 75) and Reply in support of the Motion for Preliminary Injunction (ECF No. 101), Plaintiffs once again fail to present colorable arguments as to how the Proclamation exceeds the statutory authority of the President and/or violates the Administrative Procedure Act ("APA") and Regulatory Flexibility Act ("RFA"). Having failed to establish jurisdiction or a legal violation, the Court should dismiss the Amended Complaint with prejudice.

# ARGUMENT

I.   **The Court Should Dismiss the Complaint Under Fed. R. Civ. P. 12(b)(1).**

  A.  **Plaintiffs Lack Article III Standing.**

In their opposition, Plaintiffs once again state that they will experience imminent and concrete harm from the Proclamation. Opp. 6–17. They spill much ink discussing the various potential legal interests that they and their members have in the H-1B program generally. But Plaintiffs' arguments continue to ignore the nuances and speculation of their alleged injuries.

Plaintiffs ignore that all of the Association and Employer Plaintiffs'[1] alleged injuries depend on unnamed, hypothetical employees who appear—based on the vague allegations in the Amended Complaint ("FAC")—in a position similar to that of Phoenix Doe, who voluntarily dismissed her suit after, as Plaintiffs admit, her "H-1B petition and her discretionary change of status request was approved" without the $100,000 payment. ECF No. 101, n.1.

      *i. Association Plaintiffs*

Association Plaintiffs rightly do not claim to have organizational standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). Instead, Association Plaintiffs base their associational standing on mission statements, introduced for the first time in their opposition to the Government's motion to dismiss, and on vague, hypothetical injuries to unnamed, purported members. *See, e.g.*, FAC ¶¶ 129-34 (CIR claiming injuries only to members); FAC ¶¶ 189-91 (UAW International and UAW Local 4811 claiming injuries only to members); FAC ¶¶ 192-94 (AAUP claiming injuries only to members and third-party universities).

Firstly, Association Plaintiffs' mission statements nestled in opposition to the motion to dismiss miss the point, because they speculate that the Proclamation will harm some of their members but do not effectively address Defendants' arguments regarding how past AFL-CIO comments show how abuse of the H-1B program *has* harmed the interests of their members. Defs.' Mot. to Dismiss 7.[2] They fail to square how their germaneness argument comports with past

---

[1] Defendants, as in their Motion to Dismiss (ECF No. 104), refer to Plaintiffs Society of the Divine World ("SVD"), Father of St. Charles, and Church on the Hill as "employer Plaintiffs" and Plaintiffs Committee of Interns and Residents, SEIU ("CIR"), UAW Local 4811, American Association of University Professors ("AAUP"), and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW International") as "Association Plaintiffs".

[2] Plaintiffs beg the Court to disregard, *inter alia*, statements of the AFL-CIO's President and Chief Economist appearing in the Congressional record on a local rule technicality. Defendants are aware of no case requiring any party to authenticate the congressional record under this local rule.

REPLY MOT. TO DISMISS                     2                     No. 4:25-cv-8454-HSG

comments that show the Association Plaintiffs have as much interest in addressing the same H-1B abuse that the Proclamation seeks to address as they purportedly do in this lawsuit. Further, these mission statements do not, and cannot, make their members' alleged injuries any less speculative.

In fact, the claimed injuries to the associations' members—based on the allegations in the FAC—are in all circumstances similar to Phoenix Doe, who never had an injury, and dismissed her suit after she obtained H-1B status without the $100,000 payment. As an initial matter, the associations are required to *prove* that these members actually exist and that their alleged harm is real. They cannot rely on unidentified harms claimed by unidentified individuals who these organizations claim are members; instead, they must identify (i.e., name) them such that their standing is susceptible to analysis. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) ("…requirement of naming the affected members has never been dispensed with…"); *Id.* ("Without individual affidavits, how is the court to assure itself [of standing]?"). The associations cannot shield their members' standing from scrutiny by merely litigating by proxy. *Id*.

