BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

TIBERIUS DAVIS
Counsel To The Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director

DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
Trial Attorney
DC Bar # 90027182
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al*.<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, President of the United States, *et al.*,<br><br>    Defendants. | Case No.  4:25-cv-8454-HSG<br><br>**SUPPLEMENTAL BRIEFING** |

Defendants hereby submit supplemental briefing ordered by the Court in the February 26, 2026, hearing about the impact of *Learning Res., Inc. v. Trump,* No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026) (hereinafter "*Learning Resources*") on this case. For the reasons herein, this Court should conclude that *Learning Resources* does not alter the analysis, and, for the reasons expressed in Defendants' briefs, should deny the Preliminary Injunction and dismiss the Amended Complaint.

## I. The $100,000 Payment Set Out In The Proclamation Is Not A Tax, And Thus *Learning Resources* Is Not Instructive.

The *Learning Resources* opinion only gained a majority in Parts I,[1] II-A-1, and II-B. In Part II-A-1, the *Learning Resources* opinion starts from the baseline that "the power to impose tariffs is 'very clear[ly]…a branch of the taxing power." 2026 WL 477534, at *7 (citing *Gibbons v. Ogden*, 9 Wheat. 1, 201, 6 L.Ed. 23 (1824)). This court should take great caution in conflating the analysis of when the President can impose a payment as a restriction on an alien's entry under 8 U.S.C. §§ 1182(f) and 1185(a) and when the President can set a tariff on goods. *Learning Resources* does not hold that the tariffs at issue were considered taxes merely because the President imposed them under the International Emergency Economic Powers Act ("IEEPA"); instead, they were considered taxes because *all* tariffs "operate directly on domestic importers to raise revenue for the Treasury" which is "the defining feature of a tax." 2026 WL 477534, at *7, 12. Indeed, the Court took pains to explain that almost all original taxes were tariffs to demonstrate that tariffs are a core tax. *Id.* at *7.

Thus, the *Learning Resources* decision supports the notion that almost all tariffs are taxes, but it does not further support the idea that restricting entry to those who pay the $100,000 payment

---

[1] Part I merely outlines a procedural history and provides no analysis.

SUPPL. BRIEFING                               1                              No. 4:25-cv-8454-HSG

condition is a tax. Unlike tariffs, the Proclamation sits at the intersection of immigration and foreign affairs; thus it involves not only the authority delegated by Congress but also the Executive's *inherent* authority. *See Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *Trump v. Hawaii*, 585 U.S. 667, 684–702 (2018). As a result, the President is at the apex of his powers when he invokes Sections 1182(f) and 1185(a)(1). *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). And for the reasons explained in briefing, the payment here is not a tax because it is not collected by the IRS, is arguably prohibitory, and does not raise revenue. *See* Defs.' Opp'n to Mot. for Preliminary Injunction at 36–37. Indeed, the entire preamble to the Proclamation stresses that this entry restriction is to improve economic conditions for domestic workers and ensure important technology and national security sectors are protected, not to generate revenue. And if the Proclamation is as prohibitive as Plaintiffs construe it to be, then it is surely *not* a revenue-generating program. In fact, so far, the Proclamation has resulted in a *decline* in revenue. *See* Decl. of Cara Selby. Yet the Supreme Court said the defining feature of a tax is to "raise revenue." *Learning Resources*, 2026 WL 477534, at *7. If anything, *Learning Resources* confirms that the payment is not a tax akin to a tariff but rather a restriction on entry.

  **II.**   **Even If This Court Considers The Proclamation A Tax, the Statutory Interpretation of the IEEPA Is Not Instructive.**

Even if this court concludes that the Proclamation institutes a tax despite lacking the critical hallmarks of a tax, *Learning Resources* is still not instructive here. The Supreme Court did not overturn *Skinner v. Mid-American Pipeline Co.*, 490 U.S. 212 (1989), or *F.C.C. v. Consumers' Research*, 606 U.S. 656 (2025), which allow Congress to delegate its taxing authority as it would any other power. No additional clarity is required simply because the delegation implicates the taxing power as opposed to any other congressional power. *See Skinner*, 490 U.S. at 220–21; *F.C.C.*, 606 U.S. at 675. Given that, the delegation in IEEPA is much narrower than the sweeping

delegations at issue in Sections 1182(f) and 1185(a)(1). Those delegations can readily include a limited payment, especially one confined to a single $100,000 payment on the entry of H-1B aliens for a single year. The mismatch between the broad delegation and limited power asserted is simply non-existent here in contrast with the Supreme Court's analysis in *Learning Resources*.

