Karen C. Tumlin (CA Bar No. 234691)
Esther H. Sung (CA Bar No. 255962)
Laura Flores-Perilla (CA Bar No. 355645)
Hillary Li (GA Bar No. 898375)*
Brandon Galli-Graves (TX Bar No. 24132050)
Emily Satifka (NJ Bar No. 330452020)*
Vanessa Rivas-Bernardy (CA Bar No. 341464)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
emily.satifka@justiceactioncenter.org
vanessa.rivas@justiceactioncenter.org

*Counsel for Plaintiffs*

\* Admitted *pro hac vice*
\*\* Motion to appear *pro hac vice* forthcoming

[Additional co-counsel on signature page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| GLOBAL NURSE FORCE, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　Defendants. | Case No. 4:25-cv-08454-HSG<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *PACITO V. TRUMP*** |

**INTRODUCTION**

The Ninth Circuit's decision in *Pacito v. Trump*, No. 25-1313, 2026 WL 620449 (9th Cir. Mar. 5, 2026) does not resolve the questions before this Court. *Pacito* upheld the President's § 1182(f) authority to suspend the entry of refugees, but three issues presented here were not before the Ninth Circuit and remain squarely before this Court. First, *Pacito* never considered whether § 1182(f) authorizes the President to exercise Congress's exclusive taxing power by imposing a $100,000 fee. *See infra* Section I. Second, *Pacito*'s holding that § 1182(f) permitted suspension of refugee application processing rested entirely on the absence of any statutory processing mandate in the Refugee Act, a structural feature that has no analog in the H-1B program, where Congress has expressly mandated adjudication at every stage through a detailed and multi-step statutory scheme. *See infra* Section II. Third, *Pacito* had no occasion to address the Administrative Procedure Act ("APA") notice-and-comment requirement or the Regulatory Flexibility Act, and its reasoning on arbitrary-and-capricious review supports Plaintiffs. *See infra* Section III.

**I. *Pacito* Does Not Address Plaintiffs' Tax Claim.**

Although the *Pacito* court upheld the President's authority to suspend the entry of refugees under § 1182(f), *Pacito* did not address whether § 1182(f) authorizes the President to tax (it does not). Compelling $100,000 payments from regulated parties as a condition of access to a statutorily-created immigration pathway is categorically different from suspending or restricting entry. To do so is an affirmative exercise of taxing authority, but as the Supreme Court held in *Learning Resources Inc. v. Trump*, 607 U.S. __, 2026 WL 477534 (2026), that power belongs exclusively to Congress. Suspending or restricting entry requires no revenue; imposing a $100,000 fee generates it. An entry suspension or restriction power does not carry with it the authority to impose new financial obligations Congress never authorized. *See* Pls.' Supp. Br. at 2-6 (ECF 116); *Learning Resources*, 2026 WL 477534 at *10.

---

1

---

**II. The Ninth Circuit's Holding That § 1182(f) Permitted Suspension of Refugee Application Processing Does Not Control Here.**

In *Pacito*, the Ninth Circuit held that § 1182(f) permitted the President to suspend decisions on refugee applications, but only because the Refugee Act was silent as to any statutory obligation to continue processing applications once entry was suspended. *Pacito*, 2026 WL 620449, at *17 ("The Refugee Act does not contain separate instructions on the application or decision process. Rather, the need for some kind of application and decision process is *implicit* in the decision to admit refugees.") (emphasis added). The H-1B statutory framework is materially different from the Refugee Act in at least two respects: (1) the statutory provisions governing H-1B explicitly set out petitions, visas, and entry as separate processes; and (2) the statutory provisions explicitly mandate that petitions and visa applications be adjudicated.

An "entry" restriction power under § 1182(f) cannot extend to conditioning or suspending the predicate decisions that occur upstream of entry in the H-1B program because USCIS petition adjudications and State Department visa adjudications are distinct determinations that precede entry and are not entry itself. *See* 8 U.S.C. § 1184(c)(1) (providing that H-1B and certain other nonimmigrant visa petitions "shall be made and approved before the visa is granted"); *id.* § 1101(a)(4) (defining "application for admission" as "the application for admission into the United States and not . . . the application for the issuance of an immigrant or nonimmigrant visa"). This distinction is reinforced by *Trump v. Hawaii*, which distinguished between the predicate question of a visa applicant's eligibility and "the subsequent question whether the holder of a visa may in fact enter the country," the latter of which the President can regulate via an entry suspension. 585 U.S. 667, 694–97 (2018).[1] *See, e.g., Gomez v. Trump,* 485 F. Supp. 3d 145, 191-94 (D.D.C. 2020). Although the proclamation in *Gomez* did not expressly address visa

---

[1] While the D.C. Circuit ultimately reversed *Gomez* on other grounds, it did not address, and therefore did not disturb, the district court's holding that § 1182(f) and visa adjudication operate in legally distinct spheres.