In any event, the claims—even as alleged—fail to demonstrate standing. In the FAC and Opposition, CIR states their purported members sustaining injuries are "physicians *currently on J-1 visas* who seek to *stay* in the United States by obtaining H-1B status, but are being hampered from doing so because the $100,000 fee is unaffordable for employers who would otherwise petition for them." Opp. 10. The FAC cites just two CIR members. FAC ¶¶ 130, 133. UAW Local 4811 hinges their association standing on "one… Local 4811 member [who] is a 31-year-old Indian post-doctoral researcher at a major U.S. research institution whose work focuses on biomedical modeling." FAC ¶ 190, Opp. 11. UAW International relies on "*a* member who is a postdoctoral neuropharmacologist at a major research institution on the East Coast[,]" in addition to a member who is purported to support both UAW International and UAW Local 4811's claim

REPLY MOT. TO DISMISS　　　　　　　　　　3　　　　　　　　　　No. 4:25-cv-8454-HSG

of standing. *Id.* In the FAC, AAUP cites "one AAUP member [who] had an offer from the major research university where that member is currently completing a postdoc." FAC ¶ 193. Between these four associations, there are just five purported members alleged to have injuries, and one of them is shared between UAW International and UAW Local 4811.

Even assuming these members exist, their vague claims of purported injury require multiple levels of speculation. First and once again, the H-1B Proclamation does not apply to those who are *already in the United States* if seeking a change of status that is ultimately approved by the U.S. Citizenship and Immigration Services ("USCIS"). Like Phoenix Doe—who changed her status from F-1 to H-1B without a waiver and without the $100,000 payment, as it never applied to her—the employers *are not (and were never) required* to make a $100,000 payment for approved requests to change status to H-1B for aliens in another eligible status already in the United States. Plaintiffs unconvincingly argue this does not affect their standing, because "the Proclamation itself does not carve out change of status petitions and Agency Defendants have repeatedly claimed to have no authority to depart from the Proclamation (despite having done so)." Opp. 13. This, like all of Plaintiffs' other arguments, misrepresents that the $100,000 not applying to those already within the United States is an agency deviation from the Proclamation. Not so. The Proclamation, established pursuant to the Presidents' authority under 8 U.S.C. §§ 1182(f) and 1185(a), has always been an *entry* restriction, not applicable to *past admissions* into the United States.

To the extent abstract "fear" or "hesitation" prevents the employers from petitioning to change the five members' status on their behalf, their employers are inflicting injury upon themselves in failing to petition, and whatever injury the five suffer as a result of the employers' self-inflicted injury is traceable to the employers alone. *Int'l Partners for Ethical Care Inc. v.*

*Ferguson*, 146 F.4th 841, 849 (9th Cir. 2025) (ruling that the "alleg[ation] only that the looming 'threat' imposed by the Statutes has led them to alter their parenting styles so that the Statutes cannot affect them" were "self-inflicted [injuries] because they are the result of 'voluntary' actions that Plaintiffs have taken 'in response to' the Statutes—not because of any actual requirement that the Statutes impose."). Fear-based responses by employers that negatively impact members who are neither identified nor confirmed to exist is not an injury traceable to the H-1B Proclamation or the agencies' requirement to follow it.

Further, the transition from J-1 to H-1B involves a separate exercise of discretion under 8 U.S.C. §§ 1182(e) and 1184(l) (for medical practitioners) to waive, as a matter of discretion, the two-year foreign residency requirement. If that waiver is not obtained, CIR's members cannot change their status to H-1B for that reason. As a result, Plaintiffs' injuries rest on a tenuous chain of events—that a waiver of the foreign residency requirement will be granted, that their prospective employer is eligible to file an H-1B petition, which may or may not be subject to annual numerical limitations and require selection in a lottery prior to filing, that the prospective petitioner, if eligible, properly files an H-1B petition, and if requesting a change of status, that the change of status is not approved by USCIS, such that they are subject to the $100,000 payment set out in the Proclamation,. *See Murthy v. Missouri*, 603 U.S. 43, 69–70 (2024) ("To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them."). Plaintiffs must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," in this case enjoining the Proclamation. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). While "a plaintiff is presumed to have constitutional standing to seek injunctive relief when it is the direct object of regulatory action challenged as unlawful," *see Los*

*Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) (cited in Plaintiffs' Opposition at 6), that only applies if "the plaintiff is himself an object of the action (or forgone action) at issue." *Id.*

Related to this, none of the Association Plaintiffs allege that their members' current legal statuses expire before the H-1B Proclamation expires of its own accord next year. If their status outlasts the one-year term of the H-1B Proclamation, then their injury is speculative for this reason as well, in addition to the ones above. Additionally, at least some of the members are alleged to have alternate pathways to obtain long-term status in the United States. For example, the purported Canadian CIR member has a U.S. citizen fiancée. FAC ¶ 135.  There is no allegation as to why this member cannot obtain a K-1 visa. *Id.* If he did obtain a K-1 visa, then his hypothetical injury from the H-1B Proclamation would be moot. Likewise, CIR's Pakistani member also alleges he is married. If his spouse is a U.S. citizen, then he could obtain adjustment of status through that route. FAC ¶ 130. Of course, Plaintiffs improperly cloak the five members in anonymity and use vague allegations to prevent any real inquiry into standing or mootness, notwithstanding that this is plainly improper for associational standing theories. *Summers*, 555 U.S. at 498; *The Satanic Temple v. Labrador* ("*TST*"), 149 F.4th 1047, 1051 (9th Cir. 2025) ("While we have recognized that an organization need not always identify by name the member or members injured, that flexibility may be invoked only when it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action" (internal marks, citations omitted)).[3]

---

[3] As recognized in *TST*, the Ninth Circuit is an outlier in waiving identification even in a narrow subset of cases. *TST*, 149 F.4th at 1051.

Plaintiffs also point out that "[s]ome individuals are categorically ineligible to change status" as a basis to support their associational standing. Opp. 12. But associational standing depends on real, actual members. *Summers*, 555 U.S. at 498; *TST*, 149 F.4th at 1051. Plaintiffs do not allege that any of the five members they cited to support their associational standing are "categorically ineligible to change status[,]" so this argument is entirely irrelevant. The associations cannot rely on individuals who claim hypothetical injuries to those who are neither identified as members nor even claimed to be members. *Summers*, 555 U.S. at 498; *TST*, 149 F.4th at 1051.

This is precisely what Defendants contend is the issue with Association Plaintiffs' standing arguments: that aliens who *might* be hired, who *might* become the beneficiary of an H-1B petition, who *might* obtain a discretionary §§ 1182(e) and 1184(l) waiver (as applicable), and who *might* be subject to the Proclamation cannot show with certainty that they are or will be subject to the Proclamation. *TST*, 149 F.4th at 1052 ("[T]he potential for harm… is insufficient to demonstrate an injury in fact"). As such, Association Plaintiffs have not established that they have standing to bring their suit.[4]

> ii. *Employer Plaintiffs and Individual Plaintiff John Smith*

For similar reasons to the above, the Employer Plaintiffs' and Plaintiff John Smith's arguments fare no better. Their claims that Employer Plaintiffs, inclusive of Plaintiff John Smith, will be harmed by the use of other visa programs do nothing to refute that their injuries stemming from the Proclamation are speculative, as their employees that are not entirely hypothetical are

---

[4] Plaintiffs claim that Defendants have argued UAW members who overlap with Plaintiffs in *Chamber of Commerce* would, solely for that reason, not have standing. Opp. 13–14. Not so. Defendants have argued these individuals would be subject to claim preclusion, *see* Defs.' Opp. to Class Certification 14 (ECF No. 97), which is a merits issue thus not included in a Motion to Dismiss.