To start, the outcome-determinative portion of the opinion gaining majority support turned on a textual analysis of IEEPA. *Learning Resources*, 2026 WL 477534, at *11. The Court took care to "not speculate on hypothetical cases not before us" and to limit its holding to IEEPA, notwithstanding the dissenting opinion noting that several other statutes seem to authorize the tariffs even if IEEPA did not. *Id.*, at *11, n.4 (responding to 2026 WL 477534, at *78 (Kavanaugh, J. dissenting)). The textual analysis of one specific statute does not neatly map onto another. Accordingly, *Learning Resources*'s holding is narrowly tailored to IEEPA, even by its own text.

In that textual analysis, the Supreme Court dealt with text saying "regulate . . . importation" separated by 16 words. *Id.* at *6. The Supreme Court explained that "IEEPA authorizes the President to 'investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit . . . importation or exportation.' 50 U.S.C. § 1702(a)(1)(B). Absent from this lengthy list of powers is any mention of tariffs or duties." *Id.* at *10. The majority opinion rejected the argument that "[t]he power to 'regulate . . . importation'" included a power to tax, noted that "regulate[]" appears sixteen words away from "importation," and noted that a broad construction of "regulate" to swallow the eight verbs in the remainder of the statute would render them "wasted ink." *Id.* at *10–11 ("The 'neighboring words' with which 'regulate' 'is associated' also suggest that Congress did not intend for 'regulate' to include the revenue-raising power."). Thus, the Supreme Court interpreted "regulate . . . importation" for purposes of IEEPA to be relatively narrow.

By contrast, Section 1182(f) contains no list of ways the President may "suspend" or "restrict" entry, rather the President may "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens *any restrictions he may deem to be appropriate*." 8 U.S.C. § 1182(f) (emphasis added). The word "any" has an expansive meaning meant to broaden the scope of the power. *See Republic of Iraq v. Beaty*, 556 U.S. 848, 856 (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). This is why Justice Ginsburg, when sitting on the D.C. Circuit, called the delegation "sweeping," *Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986) (R.B. Ginsburg, J.), and the Supreme Court in *Hawaii* remarked that it was a "facially broad grant of power," 585 U.S. at 688. That broad delegation stands in stark contrast to the Supreme Court's analysis of the "regulate . . . importation" portion of the IEEPA.

Indeed, the Supreme Court in *Learning Resources* distinguished IEEPA from Section 232(b) at issue in *Federal Energy Administration v. Algonquin SNG, Inc.*, 426 U.S. 548 (1976), 2026 WL 477534, at *13, which did permit tariffs. The Supreme Court distinguished the delegation in Section 232(b) as "sweeping" because it "authorizes the President not only to 'adjust . . . imports,' but [] to take such action . . . *as he deems necessary*' to adjust the imports of a good." *Id.* (emphasis added). Sections 1182(f) and 1185(a) more closely mirror the language of the statute in *Algonquin* than IEEPA, as they empower the President to impose "any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f).

Further, the Supreme Court took issue with the breadth of the Government's interpretation of the IEEPA, which it described as asserting "the independent power to impose tariffs on imports from any country, of any product, at any rate, for any amount of time." *Learning Resources*, 2026 WL 477534, at *6. The Supreme Court contrasted that power with the tariffs permitted in *United States v. Yoshida Int'l, Inc.*, 526 F. 2d 560, 572 (CCPA 1975), which were "of limited amount,

duration, and scope." *Learning Resources*, 2026 WL 477534, at *9, n.3. The Proclamation is likewise limited to a single $100,000 payment per alien on the entry of just certain H-1B aliens for 1 year. These limits partially stem from Section 1182(f) itself, which applies only to the entry of aliens for a temporary period. Thus, the breadth of the delegation here is much broader while the power asserted is much narrower than in *Learning Resources*.

Even if the Proclamation was considered a tax, which Defendants maintain it is not, *Learning Resources* does not bar the President from *ever* levying a tax; it prohibits the President from imposing tariffs of "unlimited amount, duration, and scope" under IEEPA. *Id.* at *13. The broad delegation here clearly encompasses the limited restriction on entry being imposed. After all, the power to suspend wholesale necessarily includes the right to impose conditions or restrictions short of wholesale suspension. *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 138 (1939) ("The greater power includes the less."). Unlike the Government's position in *Learning Resources*, which the majority construed to constitute a greater-included interpretation of the word "regulate" so as to extend to a different-in-kind power to tax, the imposition of a $100,000 payment restriction on entry here is not only authorized as "any restriction[]" but it is also a *lesser* included exercise of the Executive power to deny entry.