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *PACITO V. TRUMP*          Case No. 4:25-cv-08454-HSG

issuance, the *Gomez* court held the agency's suspension of visa issuance unlawful on an independent ground (that § 1182(f) only restricts entry and therefore does not authorize the President to suspend visa adjudication at all). *Gomez*, 485 F. Supp. 3d at 191. That independent holding applies with equal force here. *Pacito* did not address this line of cases because it could not. Refugee processing involves no separate visa issuance stage to which the *Hawaii/Gomez* distinction could attach. *See Pacito*, 2026 WL 620449, at *5 ("[T]he Refugee Act exempted aliens who qualify as 'refugees' from the standard visa requirement and admission procedures specified in the INA. . . . Instead, the Act created a separate, comprehensive framework for the processing, admission, and resettlement of refugees.") (citing 8 U.S.C. §§ 1157, 1521–24, 1181(c)). Further, the INA imposes a nondiscretionary duty on the Executive to adjudicate H-1B petitions and visa applications. 8 U.S.C. § 1184(c)(1) (the agency "shall determine" the "question of importing any [noncitizen]" on an H-1B visa "upon petition of the importing employer"); *see also id.* § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."); *Gomez*, 485 F. Supp. 3d at 194 (finding the government's suspension of visa issuance contrary to § 1202(d)). The statutory framework for the H-1B program further spells out: adjudication standards (§§ 1184(i), 1184(c)(2)), cap allocation (§ 1184(g)), the fee structure (§§ 1184(c)(9), (12), 1356(m), (s)), and premium processing timelines (§ 1356(u)). When Congress requires petition and visa adjudication and prescribes processes to this level of specificity, *Pacito*'s reasoning, grounded in what the Refugee Act does not say, does not apply.[2]

---

[2] While continuing to process petitions and visas even while entry is temporarily restricted may at first seem like an "odd result," "Congress may not have wished to halt [petition] and visa processing and issuance for categories of persons who are only temporarily 'suspend[ed]' from entering the country under § 1182(f)." *Gomez*, 485 F. Supp. 3d at 192–93. There is value to allowing employers and workers to complete the petition and visa process even while entry is temporarily restricted, so they are ready to enter when the temporary restriction ends, or soon after. *See id.* at 193. According to USCIS's current data, 80% of H-1B petitions for consular processing are completed in 8 months, and the agency notes that some cases may take longer. USCIS, Case Processing Times, https://egov.uscis.gov/processing-times/ (last visited Mar. 16, 2026). Further, cap-subject employers must file petitions within a specific timeframe. If they win a lottery slot in March, they must file a petition within a filing period indicated on the selection notice (typically 90 days). 8 C.F.R. §

---

3

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *PACITO V. TRUMP*        Case No. 4:25-cv-08454-HSG

**III. *Pacito* Confirms Reviewability and Arbitrary and Capricious Violations, and Does Not Impact Plaintiffs' Other Claims.**

**Reviewability.** *Pacito* held that the President's decision to suspend entry was not subject to APA review. *Pacito*, 2026 WL 620449, at *22-23. But that holding has no impact here because Plaintiffs do not seek APA review of the President's Proclamation. Plaintiffs seek APA review of the agencies' rules implementing the Proclamation. Such rules are subject to APA review. *Nebraska v. Su*, 121 F.4th 1, 15-17 (9th Cir. 2024). *Pacito* did not overrule *Nebraska*. *Pacito* also held that the agencies' decision to defund the refugee program, which the agencies did in response to executive orders, was a reviewable final agency action where the executive order did not itself terminate the funding. *Pacito*, 2026 WL 620449, at *23. Here, similarly, the Proclamation delegated discretion to grant exceptions by individual, company, or industry without specifying criteria, process, or scope. *See* Proclamation § 1(c). USCIS then independently exercised that discretion through the October Guidance, and went further than the Proclamation required, imposing a condition that no eligible U.S. workers were available to fill the role, a requirement that appears nowhere in the Proclamation. *See* PI Mot. 10 (ECF 75). That is not ministerial implementation, it is independent agency action subject to APA review. *Gomez*, 485 F. Supp. 3d at 178; *cf. Nebraska*, 121 F.4th at 15-17 (rejecting argument that agency had to follow the President's "clear directive" and requiring agency to follow the APA where agency had discretion to define terms and provide exclusions from the executive order).

**Arbitrary and capricious.** In *Pacito*, the Ninth Circuit held the agencies' termination of domestic refugee resettlement funding was arbitrary and capricious on two independent grounds. First, the agencies provided no reasoned explanation or factual findings, and an executive order about pausing "foreign development assistance" could not justify terminating domestic resettlement services

---

214.2(h)(8)(iii)(D)(3). If the employer cannot file a petition during that window, they lose their opportunity and can only hope to be selected in next year's lottery. *Cf. Gomez*, 485 F. Supp. 3d at 193 (interpreting authority to regulate "entry" as not including authority to regulate visas, "particularly where, as here, the visa applicant's opportunity to receive a visa is time delimited").