already in the United States. FAC ¶¶ 165 (SVD assigns new members each year from "various countries" including the Untied States); 168 (SVD has at least eight priests in the United States on R-1 visas); 172 (Fathers of St. Charles brings in members to the congregation, at unspecified times, on R-1 visas); 173 (Fathers of St. Charles has three members within the United States on R-1 visas); 178 (Church on the Hill has successfully hired "foreign talent" in the past); 179 (Church on the Hill currently employees Plaintiff John Smith, who is within the United States on an R-1 visa). Further, Plaintiff John Smith's dislike of the timing of H-1B visa processing, Opp. 16, does not create an injury stemming from the Proclamation.

Like the Association Plaintiffs, the Employer Plaintiffs reply on a series of speculative facts to establish their purported injury: that their employees *will* be outside the United States, that they will be eligible for an H-1B visa, that they are subject to the $100,000 payment set out in the Proclamation, and are injured by the prospect of paying the $100,000. *See Murthy*, 603 U.S. at 69–70 ("To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them."). Plaintiffs must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," in this case enjoining the Proclamation. *Lujan*, 504 U.S. at 560–61. As such, Employer Plaintiffs and individual Plaintiff John Smith have not established that they have standing to bring their suit.

### B. There Is No "Final Agency Action" For the Court to Review.

Plaintiffs again fail to identify a final agency action that is reviewable under the APA. In their opposition, Plaintiffs claim that agency Defendants "made their own rules regarding when and to whom the $100,000 fee would apply." Opp. at 18. But the agencies' actions simply implemented the Proclamation, as they are *required* to do, and which is not a final action reviewable under the APA. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir.

2018) ("[t]he scope of our review [under the APA] ... is limited to 'agency action,' and the President is not an 'agency.'"). Even so, Plaintiffs "must demonstrate standing for each claim" they seek to press "and 'for each form of relief sought,' even if the various claims are derived from similar facts or raise similar legal questions." *Center for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 304 (D.C. Cir. 2025) (quotation omitted*); see also Am. Foreign Serv. Ass'n v. Trump*, 792 F. Supp. 3d 116, 129–30 (D.D.C. 2025). The Supreme Court has rejected attempts to "challenge a more generalized level of Government action" instead of "specifically identifiable Government violations of law." *Lujan*, 504 U.S. at 568. Yet Plaintiffs do not explain how the ministerial implementation of the Proclamation injured them.

If anything, Plaintiffs' attempt to use alleged individual changes by the agencies to challenge the entire implementation demonstrates that their claims are a broad programmatic challenge that seeks wholesale reform of a program without identifying a particular *agency* action that has caused them harm. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891). That is clearly impermissible.

In their opposition, Plaintiffs again cite to *Nebraska v. Su*, but as explained in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction at 21, this case found that APA review was available because the President's directive gave DOL "considerable discretion" in executing the Presidential directive to "issue regulations… to implement the requirements of this order". *See* 121 F.4th 1 (9th Cir. 2024). That is not the case here, and Plaintiffs do nothing to effectively refute that. Ultimately, there is no decision-making process to challenge, and thus Plaintiffs have failed to identify a discrete agency action to review under the APA. *See Trump v. Orr*, 223 L.Ed.2d 180, 181 (U.S. 2025); *Make The Rd. New York v. Wolf*, 962 F.3d 612, 634 (D.C. Cir. 2020).

### C. Even If There Was Final Agency Action, The APA Does Not Confer Jurisdiction to Review an Executive Decision to Restrict Entry.