The Supreme Court has (in other contexts) recognized that the right to exclude and restrict individuals from entry includes the power to tax *as a means* by which to exclude and restrict entry. *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 144 (1982) ("This [inherent exclusionary] power necessarily includes the lesser power to place conditions on entry, on continued presence, or on reservation conduct, such as a tax. . . ."); *see also id.* at 148. Consequently, even if the $100,000 payment restriction could be considered a tax, it is lawfully exercised here as an exclusionary method to restrict entry as authorized by Section 1182(f). If anything, the clear distinctions

SUPPL. BRIEFING                                   5                                   No. 4:25-cv-8454-HSG

between *Learning Resources* and some of these cases demonstrate that the restriction here is lawful.

### III. The Major Questions Doctrine Discussion In *Learning Resources* Is Not Instructive In This Case.

As an initial matter, there was no opinion between the majority in *Learning Resources* as to whether the major questions doctrine applies to limit the President's authority to levy a tax through tariffs under the IEEPA. Chief Justice Roberts authored a concurrence finding that the major questions doctrine barred the President from issuing tariffs at issue. 2026 WL 47753, at *7–10 (Part II-A-2). Justice Kagan authored a concurrence that instead found that the statutory text of the IEEPA was instructive and the major questions doctrine need not be invoked. *Id.* at *36–39. Thus, the major questions doctrine discussion in *Learning Resources* Part II-A-2 has no precedential sway, only the pure textual analysis does.

But even if this court considers the major questions doctrine discussion persuasive, the major questions doctrine does not bar the President from imposing a $100,000 payment entry restriction under Sections 1182(f) and 1185(a). To start, as the concurrence made clear, the major questions doctrine starts with text and context. *Id.* at *7–8. As Justice Barrett has explained, there must be a "'mismatch[]'" between the breadth of the asserted power and the "narrow[ness]" of the statute. *Biden v. Nebraska*, 600 U.S. 477, 517-518 (2023) (Barrett, J., concurring). As just explored, unlike the tariffs in *Learning Resources*, there is no mismatch here.

Even looking at the other factors, the "major question" at issue in *Learning Resources* was a projected economic impact that "could be worth $15 trillion." 2026 WL 47753, at *9. There is no allegation, much less evidence, that the Proclamation could reach the type of economic or political significance presented in any of the cases the concurrence relied on. *Id.* at *7. Indeed, tariffs have been some of the most historically and politically contested policies in the nation's

history. *Id.* at *34 (Gorsuch, J. concurring). The temporary restriction on one set of aliens at issue here is important, but hardly so consequential or core to congressional powers. Similarly, the concurrence noted that no President had used IEEPA to impose a tariff before. *Id.* at *9. Plaintiffs try to make the same argument about the payment here. But the Supreme Court in *Hawaii* rejected a nearly identical historical argument. *See Hawaii*, 585 U.S. at 693. One cannot assume previous Presidents exercised their power "maximally" and previous proclamations cannot give us "a law trapped in amber," preventing all innovations to address new challenges. *United States v. Rahimi*, 602 U.S. 680, 739 (2024) (Barrett, J., concurring). Thus, the major questions discussion in *Learning Resources*, if instructive at all, would only help Defendants' arguments. The delegation here is much broader and the power asserted much narrower.[2]

### IV. The Holding In *Learning Resources* Has No Bearing On Plaintiffs' APA Claims In This Litigation.

The decision in *Learning Resources* was purely focused on the President's statutory authority under IEEPA. The Court does not discuss the Administrative Procedure Act ("APA") claims that were brought in the underlying litigation. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 226 (D.D.C.), *vacated and remanded*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026). Indeed, the cause of action was not even disputed in the lower courts. Defendants thus maintain their arguments in their briefs and from oral argument that Plaintiffs' APA claims fail.

---

[2] The court in *Chamber of Commerce v. DHS*, 2025 WL 3719234 (D.D.C. Dec. 23, 2025) found this argument waived because "plaintiffs devote only one sentence to the major questions doctrine in their opening brief, and four sentences in their reply brief." *Id.* at *17, n.8 (citation and internal quotation marks omitted). Similarly, here Plaintiffs mention the major questions doctrine once in their Amendment Complaint, ¶ 217, and once in their Motion for Preliminary Injunction or Summary Judgment, at 22, in all of their voluminous briefing.

Dated: March 5, 2026              Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

TIBERIUS DAVIS
Counsel To The Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director
Office of Immigration Litigation

DAVID J. BYERLEY
Senior Litigation Counsel

<u>/s/ Jaime A. Scott</u>
JAIME A. SCOTT (DC Bar # 90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jaime A. Scott
JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

*Attorney for Defendants*

SUPPL. BRIEFING                                                                                 No. 4:25-cv-8454-HSG