4

Congress had expressly mandated. *Pacito*, 2026 WL 620449, at *27. Second, the agencies failed to consider the reliance interests of individual refugees who depend on congressionally mandated support. *Id*. at *28.

The same framework condemns USCIS's implementation here because the agency made implementation choices beyond the four corners of the Proclamation without any reasoned explanation and without acknowledging the reliance interests those choices disrupted. Congress built the H-1B program via a complex statutory scheme as described above, and Plaintiffs relied on this regime. *See, e.g.* Waters Decl. ¶¶ 12–20 (ECF 75-2); Witte Decl. ¶¶ 10–13 (ECF 75-4). *Pacito* confirms that such failures render agency action arbitrary and capricious.

**Notice-and-comment and Regulatory Flexibility Act**. *Pacito* had no occasion to analyze the APA's notice-and-comment requirement or the Regulatory Flexibility Act's requirement that agencies analyze impacts on small businesses when promulgating rules subject to notice and comment, which are independent grounds to set aside the agencies' actions.

## CONCLUSION

*Pacito* upheld an entry suspension for refugees in a different context from the one before this Court. It did not address the President's power to impose a $100,000 fee as an exercise of the taxing authority belonging exclusively to Congress, the INA's express mandate that H-1B petitions and visas be adjudicated or the procedural requirements governing the Agency Defendants' decisions as to who is subject to the $100,000 fee. On the APA questions *Pacito* did address, the Ninth Circuit's reasoning supports Plaintiffs, not Defendants.

Date: March 16, 2026                                        Respectfully submitted,


/s/ Karen C. Tumlin                          /s/ Cynthia Liao
Karen C. Tumlin (CA Bar No. 234691)          Cynthia Liao (CA Bar No. 301818)*
Esther H. Sung (CA Bar No. 255962)           Johanna M. Hickman (D.C. Bar No. 981770)*
Laura Flores-Perilla (CA Bar No. 355645)     Jennie L. Kneedler (D.C. Bar No. 500261)*
Hillary Li (GA Bar No. 898375)*              Steven Y. Bressler (D.C. Bar No. 482492)*

5

Brandon Galli-Graves (TX Bar No. 24132050)
Emily Satifka (NJ Bar No. 330452020)*
Vanessa Rivas-Bernardy (CA Bar No. 341464)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
emily.satifka@justiceactioncenter.org
vanessa.rivas@justiceactioncenter.org

*/s/ Charles H. Kuck***
Charles H. Kuck
GA Bar No. 429940
**KUCK BAXTER LLC**
365 Northridge Rd., Suite 300
Atlanta, GA 30350
404-949-8154
Ckuck@immigration.net


*/s/ Zachary R. New*
Zachary R. New**
Atty. Reg. No. (Colorado): 53992
**JOSEPH & HALL, P.C.**
12203 East Second Ave.
Aurora, CO 80011
(303) 297-9171
zachary@immigrationissues.com

*/s/ Harini Srinivasan*
Harini Srinivasan*
Aniko Schwarcz*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, 8th Floor
Washington, D.C. 20005

Alexandra Gray*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
12 Pine St.
New York, New York 10005

Elena Goldstein (D.C. Bar No. 90034087)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 808-1982 (Liao)
cliao@democracyforward.org
hhickman@democracyforward.org
jkneedler@democracyforward.org
sbressler@democracyforward.org
egoldstein@democracyforward.org

*/s/ Kalpana Peddibhotla*
Kalpana Peddibhotla (CA Bar No. 200330)
**SOUTH ASIAN AMERICAN JUSTICE COLLABORATIVE (SAAJCO)**
333 W. San Carlos Street, Suite 600
San Jose, CA 95110
(408) 550-9240
kalpana@saajco.org

*/s/ Jesse M. Bless*
JESSE M. BLESS*
MA Bar # 660713
**BLESS LITIGATION LLC**
6 Vineyard Lane
Georgetown MA 01833
781-704-3897
jesse@blesslitigation.com

*/s/ Greg Siskind*
Greg Siskind**
TN Bar No. 14487
**SISKIND SUSSER**
1028 Oakhaven Road
Memphis, TN 38119
(901) 682-6455
gsiskind@visalaw.com


*Counsel for Plaintiffs*

\* Admitted *pro hac vice*
\** Motion to appear *pro hac vice* forthcoming

6

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *PACITO V. TRUMP*       Case No. 4:25-cv-08454-HSG

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *PACITO V. TRUMP*          Case No. 4:25-cv-08454-HSG