Even if Plaintiffs are ever able to identify a "final agency action," the Court lacks jurisdiction to review the Proclamation because the mere implementation of an Executive decision to restrict entry both precludes judicial review and is committed to agency discretion by law. Plaintiffs attempt to skirt this issue by stating they "do not seek APA review of the President's Proclamation but of the actions that Agency Defendants have taken in implementing the Proclamation", Opp. at 19, but as explained above, these are one in the same. Plaintiffs similarly attempt to distinguish the President's discretion within 8 U.S.C. §§ 1182(f) and 1185(a) to limit "entry" with "the restriction of adjudication of petitions or visa applications." Opp. at 19 (incorporating by reference Pls.' PI Reply 4–8). But the *entry* of aliens is precisely what the Proclamation addresses, and that power is within the President's discretion as Plaintiffs have acknowledged. Opp. 19 ("…§ 1182(f) and § 1185(a) allow the President to act only as to 'entry'"). Thus, the agencies' implementation of the Proclamation is also committed to agency discretion. *See Detroit Int'l Bridge Co. v. Canada*, 189 F. Supp. 3d 85, 105–106 (D.D.C. 2016).

## II. The Court Should Dismiss The Complaint Under Fed. R. Civ. P. 12(b)(6).

### A. Consular Nonreviewability Precludes Review of 8 U.S.C. §§ 1182(f) and 1185(a)(1) Entry Restrictions.

The Supreme Court has held that the doctrine of consular nonreviewability means that "[t]he admission and exclusion of foreign nationals is a fundamental sovereign attribute" that is "largely immune from judicial control." *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quotations omitted). The admission and entry of aliens is precisely what the Proclamation addresses. Plaintiffs claim that only individual visa decisions are unreviewable while the policies and procedures governing entry remain reviewable by a court, relying once again on the *reversed Hawaii v. Trump*, 878 F.3d 662, 673 (9th Cir. 2017) opinion. Opp. 17. Not so.

The logic of consular nonreviewability rests on two premises, neither of which turn on whether the challenge is to an individual visa decision or a policy. First, aliens have "no 'claim of right' to enter the United States." *Trump v. Hawaii*, 585 U.S. 667, 682 (2018) (quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542–543 (1950)). That is just as true for a challenge to a policy as it is for a challenge to an individual visa determination. Second, the separation of powers dictates that "[t]he conditions of entry for every alien, the particular classes of aliens that shall be denied entry altogether, the basis for determining such classification, the right to terminate hospitality to aliens, [and] the grounds on which such determination shall be based" are "wholly outside the power of this Court to control." *Fiallo v. Bell*, 430 U.S. 787, 796 (1977). Again, this applies equally to policy challenges like Plaintiffs'. It would invert the constitutional structure to deny review of decisions by consular officers—subordinate Executive Branch officials—while permitting review of the President's decision to restrict or suspend the entry of aliens on national-interest grounds. *See Saavedra Bruno v Albirght*, 197 F.3d at 1153, 1159 (D.C. Cir. 1999).

Plaintiffs attempt to disqualify *Fiallo* as support for Defendants' assertions. Opp. at 17 (incorporating by reference Pls.' PI Reply 3–4). But the Supreme Court relied on *Fiallo* for the more general proposition that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Hawaii,* 585 U.S. at 702 (quoting 430 U.S. at 792). *Fiallo* states that foreign policy matters and congressional choices to exclude or expel groups of aliens "are frequently of a character more appropriate to either the Legislature *or the Executive* than to the Judiciary." 430 U.S. at 796 (emphasis added).

Congress made a policy choice in Sections 1182(f) and 1185(a) by conferring a "sweeping proclamation power" to suspend entry of aliens and impose any restrictions wholly in the President's discretion without creating a cause of action for review. *See Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986) (R.B. Ginsburg, J.). So, where, as here, "the President acts pursuant to an express or implied authorization of Congress," the President's "authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). As a result, there is no judicial review absent an express avenue created by Congress, which Plaintiffs have not and cannot identify. *Munoz*, 602 U.S. at 908.

The Supreme Court acknowledged as much in *Hawaii.* Plaintiffs criticize this point because the Supreme Court ultimately did review the Proclamations in *Hawaii* and *Sale*. Opp. at 17 (incorporating by reference Pls.' PI Reply 3–4). But the Supreme Court made clear that in both cases it chose to "assume without deciding that plaintiffs' statutory claims are reviewable" because it is a "difficult question." *Hawaii*, 585 U.S. at 682-83.

The other cases cited by Plaintiffs do not change the analysis. First, *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) holds that the judiciary can review *a constitutional* challenge to an Executive Order. *Id.* at 1164. Second, *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), does not involve a Presidential proclamation exercised under broad authority delegated by Congress as here. *Id.* at 931–32. Here, the agencies are carrying out the directives of the Proclamation issued pursuant to 8 U.S.C. §§ 1182(f) and 1185(a), and Plaintiffs are challenging the statutory authority of Defendants to do so. Thus, the principles that underlie nonreviewability and Congress's sweeping grant of discretionary authority decisively cut against judicial review in this instance.

**B.   Plaintiffs Fail to State an *Ultra Vires* Claim.**

Plaintiffs incorporate their arguments from their Motion for Preliminary Injunction and Reply, *see* Opp. 18, to argue that they have sufficiently stated an *ultra vires* claim. These arguments fail to distinguish the clear language of *Dalton v. Specter*, where the Supreme Court stated that "longstanding authority holds that such review is *not available* when the statute in question commits the decision to the discretion of the President" because "[h]ow the President chooses to exercise the discretion Congress has granted him is not a matter for our review." 511 U.S. 462, 474, 486 (1994). Put another way, "no question of law is raised when the exercise of [the President's] discretion is challenged." *Id.* at 486 (*quoting United States v. George S. Bush & Co.*, 310 U.S. 371, 380 (1940)). And here, there can be no legitimate argument that Section 1182(f) is not such a statute since the Supreme Court has held that it "exudes deference" to the President. *Hawaii*, 585 U.S. at 684.

Plaintiffs instead attempt to circumvent this precedent by stating that the Proclamation is not actually an entry suspension/restriction, which *is* within the discretion of the President. But Plaintiffs' disagreement with the type or form of the restriction or regulation does not make it less so. The Supreme Court has held that § 1182(f)'s use of the language "any restrictions he may deem to be appropriate" "vests the President with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA." *Id.* Thus § 1182(f) delegates authority to the President to "supplement the other grounds of inadmissibility in the INA." *Id.* Plaintiffs contests that the President has exceeded his scope under the INA and tax provisions similarly fail, as they attempt to conflate the Proclamation into something it is not. The $100,000 payment requirement is simply another restriction on entry that the President issued pursuant to 8 U.S.C. § 1182(f).

### C. Plaintiffs Fail to State a Claim Under the Administrative Procedure Act and Regulatory Flexibility Act.

Plaintiffs incorporate their arguments from their motion for preliminary injunction and

reply, see Opp. 20, to state that they have sufficiently stated an APA and RFA claim. But Plaintiffs once again fail to show how the Proclamation was contrary to law and/or required notice-and-comment rulemaking. Their arguments rest on the fallacy already disproved above: that this case does not involve the mere implementation by the agency Defendants of a President Proclamation instituted pursuant to the President's discretion under 8 U.S.C. §§ 1182(f) and 1185(a). Once that argument is disproved, as Defendants have done above, in their Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF No. 98) and in their Motion to Dismiss (ECF No. 104), Plaintiffs' APA and RFA claims crumble.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

\*\*\*

Dated: February 19, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

TIBERIUS DAVIS
Counsel To The Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director
Office of Immigration Litigation

DAVID J. BYERLEY
Senior Litigation Counsel

/s/ *Jaime A. Scott*
JAIME A. SCOTT (DC Bar # 90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

Case 4:25-cv-08454-HSG     Document 109     Filed 02/19/26     Page 20 of 20


**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jaime A. Scott
JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

*Attorney for Defendants*